# EXHIBIT 5

Corporate Policy #C-105
Exhibit E
6/99
Agreement #4

## SALES, SERVICE AND MARKETING PERSONNEL BASED IN STATES OTHER THAN CALIFORNIA, GEORGIA AND TEXAS

### EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") is made and entered into this _10_ day of _April_, _2000_, by and between _Robert Joiner_ ("Employee") and Cintas Corporation, a Washington Corporation headquartered in Ohio, including its business units, wholly-owned subsidiaries and affiliated companies (collectively "Employer").

1.      PARTIES.  Through its business units, which currently include but are not limited to the Rental Division, the National Account Division, the Cleanroom Division, the First Aid and Safety Division and Uniforms To You, Employer is engaged in the rental and sale of uniforms and related items and in the sale and distribution of first-aid and health and safety products ("Industries") as part of a plan of nationwide business development and operation.  As a leader in the highly-competitive Industries, Employer has developed and implemented confidential strategies and programs, which include expansion and acquisition plans, market research, sales systems, marketing programs, product development strategies, budgets, pricing strategies, identity and requirements of customers and prospects, methods of operating, service systems, computer passwords, other trade secrets and confidential information regarding customers, prospects and employees of Employer or of its customers and other information not known to the public (collectively "Confidential Materials and Information"), giving Employer an advantage over competitors not aware of such Confidential Materials and Information.

Employee either is employed by or desires to be employed with Employer in a sales, service or marketing position.  In such position, Employee has or will have access to Employer's Confidential Materials and Information.

2.      CONSIDERATION AND EMPLOYMENT RELATIONSHIP.  As consideration for this Agreement, Employer [CHECK THE APPROPRIATE LINE(S) OF ALL APPLICABLE REASONS]   ( ✓ )   hires Employee,  ( )      is promoting Employee,   ( )      is increasing Employee's rate of compensation,   ( )      is granting Employee an additional or improved fringe benefit and/or   ( )   _____ and sharing with Employee additional Confidential Materials and Information of Employer in return for Employee signing this Agreement.  Employee agrees to abide by Employer's published policies, which may be changed and distributed to Employee by Employer from time-to-time.  Employee further agrees to devote all of Employee's business time, attention and energies to the business interests of Employer.

Employer and Employee agree that this Agreement supersedes and cancels all prior agreements between them except for any prior arrangements concerning Employee's compensation and Employee's participation in Employer's benefit programs.  Employer agrees to pay to Employee such compensation and to provide Employee with such benefits as agreed upon, from time-to-time, by the parties.

C024588

Corporate Policy #C-105 / Exhibit E
Agreement # 4
Page 2

Employee's employment by Employer may be terminated for any reason at any time by either Employee or Employer, but if Employer elects to terminate Employee's employment, Employer will give two (2) weeks' written notice to Employee or pay Employee two (2) weeks' of Employee's compensation at Employee's current weekly earnings average instead of notice.  Employer, however, may end the employment relationship without either notice or salary continuation instead of notice if Employer terminates Employee for gross misconduct, which shall include, but not be limited to, theft of or intentional damage to Employer's property, abuse of alcohol on working time, use of illegal drugs, commission of a criminal act (other than a misdemeanor traffic offense), or willful violation of Employer's policy prohibiting employees from disposing of shares of Employer stock for personal gain based on knowledge of Employer's activities or results when such information is not available to the general public.

    3.    EMPLOYEE'S ACKNOWLEDGMENTS AND COVENANTS.

        (a)    Confidential Materials and Information.  In performing duties for Employer, Employee regularly will be exposed to and work with Employer's Confidential Materials and Information. Employee acknowledges that such Confidential Materials and Information are critical to Employer's success and that Employer has invested substantial money in developing Employer's Confidential Materials and Information.  While Employee is employed by Employer, and after such employment ends for any reason, Employee will not reproduce, publish, disclose, use, reveal, show, or otherwise communicate to any person or entity any Confidential Materials and Information of Employer unless specifically assigned or directed by Employer to do so.  The covenant in this Subparagraph(a) has no temporal, geographical or territorial restriction or limitation, and it applies wherever Employee may be located.

        (b)    Non-Solicitation of Employees.  While Employee is employed by Employer, and for twelve (12) months after such employment ends for any reason, Employee, acting either directly or indirectly, or through any other person, firm, or corporation, will not induce or attempt to induce or influence any employee of Employer to terminate employment with Employer when Employer desires to retain that person's services.  The covenant in this Subparagraph(b) has no geographical or territorial restriction or limitation, and it applies wherever Employee may be located.

        (c)    Covenant Against Unfair Competition.  While Employee is employed by Employer, and for twelve (12) months after such employment ends for any reason, Employee will not, either directly or indirectly, (i) perform any sales, service, marketing or supervisory work for or at any competing business entity's facility located within fifty (50) miles of where Employee was based by Employer at any time during the twelve (12) months immediately before Employee's employment with Employer ended; (ii) attempt to make any sales of Industries goods or services for any of competitors listed in the attached Appendix A, which will be updated periodically by Employer issuing to Employee a revised and dated list including names of new significant competitors or successors to any previously-listed competitors in the business unit(s) of Employer in which Employee worked during the twelve (12) months immediately before Employee's employment with Employer ended; or (iii) call on, solicit or have business communications with any customer or prospect of Employer for the purpose of obtaining any Industries business from such customer other than for the benefit of Employer.

C024589

As used in this Agreement, the term "competing business" means competing with Employer for Industries business in Employer's business unit(s) in which Employee was employed by Employer at any time during the twelve (12) months immediately before Employee's employment with Employer ended, "customer" means a business entity (including representatives of such business entity) to which Employer provided Industries goods or services at any time in the prior twelve (12) months, and the term "prospect" means a business entity (including representatives of such business entity) to which, at any time in the previous twelve (12) months, Employer delivered a written bid or proposal for providing Industries goods or services.

(d)    Return of Confidential Materials and Information. Employee agrees that whenever Employee's employment with Employer ends for any reason, all documents containing or referring to Employer's Confidential Materials and Information as may be in Employee's possession, or over which Employee may have control, will be delivered by Employee to Employer immediately, with no request being required.

(e)    Irreparable Harm. Employee agrees that a breach of any covenant in this Paragraph 3 will cause Employer irreparable injury and damage for which Employer has no adequate remedy, and Employee further agrees that if Employer claims a breach of any such covenant, Employer will be entitled to seek an immediate restraining order and injunction to prevent, pending or following arbitration under Paragraph 5 below, such violation or continued violation, without Employer having to prove damages, and if Employee has violated any covenant in this Paragraph 3, Employee will pay all litigation costs and expenses and Employer's reasonable attorney fees necessarily incurred in the litigation, in addition to any other remedies to which Employer may be entitled at law or equity.  If Employer sues Employee for an alleged breach of covenant(s) in this Paragraph 3 and the court rules that Employee has not violated such covenant(s), Employer will pay all litigation costs and expenses and Employee's reasonable attorney's fees necessarily incurred in the litigation.

4.    APPLICABLE LAW. **THIS AGREEMENT WILL BE INTERPRETED, GOVERNED AND ENFORCED ACCORDING TO THE FEDERAL ARBITRATION ACT AND THE LAW OF THE STATE OF OHIO IF EMPLOYEE LIVED OR WAS BASED IN OHIO AT ANY TIME WHILE EMPLOYED BY EMPLOYER; OTHERWISE, THE APPLICABLE STATE LAW WILL BE THE LAW OF THE STATE IN WHICH EMPLOYEE CURRENTLY IS EMPLOYED BY EMPLOYER OR MOST RECENTLY WAS EMPLOYED BY EMPLOYER.**

5.    EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES. Should any dispute or difference arise between Employee and Employer concerning whether Employer or any agent of Employer ever at any time violated any duty to Employee, right of Employee, law, regulation or public policy or breached this Agreement, Employee and Employer shall confer and attempt in good faith to resolve promptly such dispute or difference.  To have a fair, timely, inexpensive and binding method of resolving any such dispute or difference remaining unresolved after Employee and Employer confer in good faith, should Employee desire to pursue Employee's claim, Employee shall, within one year of the date when the dispute or difference first arose or within one year of when Employee's employment ends, whichever occurs first, submit to Employer a written request to have such claim, dispute or difference resolved through impartial arbitration conducted in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes and held in the county and state where Employee currently works for Employer or most recently worked for Employer. Employee's initial share of the arbitration filing fee shall not exceed one day's pay or $100

Corporate Policy #C-105 / Exhibit E
Agreement # 4
Page 4

whichever is less, and the arbitrator shall have authority to direct Employer to reimburse Employee for that portion of the filing fee paid by Employee if the arbitrator upholds Employee's claim.

In any arbitration proceeding, the arbitrator shall apply the terms of this Agreement as written, the Federal Arbitration Act and other relevant federal and state laws, including time limits on claims. If Employer loses the arbitration, Employer shall bear all fees, expenses, and charges of the American Arbitration Association and the arbitrator. The arbitrator also shall have the authority to award appropriate relief, including damages, costs and attorney's fees, as available under relevant laws, provided that the Arbitrator cannot direct Employee to pay more than a total of two days' pay as costs, expenses and attorney's fees to Employer, the arbitrator or the American Arbitration Association.

Except for Employee's workers' compensation claim or unemployment benefits claim, the impartial arbitration proceeding, as provided in this Paragraph 5, shall be the exclusive, final and binding method of resolving any and all claims of Employee against Employer, but the arbitrator shall have authority to entertain and decide a motion for reconsideration of the arbitration award. A legal action either to maintain the status quo pending arbitration or to enforce the agreement to arbitrate or an arbitration award may be filed and pursued in any court having jurisdiction, but otherwise Employee shall not file in any court any lawsuit or counterclaim contending that Employer or any agent of Employer violated any duty, right, law, regulation or public policy or breached this Agreement.

6.      SEPARABILITY. If any portion of this Agreement is held to be invalid or unenforceable in any respect, Employee and Employer agree that such invalid or unenforceable part will be modified to permit the Agreement to be enforced to the maximum extent permitted by the court, with the remaining portions unaffected by the invalidity or unenforceability of any part of this Agreement.

7.      COMPLETE AGREEMENT. ASIDE FROM THE AMOUNTS OF EMPLOYEE'S COMPENSATION AND EMPLOYEE'S ENTITLEMENT TO BENEFITS, THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN EMPLOYER AND EMPLOYEE, AND THE PARTIES CAN AMEND OR MODIFY THIS AGREEMENT ONLY BY A SUBSEQUENTLY-EXECUTED WRITTEN AGREEMENT SIGNED BY BOTH PARTIES.

EMPLOYEE WITNESSES:

_____

_____

EMPLOYER WITNESSES:

_____

_____

EMPLOYEE:

X _____

CINTAS CORPORATION - EMPLOYER

BY: _____

NAME PRINTED: _DAVID FORD_

TITLE: _General Manager_

LOC. #: _231_

C024591

Corporate Policy #C-105 / Exhibit E
Agreement # 4
Page 5

## APPENDIX A 6/99

A.  Rental Division
    Ameri-Pride
    Aramark
    Arrow
    Canadian Linen
    Coyne Textile Services
    G & K Services
    L & N Uniform
    Mission Industries
    National Linen
    Prudential Uniform Supply
    RUS (Omni)
    Textile Lease
    UniFirst
    Van Dyne Crotty Inc.
    Van Dyne Crotty Co.
    VF Workwear Coalition (includes Bulwark, Fibrotek, Penn State Textile, Red Kap, Todd Uniform, etc.)
    National Account Division

B.  Aramark (Crest and Galls)
    Canadian Linen
    Coyne Textile Services
    G & K Services
    Lion Uniform
    Mission Industries
    Omni Services(RUS)
    Protexall
    Riverside Manufacturing
    Todd Corporation
    UniFirst
    Uniform Alliance
    VF Workwear Coalition (includes Bulwark, Fibrotek, Penn State Textile, Red Kap, Todd Uniform, etc.)

C.  Cleanroom Division
    American Uniform (American Cleanroom Garments)
    Aramark Cleanroom Services
    G & K Cleanroom Services
    Overall Cleanroom Services
    Prudential Cleanroom Services
    Servitex Cleanroom Services
    UniFirst (UniClean)
    VF Workwear Coalition (includes Bulwark, Fibrotek, Penn State Textile, Red Kap, Todd Uniform, etc.)

C024592

Corporate Policy #C-105 / Exhibit E
Agreement # 4
Page 6

D.     First Aid & Safety Division
Arena Division of RUS
Fastpro International
First Aid Direct
Green Guard First Aid and Safety
Swift First Aid
TextiLease
Zee Medical

E.     Uniforms To You
Allbuilt
Angelica
Aramark (Crest and Wear Guard)Fashion Seal
Horace Small
VF Workwear Coalition (includes Bulwark, Fibrotek, Penn State Textile, Red Kap, Todd Uniform, etc.)

585750.1

C024593