# EXHIBIT 9

Policy #C-105

12/96
Agreement #6

SALES, SERVICE AND MARKETING PERSONNEL
BASED IN STATES OTHER THAN OHIO,
CALIFORNIA, GEORGIA AND TEXAS

EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") made and entered into this __30th__ day of __June__, 1999, by and between __Clayton Smith__ ("Employee") and Cintas Corporation, a Washington Corporation, including its wholly-owned subsidiaries and affiliated companies (collectively "Employer").

1.    PARTIES.  Employer is engaged in the rental and sale of uniforms and related items ("Industry") as part of a plan of nationwide business development and operation.  As a leader in the highly-competitive Industry, Employer has developed and implemented confidential strategies and programs, which include expansion and acquisition plans, market research, sales systems, marketing programs, product development strategies, budgets, pricing strategy, identity and requirements of national accounts, methods of operating, service systems, other trade secrets and confidential information regarding customers and employees of Employer or of its customers and other information about the Industry that is not known to the public and gives Employer an opportunity to obtain an advantage over competitors who do not know such information (collectively "Confidential Materials and Information").

Employee either is employed by or desires to be employed with Employer in a sales, service or marketing position.  In such position, Employee has or will have access to Employer's Confidential Materials and Information.

2.    EMPLOYMENT RELATIONSHIP AND CONSIDERATION.  As consideration for this Agreement, Employer agrees to hire Employee or to continue to employ Employee to perform duties assigned by Employer, and if Employee has been employed by Employer prior to the date of execution of this Agreement, Employer also is increasing Employee's rate of compensation, level of responsibility or employment benefits as consideration for this Agreement.  Employee agrees to abide by Employer's policies, which may be changed by Employer from time-to-time.  Employee further agrees to devote all of Employee's business time, attention and energies to the business interests of Employer.

Employer and Employee agree that this Agreement supersedes and cancels all prior agreements between them except for any prior arrangements concerning Employee's compensation and Employee's participation in Employer's benefit programs.  Employer

C021908

- 2 -

agrees to pay to Employee such compensation and to provide Employee
with such benefits as agreed upon, from time-to-time, by the
parties.

Employee's employment by Employer may be terminated for
any reason at any time by either Employee or Employer, but if
Employer elects to terminate Employee's employment, Employer will
give two (2) weeks' written notice to Employee or pay Employee two
(2) weeks' of Employee's compensation at Employee's current weekly
earnings average instead of notice. Employer, however, may end the
employment relationship without either notice or earnings continua-
tion instead of notice if Employee is terminated for gross
misconduct, which shall include, but not be limited to, theft of or
intentional damage to Employer's property, excessive use of
alcohol, use of illegal drugs, or commission of a criminal act
(other than a misdemeanor traffic offense).

    3.   EMPLOYEE'S ACKNOWLEDGMENTS AND COVENANTS.

    (a)   Confidential Materials and Information.   In performing
duties for Employer, Employee regularly will be exposed to and work
with Employer's Confidential Materials and Information.   Employee
acknowledges that such Confidential Materials and Information are
critical to Employer's success and that Employer has invested
substantial money in developing Employer's Confidential Materials
and Information.   While Employee is employed by Employer, and after
such employment ends for any reason, Employee will not reproduce,
publish, disclose, use, reveal, show, or otherwise communicate to
any person or entity any Confidential Materials and Information of
Employer unless specifically assigned or directed by Employer to do
so.   The covenant in this Subparagraph(a) has no temporal,
geographical or territorial restriction or limitation, and it
applies wherever Employee may be located.

    (b)   Non-Solicitation of Employees.   While Employee is
employed by Employer, and for twelve (12) months after such
employment ends for any reason, Employee, acting either directly or
indirectly, or through any other person, firm, or corporation, will
not induce or attempt to induce or influence any employee of
Employer to terminate employment with Employer when Employer
desires to retain that person's services.   The covenant in this
Subparagraph(b) has no geographical or territorial restriction or
limitation, and it applies wherever Employee may be located.

    (c)   Covenant Against Unfair Competition.   While Employee is
employed by Employer, and for twelve (12) months after such
employment ends for any reason, Employee will not, either directly
or indirectly, (i) be employed or based at, consult for, or have
any ownership interest in any competing business entity's facility
located within fifty (50) miles of where Employee was based by
Employer at any time during the twelve (12) months immediately

C021909

- 3 -

before Employee's employment with Employer ended; (ii) be employed by, consult for, or engage in any Industry business for Aramark Services, G & K Services, Coyne Textile Services, Mission Industries, Morgan Services, National Linen Service Division of NSI, Omni Service, Red Kap Industries, Riverside Manufacturing Co., Todd Corporation, Unifirst Corporation, Unitog Company, Van Dyne-Crotty, or any successor to any of those companies; or (iii) call on, solicit or communicate with any of Employer's customers (whether actual or potential) for the purpose of obtaining Industry business from such customer other than for the benefit of Employer.  (As used in this Agreement, the term "competing business" means competing with Employer for Industry business, and the term "customer" means any customer (whether actual or potential) with whom Employee had business contact on behalf of Employer during the twelve (12) months immediately before Employee's employment with Employer ended.)

(d)  <u>Return of Confidential Materials and Information.</u> Employee agrees that whenever Employee's employment with Employer ends for any reason, all documents containing or referring to Employer's Confidential Materials and Information as may be in Employee's possession, or over which Employee may have control, will be delivered by Employee to Employer immediately, with no request being required.

(e)  <u>Irreparable Harm.</u>  Employee agrees that a breach of any covenant in this Paragraph 3 will cause Employer irreparable injury and damage for which Employer has no adequate remedy, and Employee further agrees that if Employer claims a breach of any such covenant, Employer will be entitled to seek an immediate restraining order and injunction to prevent, pending or following arbitration under Paragraph 6 below, such violation or continued violation, without Employer having to prove damages, and if Employee has violated any covenant in this Paragraph 3, Employee will pay all litigation costs and expenses and Employer's reasonable attorney fees, in addition to any other remedies to which Employer may be entitled at law or equity.

4.  <u>SUCCESSORS</u>.  This Agreement is made for the benefit of Employee and Employer and all successors in interest to Employer's business, and it will inure to the benefit of and be binding upon Employee and Employer, and all successors in interest to Employer's interest, without the necessity of express assignment or further consent.

5.  <u>APPLICABLE LAW</u>.  THIS AGREEMENT WILL BE INTERPRETED, GOVERNED AND ENFORCED ACCORDING TO THE FEDERAL ARBITRATION ACT AND THE LAW OF THE STATE IN WHICH EMPLOYEE CURRENTLY IS EMPLOYED BY EMPLOYER OR MOST RECENTLY WAS EMPLOYED BY EMPLOYER.

C021910

- 4 -

6.    EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES.
Should a dispute or difference arise between Employee and Employer
concerning or relating in any way to this Agreement or Employee's
employment with Employer or Employee's separation from employment
with Employer, including whether Employee or Employer or any agent
of Employer violated any duty, law, regulation or public policy or
breached this Agreement, Employee and Employer shall confer and
attempt in good faith to resolve such dispute or difference.
Recognizing the importance of having a fair, timely, inexpensive
and binding method of resolving such dispute or difference,
Employee and Employer agree that if the dispute or difference
remains unresolved after Employee and Employer have conferred in
good faith, and if Employee desires to pursue Employee's claims or
contentions, Employee shall submit a timely written request to have
such dispute or difference resolved through impartial arbitration
conducted in accordance with the American Arbitration Association's
National Rules for the Resolution of Employment Disputes and held
in the county and state where Employee currently works for Employer
or most recently worked for Employer.

In any such arbitration proceeding, the impartial
arbitrator shall apply the terms of this Agreement as written, the
Federal Arbitration Act and other relevant federal and state laws,
including time limits on claims, and the party losing the arbitra-
tion shall bear the fees and expenses of the American Arbitration
Association and the impartial arbitrator.  The impartial arbitrator
shall have the authority to award to the prevailing party any
relief, including damages, costs and attorney's fees, available
under relevant laws.

Impartial arbitration, as provided above in this
Paragraph 6, shall be the exclusive, final and binding method of
resolving any dispute or difference between Employee and Employer
arising from, concerning or relating in any way to Employee's
employment with Employer or Employee's separation from employment
with Employer.  A legal action to maintain the status quo until the
arbitration award is rendered or to enforce the agreement to
arbitrate or the arbitration award may be filed and pursued in any
court having jurisdiction, but otherwise Employee shall not file
any lawsuit contending that Employer or any agent of Employer
violated any duty, law, regulation or public policy or breached
this Agreement.

7.    SEPARABILITY.  If any portion of this Agreement is held
to be invalid or unenforceable in any respect, Employee and
Employer agree that such invalid or unenforceable part will be
modified to permit the Agreement to be enforced to the maximum
extent permitted by the court, with the remaining portions
unaffected by the invalidity or unenforceability of any part of
this Agreement.

C021911

Policy #C-105 - Agreement #6

- 5 -

8.    COMPLETE AGREEMENT.  ASIDE FROM THE AMOUNTS OF EMPLOYEE'S
COMPENSATION AND EMPLOYEE'S ENTITLEMENT TO BENEFITS, THIS AGREEMENT
CONTAINS THE ENTIRE AGREEMENT BETWEEN EMPLOYER AND EMPLOYEE, AND
THE PARTIES CAN AMEND OR MODIFY THIS AGREEMENT ONLY BY A SUBSE-
QUENTLY-PREPARED WRITTEN AGREEMENT SIGNED BY BOTH PARTIES.

WITNESSES:                          EMPLOYEE:



EMPLOYER:

CINTAS CORPORATION

BY:

411185.1

C021912