UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

| | | |
|---|---|---|
| CINTAS CORPORATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:06-CV-00227-DRB |
| | ) | |
| RANDALL M. CORNELIUS, et al. | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO STAY ALL
PROCEEDINGS PENDING ACTION BY THE
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

TABLE OF CONTENTS

I.    Introduction......................................................................................................1

II.    Factual and Procedural Background...............................................................3

III.    This Court has Authority to Stay These Proceedings Pending the MDL
Determination, and District Courts Faced with Similar Circumstances
Typically Do Stay Proceedings Pending the MDL Panel's Transfer Ruling
.........................................................................................................................7

IV.    Efficiency, Justice and Judicial Economy Warrant a Temporary Stay of
Proceedings While the MDL Considers Respondents' Petition ..................10

V.    Conclusion ...................................................................................................15

## TABLE OF AUTHORITIES

Scan-Graphics, Inc., v. Photomatrix Corp.,
No. 91-4402, 1991 U.S. Dist. LEXIS 18868
(E.D. Pa. Dec. 31, 1991).................................................................11

AAACON Auto Transport, Inc. v. Barnes,
603 F. Supp. 1347 (S.D.N.Y. 1985) ............................................10

Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,
48 F. Supp. 2d 37 (D.D.C. 1999)....................................................9

Aikins v. Microsoft Corp.,
No. 00-0242, 2000 U.S. Dist. LEXIS 4371
(E.D. La. Mar. 23, 2000) ................................................................9

American Seafood, Inc. v. Magnolia Processing, Inc.,
No. 92-1030, 1992 U.S. Dist. LEXIS 7374
(E.D. Pa. May 6, 1992)..................................................................13

Arthur-Magna, Inc. v. Del-Val Fin. Corp.,
No. 90-4378, 1991 U.S. Dist. LEXIS 1431
(D.N.J. Feb. 1, 1991) ...................................................................10

D's Pet Supplies, Inc. v. Microsoft Corp.,
No. 99-76056, 2000 U.S. Dist. LEXIS 16482
(E.D. Mich. Feb. 7, 2000)...............................................................9

Falgoust v. Microsoft Corp.,
No. 00-0779, 2000 U.S. Dist. LEXIS 5417
(E.D. La. Apr. 19, 2000).................................................................9

Good v. Prudential Life Ins. Co. of Am.,
5 F. Supp. 2d 804 (N.D. Cal. 1998)................................................8

Harris v. Schering-Plough Corp.,
No. 01-2127, 2001 U.S. Dist. LEXIS 13705
(E.D. La. Aug. 28, 2001) ...............................................................................10


Kennedy v. Novartis Pharm. Corp.,
No. 02-2331, 2002 U.S. Dist. LEXIS 17266
(E.D. La. Sept. 12, 2002)...............................................................................8

Landis v. North Am. Co.,
299 U.S. 248 (1936)........................................................................................7

Medical Soc'y of N.Y. v. Conn. Gen. Corp.,
187 F. Supp. 2d 89 (S.D.N.Y. 2001) ...............................................................9

Merrill Lynch, Pierce, Fenner & Smith, Inc., v. King,
812 F. Supp. 1217 (M.D. Fla. 1993) ..............................................................11

Namovicz v. Cooper Tire & Rubber Co.,
225 F. Supp. 2d 582 (D. Md. 2001)...............................................................8

Paine Webber Inc. v. Faragalli,
61 F. 3d 1063 (3d Cir. 1995) ........................................................................10

Peterson v. Bayer Corp.,
No. 01-3467, 2002 U.S. Dist. LEXIS 2443 (E.D. La. Jan 25, 2002)..........7, 9

Portnoy v. Zenith Labs.,
No. 86-3512, 1987 U.S. Dist. LEXIS 16134
(D.D.C. Apr. 21, 1987)..................................................................................10

Richard C. Young & Co. v. Leventhal,
389 F. 3d 1 (1st Cir. 2004)............................................................................12

Rivers v. Walt Disney Co.,
980 F. Supp. 1358 (C.D. Cal. 1997).................................................8, 13, 14

Rosenfeld v. Hartford Fire Ins. Co.,
No. 88-2153, 1988 U.S. Dist. LEXIS 4068
(S.D.N.Y. May 10, 1998) ................................................................................8

Shearson Lehman Bros., Inc., v. Brady,
783 F. Supp. 1490 (D. Mass. 1991)..............................................................12

Tench v. Jackson Nat'l Life Ins. Co.,
No. 99-5182, 1999 U.S. Dist. LEXIS 18023
(N.D. Ill. Nov. 10, 1999) ................................................................................9

Weinke v. Microsoft Corp.,
84 F. Supp 2d 989 (E.D. Wis. 2000) ............................................................9

STATUTES, RULES AND REGULATIONS

9 U.S.C. §4 .....................................................................................1, 4, 10, 11
28 U.S.C. §1407.......................................................................................2, 7
29 U.S.C. §216(b) .........................................................................................3

SECONDARY AUTHORITIES

AAA Supplementary Class Action
Arbitration rules, Rule 3 .......................................................................1, 5, 6

## I. Introduction

The underlying petition is one of 70 identical Petitions to Compel

Arbitration filed by Cintas Corporation last month in federal district courts in 37

states. Respondents on these petitions are approximately 1,900 former and current

Cintas Corporation ("Cintas") employees who individually joined *Veliz v. Cintas*

*Corp.*, No. C-03-1180 (SBA), a class and collective action pending in the United

States District Court for the Northern District of California ("*Veliz* Action"). The *Veliz* Action alleges that Cintas misclassified its employees as exempt from statutory overtime and therefore failed to pay overtime premiums to those employees in violation of the Fair Labor Standards Act ("FLSA"), various state overtime laws, and ultimately ERISA.

Central to Cintas' Petitions to Compel Arbitration is its erroneous assertion that respondent employees have failed, neglected, or refused to arbitrate their overtime claims against Cintas. See 9 U.S.C. §4. Yet, the *Veliz* Action plaintiffs have initiated arbitration before the American Arbitration Association ("AAA") in San Francisco, California ("*Veliz* Arbitration"). And the question of whether all 1,900 arbitrating claimants (including respondents here) can pursue their overtime claims in that single class and collective arbitration is presently pending before the arbitrator, the Honorable Bruce Meyerson. Indeed, respondents **and** Cintas have already filed their opening briefs to Arbitrator Meyerson, pursuant to Rule 3 of the AAA's Supplementary Class Action Arbitration rules, asking him to determine under the AAA's procedures whether Cintas' arbitration clause permits or prohibits collective or class treatment of respondents' overtime claims.

Notwithstanding the *Veliz* Arbitration's pendency (since May 2004), Cintas recently filed this petition – and 69 others – to compel arbitration in 70 different

5

venues, instead of in the pending San Francisco arbitration venue. After respondents' counsel learned about Cintas' petitions – from our clients directly, as Cintas served each respondent separately and has thus far refused to serve respondents' counsel with any of the pleadings[1] – respondents promptly petitioned the Judicial Panel on Multidistrict Litigation ("MDL") to transfer all 70 federal actions to a single court (the *Veliz* Action court in San Francisco) for coordinated or consolidated pretrial proceedings under 28 U.S.C. §1407.[2]

Consolidation by the MDL is required when multiple civil actions involve one or more common fact questions and when transfer will conserve judicial and party resources, promote the convenience of parties and witnesses, and assure the actions' just and efficient resolution. Where 70 identical petitions have been filed in 70 different district courts, all turning on the same threshold arbitration questions and legal theories and all implicating the same defenses, transfer to a single court is not only warranted but imperative. Moreover, that transfer should be accomplished ***before*** respondents are forced to spend the time and expense responding to all 70 cookie-cutter actions in district courts located throughout the

---

[1]    While Cintas has refused to serve any of the pleadings on counsel for respondents, it did provide us with a sample pleading from one of these 70 cases "as a courtesy."

[2]    Respondents' counsel sent the petition to the MDL Panel on March 30, 2006.  That petition was deemed filed on April 7, 2006. On April 7, 2006, respondents also filed a motion requesting expedited resolution of the MDL petition by the Panel.

United States.[3]  On these facts, and given the MDL's mandate to advance the goals

of efficiency, justice and judicial economy, respondents request that this Court

stay all proceedings in this action until 30 days after the MDL's decision on

whether to transfer this and the 69 other petition actions for consolidated pretrial

proceedings. Indeed, at least one court has *sua sponte* stayed one of the 70 petition

actions, finding that it should not proceed while the respondents' MDL petition is

pending. Alternatively, should this Court decline to stay this action, respondents

request that the Court extend respondents' time to respond to the petition by 60

days so respondents may verify that service has been effected and may respond in

a single pleading.

## II.  Factual and Procedural Background

Each respondent in this action is an opt-in plaintiff in the *Veliz* Action who

individually filed a Consent to Sue form 29 U.S.C. §216(b). The *Veliz* Action

plaintiffs allege, on a collective-action basis, that Cintas violated the FLSA by

misclassifying them as exempt employees and by failing to pay them overtime pay

when due. The *Veliz* Action plaintiffs also allege, on a class-action basis, that

Cintas violated applicable states' overtime laws and further allege, again on a class

---

[3]        In providing Respondents' counsel with one sample of the pleadings in the 70 cases, Cintas'
counsel represented that the 70 cases are virtually identical.

basis, that Cintas violated their ERISA rights.

On August 8, 2003, Cintas moved the *Veliz* Action Court to compel arbitration of the FLSA and state claims of the initially named Action plaintiffs, based on employment agreements with those plaintiffs that included a mandatory arbitration clause. The *Veliz* Action Court initially ordered the first 55 of these plaintiffs to arbitrate their overtime claims, and later ruled that the arbitration must take place within the Northern District of California, under the venue provision of the Federal Arbitration Act ("FAA"), 9 U.S.C. §4. On May 4, 2004, the 55 *Veliz* Action plaintiffs who had been compelled to arbitrate, initiated a class/collective arbitration before the AAA under its Supplementary Rules for Class Arbitration (the "*Veliz* Arbitration"). Their arbitration demand stated that the plaintiffs/claimants were proceeding on their own behalf ***and on behalf of all other similarly situated Cintas employees who were, or would be, required to arbitrate their overtime claims against Cintas***.  *See* Arbitration Demand, AAA Case No. 11 160 01323 04, Ex. 1 to the Declaration of Steven W. Pepich in Support of Respondents' Motion to Stay All Proceedings Pending Action by the Judicial Panel on Multidistrict Litigation ("Pepich Decl."). Subsequently, the Veliz Arbitration claimants and Cintas jointly selected the Hon. Bruce Meyerson, a retired judge of the Arizona Court of Appeals to arbitrate the overtime dispute.

8

On February 9, 2006, the *Veliz* Arbitration claimants (now numbering almost 1,900 individuals) filed their clause construction motion pursuant to AAA Supplementary Class Arbitration Rule 3.[4]  This motion presents the threshold question of "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Supplementary Class Arbitration Rule 3.  In their clause construction brief, the *Veliz* Arbitration claimants demonstrated why the claimants, including respondents here and all respondents in the other petition actions, are entitled to participate in the pending *Veliz* Arbitration. Pepich Decl., Ex. 2.

On or about March 10, 2006 – more than a month *after* the *Veliz* Arbitration claimants filed their clause construction motion – Cintas filed 70 separate but identical petitions to compel arbitration. These petitions are identical, except for the identity of respondents. In each petition, Cintas seeks to compel respondents to

---

[4]        AAA Supplementary Class Arbitration Rule 3 provides, in part,:

            Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

arbitrate their overtime claims, notwithstanding the pendency of the *Veliz* Arbitration, in which those respondents seek to proceed as party claimants. Cintas' principal argument, presented in identical language in each petition, is that its employment agreement requires its employees to arbitrate in the counties where they work or last worked for Cintas.  Each of Cintas' petitions turns on the identical question of whether Cintas is correct that its arbitration provisions forbid class or collective treatment of the unpaid overtime claims – the same question pending in the *Veliz* Arbitration. On April 7, 2006, Cintas submitted its own 44-page clause-construction motion, presenting Arbitrator Meyerson a ***second*** motion on this point, but raising under AAA Rule 3 the identical issue of interpretation of the "counties" language that it has asserted in its petition to this Court. Pepich Decl., Ex. 3.  Arbitrator Meyerson has set a hearing on both clause construction cross-motions for May 9, 2006.

Notwithstanding Cintas' active involvement in the *Veliz* Arbitration, Cintas began individually serving its petitions on all respondents in late March 2006. Many respondents' responses to these petitions are soon due. Respondents' counsel cannot identify precisely when all of these responses are due, however, because, Cintas has refused to inform us when and how it served the petitions on each respondent.

On March 30, 2006, respondents' counsel initiated a petition before the

MDL requesting that all 70 of Cintas' petition actions be transferred to the *Veliz*

Action court for consolidation. *See* n.2, *supra*. Respondents' counsel also filed a

separate emergency request to the MDL to expedite resolution of the transfer

determination under 28 U.S.C. §1407. Respondents' petition and request are still

pending.  Respondents now move to stay proceedings here until the MDL has

decided the transfer and consolidation questions.

### III.   This Court has Authority to Stay These Proceedings Pending the MDL Determination, and District Courts Faced with Similar Circumstances Typically Do Stay Proceedings Pending the MDL Panel's Transfer Ruling

This Court has the authority to stay proceedings in this case pending the

MDL's transfer of the action. *Peterson v. Bayer Corp.*, No. 01-3467, 2002 U.S.

Dist. LEXIS 2443, at *3 (E.D. La. Jan 25, 2002) ("it is in the best interest of the

parties and of the judicial system to stay all proceedings in this action pending a

final determination by the [MDL] Panel so there will be some uniformity,

consistency, and predictability."); *see also Landis v. North Am. Co.*, 299 U.S. 248,

254 (1936) ("the power to stay proceedings is incidental to the power inherent in

every court to control the disposition of the causes on its docket with economy of

time and effort for itself, for counsel and for the litigants.").

Historically, federal district courts "frequently grant stays pending a

decision by the MDL Panel regarding whether to transfer a case." *Good v. Prudential Life Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998). As the courts have consistently recognized, "the interests of judicial economy" are "served by a temporary stay" pending a ruling by the MDL Panel. *Kennedy v. Novartis Pharm. Corp.*, No. 02-2331, 2002 U.S. Dist. LEXIS 17266, at *5 (E.D. La. Sept. 12, 2002); *see also Rosenfeld v. Hartford Fire Ins. Co.*, No. 88-2153, 1988 U.S. Dist. LEXIS 4068, at *5 (S.D.N.Y. May 10, 1998) ("We find that judicial resources and the defendants' resources may well be fruitlessly spent if a stay is not granted pending the outcome of the Panel's decision on the transfer motion."). "A stay is necessary to ensure that, in the event consolidation of all cases for pre-trial litigation is ordered, there is consistent treatment of the numerous lawsuits and that judicial resources are not wasted." *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 585 (D. Md. 2001).

District courts throughout the country have unfailingly concluded that it is "appropriate to stay preliminary pretrial proceedings while a motion to transfer" is pending before the MDL Panel to avoid precisely the type of wasteful and duplicative litigation that the MDL rules were designed to avoid. *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997); *Weinke v. Microsoft Corp.*, 84 F. Supp 2d 989, 990 (E.D. Wis. 2000) (issuing stay "in the interest of judicial

economy and to avoid inconsistent results"); *Aikins v. Microsoft Corp.*, No.

00-0242, 2000 U.S. Dist. LEXIS 4371, at *4 (E.D. La. Mar. 23, 2000) (issuing

stay on finding that "[c]onsistency and economy are both served by resolution of

these issues by a single court after transfer"); *D's Pet Supplies, Inc. v. Microsoft*

*Corp.*, No. 99-76056, 2000 U.S. Dist. LEXIS 16482, at *3 (E.D. Mich. Feb. 7,

2000) (finding that "the interests of justice would best be served, and the risk of

inconsistent rulings would be minimized, by staying all proceedings"); *Medical*

*Soc'y of N.Y. v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001) (noting

the "significant economies in having a single court decide a jurisdictional

question"); *Falgoust v. Microsoft Corp.*, No. 00-0779, 2000 U.S. Dist. LEXIS

5417, at *6 (E.D. La. Apr. 19, 2000) (granting a stay "even where a jurisdictional

objection is pending"); *Tench v. Jackson Nat'l Life Ins. Co.*, No. 995182, 1999

U.S. Dist. LEXIS 18023, at *3 (N.D. Ill. Nov. 10, 1999) ("Under these

circumstances, i.e., pending a decision by the MDL Panel whether to add a case,

stays are frequently granted to avoid duplicative efforts and preserve valuable

judicial resources."); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48

F. Supp. 2d 37, 43 (D.D.C. 1999) (granting a stay to "further judicial economy and

eliminate the potential for conflicting pretrial rulings"); *Peterson*, U.S. Dist.

LEXIS 2443, at *3 ("it is in the best interest of the parties and of the judicial

system to stay all proceedings in this action pending a final determination by the

[MDL] Panel so there will be some uniformity, consistency, and predictability.").[5]

In fact, the Honorable Thomas G. Nelson, United States Circuit Judge

sitting by designation in the District of Idaho, has already sua sponte issued an

order staying the Cintas petition action filed in that District pending the MDL

ruling. See Pepich Decl., Ex. 4.

## IV.  Efficiency, Justice and Judicial Economy Warrant a Temporary Stay of Proceedings While the MDL Considers Respondents' Petition

At the outset, we note a serious threshold question about whether Cintas'

petitions to compel arbitration have any basis in fact or law. An action to compel

arbitration under the FAA is available *only* when a respondent unequivocally

refuses to arbitrate. *Paine Webber Inc. v. Faragalli,* 61 F. 3d 1063, 1065 (3d Cir.

1995) (an unequivocal refusal to arbitrate is the necessary prerequisite to an action

under FAA §4 ); *AAACON Auto Transport, Inc. v. Barnes*, 603 F. Supp. 1347,

1349 (S.D.N.Y. 1985) (party must be "'aggrieved by the alleged failure, neglect or

---

[5]        *See also Harris v. Schering-Plough Corp.*, No. 01-2127, 2001 U.S. Dist. LEXIS 13705, at *10
(E.D. La. Aug. 28, 2001) (granting stay); *Arthur-Magna, Inc. v. Del-Val Fin. Corp.*, No. 90-4378, 1991 U.S. Dist.
LEXIS 1431, at *4 (D.N.J. Feb. 1, 1991) ("The Court finds that if a temporary stay can be characterized as a delay
prejudicial to plaintiffs, there are considerations of judicial economy . . . to warrant such a delay."); *Portnoy v.
Zenith Labs.*, No. 86-3512, 1987 U.S. Dist. LEXIS 16134, at *2 (D.D.C. Apr. 21, 1987) ("The law favors
coordination of related cases in order to eliminate the risk that parties will have to put forth duplicative cases or
defenses or engage in duplicative pre-trial tasks.").

refusal of another to arbitrate under a written agreement for arbitration'" before §4 is invoked.) (citation omitted). Where, as here, a party submits his or her claims to arbitration, even if he or she does so in a venue the opposing party challenges, there is *no* refusal or failure to arbitrate and hence no basis to petition under §4 of the FAA. *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. King*, 812 F. Supp. 1217 (M.D. Fla. 1993) (suit challenging arbitration forum, not arbitration itself, did not constitute refusal under §4); *Scan-Graphics, Inc., v. Photomatrix Corp.*, No. 91-4402, 1991 U.S. Dist. LEXIS 18868, *5*7 (E.D. Pa. Dec. 31, 1991) (where party has not refused to arbitrate but merely fails to agree with an opposing party on the arbitration's venue, opposing party is not aggrieved under §4 and cannot compel arbitration elsewhere). Cintas' rampage of petition filings is also inimical to the very purpose of the arbitration agreement Cintas purportedly seeks to enforce.  Central to the arbitration provisions at issue is the agreed-upon goal of accomplishing just and efficient dispute resolution.[6]  In a transparent attempt to pretermit a possible adverse clause construction ruling in the *Veliz* Arbitration, Cintas has engaged in massive forum shopping – in 70 different districts – to obtain judicial rulings that might counteract the Arbitrator's likely ruling.

---

[6]        For example, Cintas form employment agreements expressly recognize "the importance of having a fair, timely, inexpensive and binding method of resolving any [employer-employee] dispute."

Other courts in similar cases have properly refused to displace the pending arbitration as the decision-making authority on forum disputes. *See, e.g., Shearson Lehman Bros., Inc., v. Brady*, 783 F. Supp. 1490, 1496 (D. Mass. 1991) ("The inherent risks of cost and delay before arbitration could commence, should a trial court undertake to decide, subject to appeal to higher courts, disputes concerning where an application must be filed and where the arbitration must be held, are fundamentally inconsistent with the parties' agreement to resolve their disputes by arbitration."). Cintas' petition places before this Court the arbitration venue question that is squarely pending before Arbitrator Meyerson – a question that is solely his province to decide. *See Richard C. Young & Co. v. Leventhal*, 389 F. 3d 1, 4-5 (1st Cir. 2004) ("The dispute between the parties in this case over the location of the arbitration raises not a question of arbitrability but a procedural question and is therefore for the arbitrator, not the court. . . . We conclude that the District Court lacked the power to interpret the forum selection clause.").

Beyond these jurisdictional considerations, a stay of proceedings pending the anticipated MDL transfer order is appropriate because the petitions themselves are identical. All 70 petitions spring from the same rulings and determinations made in the *Veliz* Action. All raise the same factual and legal questions, involve the

same parties, and seek the same relief. A stay of proceedings is not only warranted, but in these circumstances is essential to prevent duplicative and costly efforts and a substantial likelihood of inconsistent, fragmented or disparate rulings. Without a stay, the parties will have to litigate a number of issues before this Court, *all* of which are presently pending before Arbitrator Meyerson. Worse yet, the MDL Panel is likely to transfer the Cintas' petitions, and any district court rulings would likely have to be re-litigated before the transferee court. There is simply no justification for the wasted effort and expense that can be avoided by a temporary stay. *See, e.g., American Seafood, Inc. v. Magnolia Processing, Inc.*, No. 92-1030, 1992 U.S. Dist. LEXIS 7374, at *6 (E.D. Pa. May 6, 1992) (duplicative motion practice demonstrates "that judicial economy and prejudice to the [respondents] weigh[s] heavily in favor of the stay.").

Judicial economy also strongly favors staying this case. If this Court proceeds to address the issues raised by Cintas' petition, and if the MDL transfers all of the Cintas' petitions, as is likely, "this Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge." *Rivers*, 980 F. Supp. at 1360. Indeed, any substantive rulings made on the Cintas' petition may be vacated upon transfer. *Id*. at 1361 ("[The] time and energy that this Court would devote to any rulings it might make . . . could be for

naught if this action is transferred to another court and that court modifies or vacates this Court's orders.").

Cintas cannot demonstrate that it would be prejudiced by a stay. The very issue raised by its petitions is already set for hearing in the *Veliz* Arbitration on May 9, 2006. Cintas could not hope to get a ruling on this or any other petition before then. And moreover, as noted above, Cintas' attempted "end-run" around the pending arbitration provides no basis upon which it can cogently argue prejudice.

Judicial economy and fundamental fairness are best served by having a single court hear Cintas' petitions (if, in fact, any court can hear them, given that no respondent has refused to arbitrate). A stay in this court – and all others affected by Cintas' Petitions – is the only just and effective step to that end. *See, e.g., Rivers*, 980 F. Supp. at 1362, n.5 "considerations of judicial economy" serve to "outweigh any prejudice"; *Arthur-Magna*, 1991 U.S. Dist. LEXIS 1431, at *1 ("Even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay.").[7]

---

[7]    At the appropriate time, respondents will seek sanctions against Cintas for bad-faith conduct in needlessly multiplying litigation by filing petitions in 70 federal courts in 37 states, when the central issue raised by these petitions is already set for decision in an on-going arbitration/litigation pending in the Northern District of California; for Cintas' improperly serving each respondent individually with the summons and petitions in an effort

## V.  Conclusion

Cintas' petition to compel arbitration here, like its 69 companions, tests judicial tolerance for gamesmanship. The very questions Cintas seeks to resolve through its petition are ripe to be answered in the *Veliz* arbitration forum that Cintas itself selected through an earlier motion to compel arbitration. To ask the federal courts and the respondents to expend their resources and efforts to answer the same questions 70 times approaches the unconscionable. Moreover, a stay in this Court until 30 days after the MDL issues its ruling works no prejudice to Cintas and saves this Court, respondents, and Cintas from costly and potentially needless litigation.

Accordingly, respondents request that these proceedings be stayed until 30 days after the MDL determines whether this petition action should be transferred for consolidated pretrial proceedings. Alternatively, should this Court decline the proposed stay, respondents request that the Court extend the time to respond for 60 days so that respondents may determine if service has been perfected and

---

to harass and intimidate respondents who are plaintiffs against Cintas in the Northern District of California; and for Cintas' refusal to allow respondents' counsel to accept service of these petitions on their behalf or to give respondents' counsel copies of these pleadings. Respondents request for sanctions will seek to recover costs and fees associated with (1) obtaining local counsel to respond to these 70 petitions (including obtaining *pro hac vice* admissions in these courts); (2) the time and effort involved in communicating with respondents regarding their being baselessly sued by Cintas' and its delay in and/or refusal to allow counsel to accept service on their behalf; (3) the time and effort that respondents' counsel spent meeting and conferring with Cintas' counsel over these service issues; (4) the time and effort in preparing stay motions to be filed in the 70 cases; and (5) the time and effort involved in filing the MDL petition and seeking expedited relief before the panel.

thereafter join their challenges to the petition in a single pleading.

Respectfully submitted this 25th day of April, 2006.

/s/ Henry Brewster
Henry Brewster (BREWH7737)
STEIN, BREWSTER & PILCHER LLC
P.O. Box 1051
Mobile, AL 36633
Telephone: 251/433-2002
Facsimile: 251/432-7756

Steven W. Pepich
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
Facsimile: 619/231-7423

Michael Rubin
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151
Facsimile: 415/362-8064

Theresa M. Traber
TRABER & VOORHEES
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
Facsimile: 626/577-7079

Attorneys for Respondents

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document on all counsel of record by placing a copy of same in the U.S. mail, postage prepaid and properly addressed on this the 25th day of April, 2006.

Brentley Tyler Cobb
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

Douglas B. Kauffman
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

M. Jefferson Starling, III
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

/s/Henry Brewster
Henry Brewster (BREWH7737)
STEIN, BREWSTER & PILCHER, LLC
P.O. Box 1051
Mobile, AL 36633
Telephone:  251-433-2002
Facsimile: 251-432-7756
E-mail:  hbrewster@steinandbrewster.com