1  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Mark C. Dosker (CA Bar #114789)
2  Michael W. Kelly (CA Bar #214038)
   Joseph A. Meckes (CA Bar #190279)
3  Angela N. O'Rourke (CA Bar #211912)
   Y. Anna Suh (CA Bar # 228632)
4  Michelle Full (CA Bar # 240973)
   One Maritime Plaza, Third Floor
5  San Francisco, CA  94111-3492
   Telephone:              +1.415.954.0200
6  Facsimile:              +1.415.393.9887

7  Attorneys for Respondent
   CINTAS CORPORATION
8

9                          **BEFORE THE**

10           **AMERICAN ARBITRATION ASSOCIATION**

11
    PAUL VELIZ, *et al.*, On Behalf of Themselves          AAA Case No. 11 160 01323 04
12  and All Others Similarly Situated,

13                    Claimants,

14           vs.                                            **RESPONDENT CINTAS
                                                            CORPORATION'S MOTION FOR
                                                            CLAUSE CONSTRUCTION**
15  CINTAS CORPORATION, an Ohio
    corporation,                                            **[AAA Supplemental Rule for Class
16                                                          Arbitration, Rule 3]**
                      Respondent.
17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No.  11 160 01323 04

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................................ i

I.    INTRODUCTION .................................................................................... 1

II.   SUMMARY OF ARGUMENT ................................................................ 1

III.  BACKGROUND AND RULINGS OF THE DISTRICT COURT BINDING IN THIS ARBITRATION .................................................... 4

    A.    District Court Motion to Compel Arbitration and Motion for Reconsideration .......................................................................... 5

    B.    Proceedings in District Court as to Opt-in Plaintiffs ................... 7

    C.    Proceedings in this Arbitration ................................................... 10

IV.   ARGUMENT ......................................................................................... 12

    A.    The Arbitration Agreements Cannot Be Construed to Permit Arbitration to Proceed on Behalf of a Class or Collectively ....... 12

        1.    Legal Standard In Clause Construction Proceeding .......... 12

        2.    State Law Standards for Construing Contracts ................. 15

        3.    Language of the Arbitration Agreements Cannot Be Read To Permit Arbitration to Proceed on Behalf of a Class or Collectively .............................................................. 18

            a.    The Informal Resolution Requirement Shows that Class Proceedings are Not Permitted .............. 18

            b.    The Express Place-of-Arbitration Provision Precludes These Plaintiffs From Proceeding with the Collective or Class-wide Arbitration They are Seeking .................... 20

            c.    Enforcement of Each Place-of-Arbitration Provisions is Also Necessary for a Fair Proceeding ................................ 21

                (1)    Background on Cintas' Business and Operations ............. 22

                (2)    Motor Carrier Act Exemption ............................. 23

                (3)    Outside Sales Exemption ..................................... 25

                (4)    The Arbitration Agreements Dictate that Cintas Be Allowed to Prove its FLSA and State Law Overtime Exemptions in Local Arbitrations ..................... 26

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No. 11 160 01323 04                    -i-

# TABLE OF CONTENTS (cont'd)

Page

    d.    Parties' Intent to Proceed Individually Evidenced by Contractual Limitations Period and Maximum Filing Fees ........................................................................................28

   4.   No Terms In Arbitration Agreements Imply or Suggest that Class or Collective Arbitration is Permitted ................................29

    a.    Arbitrator Meyerson's Decisions in *Sidhu* and *Smith* ....................30

    b.    Because Arbitrators Are Prohibited From Inserting Terms into the Parties' Agreement, an Arbitrator Cannot Permit Class Arbitration Unless the Parties So Intended ................32

    c.    The District Court has Held that Class Arbitration is Not Necessary for Plaintiffs to Vindicate their Statutory Rights ........................................................................................33

    d.    Language of National Rule 34(d) and Arbitration Agreements is Not Amenable to Construction Permitting Class Arbitration ................................................................35

B.   The Arbitration Agreements Do Not Permit Consolidation of the Claimant's Individual Claims ........................................................38

   1.   Arbitrations Between Cintas and Each Named Claimant is Required to Be Held in the State and County Where Each Named Claimant Last Worked for Cintas ....................................39

   2.   The Arbitrator Cannot Consolidate Arbitration Proceedings Where the Separate Arbitration Agreements are Silent on the Issue of Consolidation ................................................................41

   3.   The Arbitrator Cannot Invalidate the Terms of the Parties' Arbitration Agreement to Consolidate Multiple Arbitration Proceedings ........................................................................42

   4.   The Arbitrator Cannot Consolidate Multiple Arbitration Proceedings Where Each Proceeding Requires Individualized Factual Analysis ........................................................................43

V.    CONCLUSION........................................................................44

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No. 11 160 01323 04

-ii-

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Anheuser-Busch, Inc. v. Beer Drivers, Local Union No. 744, Int'l Bhd. of Teamsters*, 280 F.3d 1133 (7th Cir. 2002) ................................................................. 14

*Baesler v. Continental Grain Co.*, 900 F.2d 1193 (8th Cir. 1990) ................................. 41

*Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217 (2d Cir. 2002) .......................... 24

*Bristol-Myers Squibb Co. v. Ikon Office Sol'ns, Inc.*, 295 F.3d 680 (7th Cir. 2002) .................... 15

*Burnett Plaza Assocs. v. NCNB Tex. Nat'l Bank*, No. 3:89-CV-1290-X, 1994 U.S. Dist. LEXIS 7781 (N.D. Tex. 1994) ................................................................. 13

*Cahill v. Liberty Mut. Ins. Co.* 80 F.3d 336 (9th Cir. 1996) ...................................... 37

*Carter v. Countrywide*, 362 F.3d 294 (5th Cir. 2004) ................................................ 21

*Carter v. Countrywide*, 189 F. Supp. 2d 606 (N.D. Tex. 2002) ................................ 36

*Chao v. First Class Coach Co.*, 214 F. Supp. 2d 1263 (M.D. Fla. 2001) ..................... 25

*Compania Espanola de Petroleos, S. A. v. Nereus Shipping, S. A.*, 527 F.2d 966 (2d Cir. 1975) ................................................................. 43

*In re Consolidated Parlodel Litig.*, 182 F.R.D. 441 (D.N.J. 1998) .............................. 13

*Daniel Constr. Co., Div. of Daniel Int'l Corp. v. Int'l Union of Operating Engineers, Local 513*, 570 F. Supp. 299 (E.D. Mo. 1983) ....................................... 15

*Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145 (5th Cir. 1987) .......... 41

*Detroit Coil Co. v. Int'l Assoc. of Machinists & Aerospace Workers*, 594 F.2d 575 (6th Cir. 1979) ................................................................. 14

*Fix v. Quantum Indus. Ptnrs. LDC*, 374 F.3d 549 (7th Cir. 2004) .............................. 16

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) ................................. 13

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ............................ 31, 33, 37

*Glencore, Ltd. v. Schnitzer Steel Prods. Co.*, 189 F.3d 264 (2d Cir. 1999) ................. 35

*Golden v. City of Columbus*, 404 F.3d 950 (6th Cir. 2005) ...................................... 13

*Gov't of U.K. of Gr. Brit. v. Boeing Co.*, 998 F.2d 68 (2d Cir. 1993) ("*Boeing*") ......... 41, 42

*Hutson v. Rent-A-Center, Inc.*, 209 F. Supp. 2d 1353 (M.D. Ga. 2001) ..................... 24

*Hyundai Am. v. Meissner & Wurst GmbH & Co.-U.S. Operations*, 26 F. Supp. 2d 1217 (N.D. Cal. 1998) ................................................................. 42, 43

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -iii-
AAA Case No.  11 160 01323 04

# TABLE OF AUTHORITIES (Cont'd)

Page

## FEDERAL CASES (Cont'd)

*Klefstad v. Am. Cent. Ins. Co.*, 207 F.2d 288 (7th Cir. 1953) ........................................ 16

*Klitzke v. Steiner Corp.*, 110 F.3d 1465 (9th Cir. 1997) .................................... 24, 25

*Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996) .......................... 6, 34, 36

*Licciardi v. Kropp Forge Div. Employees' Retirement Plan*, 797 F. Supp. 1375 (N.D. Ill. 1992).......................................................................................... 17

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995)............................ 17

*Morris v. McComb*, 332 U.S. 422 (1947)................................................... 24, 25

*Much v. Pac. Mut. Life Ins. Co.*, 266 F.3d 637 (7th Cir. 2001) ..................................... 16

*N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160 (2d Cir. 1995) ..................... 43

*New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1 (1st Cir. 1988)....................... 42

*Painewebber, Inc. v. Fowler*, 791 F. Supp. 821 (D. Kan. 1992) ................................ 42

*Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969 (2d Cir. 1974) .......................................................... 35

*Peraro ex rel. Castro v. Chemlawn Services Corp.*, 692 F. Supp. 109 (D. Conn. 1988).................................................................................................. 24

*Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001)................................................. 35

*Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281 (11th Cir. 1989)................................................................................................. 41

*Reich v. American Driver Serv.*, 33 F.3d 1153 (9th Cir. 1994).............................. 25

*In re Repetitive Stress Injury Litig.*, 11 F.3d 368 (2d Cir. 1993) ............................. 13

*Rex Paper Co. v. Reichhold Chems., Inc.*, 252 F. Supp. 314 (W.D. Mich. 1966) .................. 13

*Robinson v. Warner*, 370 F. Supp. 828 (D.R.I. 1974)......................................... 43

*Rolls-Royce Indus. Power, Inc. v. Zurn EPC Servs.*, No. 01 C 5608, 2001 U.S. Dist. LEXIS 18278 (N.D. Ill. Nov. 6, 2001) ............................................... 41

*Schneck v. IBM*, No. 92-4370 (GEB), 1996 U.S. Dist. LEXIS 10126 (D.N.J. Jun. 24, 1996)............................................................................................... 13

*Seguro de Servicio de Salud v. McAuto Systems Group, Inc.*, 878 F.2d 5 (1st Cir. 1989)................................................................................................. 42, 43

*Seidel v. Houston Cas. Co.*, 375 F. Supp. 2d 211 (S.D.N.Y. 2005) ......................... 15

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No. 11 160 01323 04

-iv-

## TABLE OF AUTHORITIES (Cont'd)

Page

### FEDERAL CASES (Cont'd)

*Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720 (7th Cir. 2004) ........................................... 41

*Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211 (D. Colo. 2005) ........................................ 15

*Thor Seafood Corp. v. Supply Mgmt. Servs.*, 352 F. Supp. 2d 1128 (C.D. Cal. 2005)................................................................................................................................. 16

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 438 F.3d 376 (4th Cir. 2006)........................................ 13

*Trident Ctr. v. Connecticut General Life Ins.*, 847 F.2d 564 (9th Cir. 1988) ............................. 17

*United States v. R. Enters., Inc.*, 498 U.S. 292 (1991) ........................................................... 13

*United Steelworkers of America v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960) ..................................................................................................................... 14, 20, 32, 33

*Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468 (1989) .......................................................... 14, 15

*W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258 (9th Cir. 1992)................................. 14

*Weyerhaeuser Co. v. W. Seas Shipping Co.*, 743 F.2d 635 (9th Cir. 1984) ............................... 41

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)..................................... 13

### FEDERAL STATUTES

29 C.F.R. § 541.500 ................................................................................................................ 26

29 C.F.R. § 541.505 ................................................................................................................ 26

29 C.F.R. § 782.2 .................................................................................................................... 24

49 U.S.C. §13102 .................................................................................................................... 24

49 U.S.C. § 13501 ................................................................................................................... 24

29 U.S.C. § 213(a) ................................................................................................................... 25

Fed. R. Civ. P. 23(b)............................................................................................................... 10

### STATE CASES

*24 Leggett St. Ltd. Pshp. v. Beacon Indus.*, 685 A.2d 305 (Conn. 1996)...................................... 38

*Abeles v. Adams Eng'g Co.*, 165 A.2d 55 (N.J. App. Div. 1960) ............................................. 38

*Balfour v. Commercial Metals Co.*, 607 P.2d 856 (Wash. 1980)............................................... 43

*Bay County Bldg. Auth. v. Spence Bros.*, 362 N.W.2d 739 (Mich. Ct. App. 1984)..................... 42

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION        –v–
AAA Case No. 11 160 01323 04

**TABLE OF AUTHORITIES (Cont'd)**

Page

**STATE CASES (Cont'd)**

*Bonney v. Citizens' Mut. Auto. Ins. Co.,* 53 N.W.2d 321 (Mich. 1952) .......................................... 16

*Chula Vista Police Officers' Assn. v. Cole,* 107 Cal. App. 3d 242 (1980).................................... 16

*Cirrito v. Turner Constr. Co.,* 458 A.2d 678 (Conn. 1983) ...................................................... 16

*City of San Jose v. Superior Court,* 12 Cal. 3d 447 (1974)...................................................... 37

*Communications Workers of Am. Local 1087 v. Monmouth County Bd. of Social Servs.,* 476 A.2d 777 (N.J. 1984) .............................................................. 15, 16

*Cullman Ventures, Inc. v. Conk,* 252 A.D.2d 222 (N.Y. App. Div. 1998) .................................. 43

*Denver v. Denver Firefighters Local No. 858,* 663 P.2d 1032 (Colo. 1983) ............................ 15

*DirecTV v. Cable Connection Inc. et al.,* Case No. BS095987 (Los Angeles Superior Court, Nov. 11, 2005).......................................................................... 3, 32, 33

*Dugan v. Grzybowski,* 332 A.2d 97 (Conn. 1973) .......................................................... 17

*Edwards v. State,* 178 N.Y.S.2d 287 (N.Y. Ct. Cl. 1958) .................................................. 17

*Harseim v. Booth,* 33 N.E. 1016 (Ind. 1893) ................................................................. 17

*Harty v. Cantor Fitzgerald & Co.,* 881 A.2d 139 (Conn. 2005).......................................... 15

*Hawkins v. Great W. R. R. Co.,* 17 Mich. 57 (1868)........................................................ 38

*Haywood v. Fowler,* 475 N.W.2d 458 (Mich. Ct. App. 1991)............................................ 16

*Hughes v. Toledo Scale & Cash Register Co.,* 86 S.W. 895 (Mo. Ct. App. 1905)....................... 17

*Int'l Bhd. of Elec. Workers v. Citizens Gas & Coke Utility,* 428 N.E.2d 1320 (Ind. Ct. App. 1981)........................................................................... 14, 15

*Jensen v. Traders & Gen. Ins. Co.,* 52 Cal. 2d 786 (1959) ................................................ 16

*Jewel Tea Co. v. Watkins,* 145 P. 719 (Colo. Ct. App. 1914) ............................................. 38

*Louisville & C. Packet Co. v. Rogers,* 49 N.E. 970 (Ind. Ct. App. 1898)............................. 16, 17

*In re Marriage of Stokes,* 608 P.2d 824 (Colo. Ct. App. 1979) .......................................... 16

*Merrill Lynch, Pierce, Fenner & Smith v. Adler,* 234 A.D.2d 139 (N.Y. App. Div. 1996).......................................................................... 17

*Metropolitan Life Ins. Co. v. Noble Lowndes Int'l,* 643 N.E.2d 504 (N.Y. 1994) .................... 38

*Northwest Bergen County Utils. Auth. v. Midland Park,* 604 A.2d 229 (N.J. Super. Ct. 1992)............................................................................ 17

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -vi-
AAA Case No. 11 160 01323 04

## TABLE OF AUTHORITIES (Cont'd)

Page

## STATE CASES (Cont'd)

*OParker v. McCaw*, 125 Cal. App. 4th 1494 (2005)............................................................ 42

*Roberts v. Adams*, 47 P.3d 690 (Colo. Ct. App. 2001) ................................................. 17

*Rockland County Bd. of Coop. Educ. Servs. v. BOCES Staff Ass'n*, 308 A.D.2d 452 (N.Y. App. Div. 2003)........................................................................................ 15

*Rumbin v. Utica Mut. Ins. Co.*, 757 A.2d 526 (Conn. 2000)......................................... 16

*Save Our Little Vermillion Env't v. Illinois Cement Co.*, 725 N.E.2d 386 (Ill. App. Ct. 2000).................................................................................................... 37, 38

*Schlessinger v. Rosenfeld, Meyer & Susman,* 40 Cal. App. 4th 1096 (1995) .............................. 35

*Scotch Plains-Fanwood Bd. of Educ. v. Scotch Plains-Fanwood Educ. Ass'n*, 651 A.2d 1018 (N.J. 1995) .......................................................................................... 14

*Scullin Steel Co. v. Mississippi Valley Iron Co.*, 273 S.W. 95 (Mo. 1925)................................... 38

*Soukup v. Employers' Liab. Assur. Corp.*, 108 S.W.2d 86, 92 (Mo. 1937) ................................. 18

*Singer v. Goff*, 54 N.W.2d 290 (Mich. 1952)......................................................... 17

*Whiteside v. Tenet Healthcare Corp.*, 101 Cal. App. 4th 693 (2002) ......................................... 15

*Zollman v. Geneva Leasing Assocs.*, 780 N.E.2d 387 (Ind. Ct. App. 2002) ............................ 15, 16

## STATE STATUTES

Cal. Code Civ. Proc. § 1639................................................................................. 15

## MISCELLANEOUS

5 CORBIN ON CONTRACTS §24.28 ........................................................................ 38

9 WIGMORE ON EVIDENCE, § 2486 ...................................................................... 13

DAN B. DOBBS, LAW OF REMEDIES, §1.1(1993)................................................... 36

DAN B. DOBBS, LAW OF REMEDIES (1972) ......................................................... 36

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No.  11 160 01323 04

-vii-

## I.    **INTRODUCTION**

In this arbitration, fifteen (15) former employees of Cintas Corporation ("Cintas"), purporting to represent a class of similarly situated persons, claim that Cintas improperly designated them as "exempt" employees under federal and state overtime laws (the "Named Claimants").[1]  Under Rule 3 of the American Arbitration Association's Supplemental Rules for Class Arbitration ("Supplemental Rules" or "Suppl. Rules"), as a threshold matter, the Arbitrator must determine whether the individual arbitration agreements between Cintas and the Named Claimants (the "Arbitration Agreements") permit arbitration to proceed on behalf of the class identified by the Named Claimants.[2]  Because the express terms of the Arbitration Agreements do not themselves permit class or collective proceedings in arbitration, the Arbitrator must issue a Clause Construction Award so ruling.  Further, the Arbitrator must also rule that these Named Claimants cannot proceed collectively either by themselves or on behalf of others because doing so would directly contradict express terms in the Arbitration Agreements and is not consistent with the law.

## II.    **SUMMARY OF ARGUMENT**

It is the Named Claimants' burden to show that the terms of the Arbitration Agreements themselves "permit arbitration to proceed on behalf of ... a class." Suppl. Rule 3.  There is, however, no language in the Arbitration Agreements that can be said to permit class arbitration.  Indeed, to rule that the Arbitration Agreements permit arbitration to proceed on behalf of a class

---

[1]  The claimants identified in the Demand for Arbitration as purporting to represent others in this arbitration are Paul Veliz, James White, Mark Chainuck, Tade L. Wasmer, Jeff Jay, Aaron Zadnick, Earl C. Woods, Jr., Bobby Hodge, Amber Kelly and Samuel Williams.  Cintas notes, however, that five other plaintiffs named as class representatives in the First Amended Complaint were also compelled to arbitrate: Tom Jaramillo, Mark Fragola, John Cruz, Bryan Cruse and Julian Nazareth.  To eliminate any doubts, Cintas treats these others as Named Claimants for purposes of this motion, even though their status as such is unclear from the Demand for Arbitration.

[2]  The employment agreement between Cintas and the each of the Named Claimants that contains the relevant arbitration provision are attached to the Declaration of Joseph A. Meckes ("Meckes Decl.") as Exhibit 1.  Those agreements are referred to herein as the "Arbitration Agreements."

CINTAS' CLAUSE CONSTRUCTION MOTION          -1-
No. 11 160 01323 04

1    would require the Arbitrator to ignore and to invalidate several of the Arbitration Agreements'

2    express terms.  Because there is no term in the Arbitration Agreements that permits class

3    nationwide proceedings (and many terms confirm that it is not permitted), the Named Claimants

4    cannot meet their burden and, therefore, cannot proceed as a class or collectively in this

5    arbitration.

6         First and foremost, the language of the Arbitration Agreements is not amenable to an

7    interpretation that permits class arbitration because an employee is only allowed to initiate

8    arbitration of a claim if he or she has first tried informally to resolve that specific claim with

9    Cintas.  It is only *after* those efforts have failed that any employee has the right to arbitrate a

10   dispute that he or she tried in good faith, but failed, to resolve with Cintas.  Because no individual

11   employees have the right or authority to resolve claims on behalf of a class, class disputes are

12   simply not arbitrable, and the Arbitration Agreements cannot be construed to permit class

13   proceedings.

14        Second, each of the Arbitration Agreements contains an express place-of-arbitration term

15   requiring that any arbitration be held in the state and county where the individual employee last

16   worked for Cintas.  At the very least, this term—which Judge Armstrong has already held to be

17   enforceable—does not allow the kind of multi-state class or collective arbitration that the Named

18   Claimants are seeking here.  The place-of-arbitration term also confirms that the parties did not

19   intend to permit their disputes to be resolved on a class basis or collectively in a place remote

20   from the locations where each of the employees involved last worked for Cintas.

21        Permitting class or collective proceedings despite the place-of-arbitration term would also

22   be inconsistent with the contractual requirement that arbitration be a "fair, timely and efficient"

23   manner of resolving disputes.  Only through arbitration locally pursuant to the place-of-arbitration

24   term, where Cintas can present its individual defenses to putative class members' overtime

25   claims, can Cintas obtain a <u>fair</u> arbitration, to which it is entitled under the terms of each of the

26   parties' agreements.

27        Other terms of the Arbitration Agreements also strongly confirm that the parties did not

28   intend to permit arbitration to proceed on behalf of a class.  For example, the contractual one-year

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

**CINTAS' CLAUSE CONSTRUCTION MOTION**    -2-
**AAA Case No. 11 160 01323 04**

1   limitations period that expires one year after the claim arose or one year after the individual

2   claimant left Cintas' employ is inconsistent with an intention to permit such claimants to proceed

3   on behalf of a class. Further, the language in the 1999 and 2001 agreements limiting a claimant's

4   share of the initial filing fee to $100 further indicates that the parties expected only individual

5   claims in arbitration. If the parties had intended to permit class or collective proceeding they

6   certainly would have addressed how costs would be allocated if claimants undertook to proceed

7   collectively or on behalf of a class.

8           There is no term in the Arbitration Agreements and no legal principles that can assist the

9   Named Claimants in meeting their burden. In the only court opinion reviewing a clause

10  construction award published on the Class Arbitration Docket of the American Arbitration

11  Association ("AAA"), the reviewing court held that an arbitral panel exceeded its authority when

12  it construed an agreement to permit class arbitration even though the agreement was silent on the

13  subject and the parties' intent could not be discerned. *DirecTV v. Cable Connection Inc. et al.,*

14  Case No. BS095987 (Los Angeles Superior Court, Nov. 11, 2005). Meckes Decl. Ex. 21.

15  *DirecTV* holds that to interpret an arbitration agreement to somehow permit class arbitration

16  under these circumstances violates basic maxims of contract construction by improperly inserting

17  terms into the parties' agreement. *Id.*

18          Moreover, Judge Armstrong has issued rulings—which are binding in this arbitration—

19  dictating that courtroom procedures, including the class mechanism, are not imported into

20  arbitration and are not necessary for claimants in arbitration to vindicate their statutory rights.

21  Meckes Decl. Ex. 8 at 4-6 (*Veliz* Dkt. No. 426). According to Judge Armstrong and the

22  authorities she cited from the Unites States Supreme Court and various federal circuit courts of

23  appeals, a plaintiff asserting claims under the Fair Labor Standards Act ("FLSA") forfeits any

24  procedural right to proceed collectively that might otherwise be available under the FLSA when

25  he or she agrees to arbitrate. *Id.* at 6.

26          Language in the Arbitration Agreements and in the National Rules for the Resolution of

27  Employment Disputes ("National Rules") regarding the "remedies" and/or "relief" the Arbitrator

28  is empowered to grant does not create any ambiguity as to whether the Arbitration Agreements

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

**CINTAS' CLAUSE CONSTRUCTION MOTION**          -3-
**AAA Case No. 11 160 01323 04**

1  permit class proceedings.  It is well established that procedural rights, including any right to

2  proceed as a class, are considered neither "remedies" nor "relief" in any sense of those words.

3       The parties' explicit place-of-arbitration term and core legal principles also preclude the

4  Named Claimants from pursuing their individual claims collectively or on behalf of other former

5  or current Cintas employees.  Initially, the individual arbitration agreements between the Named

6  Claimants and Cintas dictate that these arbitrations be held in different counties across the

7  country—not together in San Francisco.  Even if the Arbitration Agreements were silent on the

8  question of consolidation (which they are not by virtue of the place-of-arbitration term), because

9  arbitral jurisdiction is derived solely from the parties' agreement to arbitrate, the Arbitrator would

10  have no jurisdiction or authority to consolidate their claims or the claims of any other employees

11  who entered into individual employment agreements with Cintas.

12

13  **III.**    **BACKGROUND AND RULINGS OF THE DISTRICT COURT BINDING IN THIS**

14  **ARBITRATION**

15       On March 19, 2003, a group of fifteen (15) plaintiffs filed an action against Cintas in the

16  United States District Court for the Northern District of California alleging that Cintas improperly

17  characterized them as exempt employees (the "District Court Action"). [3]  From the outset, the

18  District Court plaintiffs have tried every possible means to avoid their obligation to arbitrate in

19  accordance with the terms of their agreements.  Now that the District Court has unequivocally

20  ruled that those agreements are enforceable according to their terms, several of the same plaintiffs

21  who are subject to the Court's orders have shifted their strategy to the arbitral forum, still seeking

22  to modify the terms of their agreements to obtain a tactical advantage.

23  ///

24  ///

25  ///

26

27  [3]  Plaintiffs filed a First Amended Complaint on May 15, 2003, which added five additional plaintiffs.  This First Amended Complaint was later incorporated by reference into claimants'

28  Demand for Arbitration.  Meckes Decl. Ex. 4.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -4-
AAA Case No. 11 160 01323 04

1    Under Supplemental Rule 1(c), however, the District Court's orders are binding in this

2    arbitration.  Thus, Cintas respectfully emphasizes that for the Arbitrator to understand the scope

3    of his authority, as limited and defined by the District Court, it is necessary to review the District

4    Court proceedings to date in some detail.

5    **A.    DISTRICT COURT MOTION TO COMPEL ARBITRATION AND MOTION FOR
           RECONSIDERATION**

6

7    Shortly after Cintas was served with the summons and complaint in the District Court

8    Action, Cintas moved to compel arbitration under the terms of the arbitration agreements between

9    Cintas and the twenty (20) named plaintiffs as well as another forty-six (46) individuals who had

10   by then "opted-in" to the case.  Rather than accepting their obligation to arbitrate, plaintiffs

11   fought tenaciously to keep their claims out of arbitration.  On April 5, 2004, Judge Armstrong

12   issued a 59-page order compelling almost all of the original named and opt-in plaintiffs to

13   arbitration.  Meckes Decl. Ex. 3 (*Veliz* Dkt. No. 140).

14   The Court's April 5, 2004 Order invalidated and severed a couple minor terms in certain

15   jurisdictions, but held that the remaining terms of the Arbitration Agreements were enforceable as

16   written.[4]  *Id.* at 58-59.  Because each agreement contained a governing law provision that

17   required the Court to apply the law of the state where each individual named or opt-in plaintiff

18   last worked for Cintas, the Court analyzed each plaintiff's agreement under the law of the place

19   where each individual plaintiff had last worked for Cintas.  *Id.* at 15.  Applying the laws of the

20   eleven (11) states as to the limited number of persons then at issue, the Court expressly rejected

21   (with a few limited exceptions) plaintiffs' arguments that the arbitration agreements were unfair

22   or adhesive in nature, accepting evidence presented by Cintas that the agreements were not

23   presented on a take-it-or-leave-it basis and that there were no adverse consequences for

24   employees who had declined to sign similar agreements.  *Id.* at 18, 26, 38, 41, 47; *see also* Meckes

25

26   [4]   As to only those plaintiffs who were subject to that initial motion and who last worked for
         Cintas in the Second, Fourth, Fifth, Sixth, Ninth and Tenth Circuits, the Court invalidated a
27       provision in an early version of the arbitration agreements that provided for cost-shifting to a
         claimant if he or she was the losing party as well the agreements' one-year limitations period.
28       Meckes Decl. Ex. 3 at 59.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -5-
AAA Case No. 11 160 01323 04

1    Decl. Ex. 8 at 11 (*Veliz* Dkt. No. 426). Ultimately, with respect to 56 named and opt-in plaintiffs,

2    including the Named Claimants here, the Court found their agreements to be enforceable and

3    compelled them to arbitrate.

4          Unhappy with Judge Armstrong's order compelling them to arbitrate, plaintiffs, including

5    the Named Claimants here, sought reconsideration of the Court's April 5, 2004 Order on a

6    number of grounds. First, plaintiffs argued that the costs of arbitration would prevent them from

7    proceeding as a class. After initiating this arbitration, plaintiffs' counsel discovered that they had

8    misapprehended the expenses associated with class arbitration proceedings. Meckes Decl. Ex. 6

9    at 4 (*Veliz* Dkt. No. 384). Plaintiffs argued to the Court that these costs would prevent them from

10   effectively vindicating their statutory rights in arbitration because they would be unable to

11   proceed on behalf of a class or collectively. *Id.*

12         In its May 4, 2005 Order, after extensive briefing, the Court dismissed this argument

13   outright. Meckes Decl. Ex. 8 at 4-6 (*Veliz* Dkt. No. 426). The Court held that even if the costs of

14   class arbitration stood as a *complete bar* to class proceedings, this would not preclude the

15   plaintiffs from vindicating their statutory rights. *Id.* So long as they have the ability to proceed

16   individually, the Court held that plaintiffs can effectively vindicate their statutory rights in

17   arbitration even where class proceedings are *not* available. *Id.* The Court further held that even if

18   the plaintiffs had previously had a procedural right under the FLSA to pursue a collective action,

19   they had forfeited that right when they agreed to arbitrate their disputes with Cintas. *Id.* at 6

20   (citing *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 320 (9th Cir. 1996)).

21         Plaintiffs also argued that the Court should invalidate the place-of-arbitration provisions

22   because their enforcement would "result in the fragmentation of claims that federal (and state)

23   law authorizes to be brought in a single proceeding." Meckes Decl. Ex. 6 at 24 (*Veliz* Dkt. No.

24   384). Plaintiffs also asked the Court to invalidate the place-of-arbitration provisions because

25   plaintiffs would "effectively be deprived of [their] day in court were the clause enforced." *Id.* at

26   23. Thus, plaintiffs contended that "because Cintas' forum selection clause would discourage (if

27   not render impossible) the enforcement of federal labor law protections, that clause is

28   unenforceable and unconscionable for that reason as well." *Id.* at 24.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -6-
AAA Case No. 11 160 01323 04

1    The Court rejected plaintiffs' arguments outright and specifically ruled that plaintiffs had

2    waived any arguments that the place-of-arbitration provisions were unfair or otherwise

3    unenforceable:

> Plaintiffs did not assert that the place-of-arbitration provisions in the
> arbitration agreement were unenforceable in briefing on Defendant's
> Motion to Compel Arbitration, nor did Plaintiffs raise it as grounds
> for relief in its Motion for Reconsideration pursuant to Civ. L.R. 7-
> 9. Accordingly, to the extent plaintiffs argue that these provisions
> are unfair, they have waived those arguments.

8    Meckes Decl. Ex. 8 at 12 n.8 (*Veliz* Dkt. No. 426). Because Judge Armstrong has already ruled

9    that Named Claimants have waived any arguments that the place-of-arbitration provision is

10    unfair, unconscionable or otherwise unenforceable, those issues have been resolved. Moreover,

11    under Supplemental Rule 1(c) and otherwise, this Arbitrator has no jurisdiction or discretion to

12    consider any such argument.

13    The Court went on to state that, solely as to the 56 plaintiffs it had compelled to arbitrate,

14    it was powerless to enforce the place-of-arbitration provisions under Section 4 of the Federal

15    Arbitration Act, which provides that the hearing on any arbitration compelled by the court "shall

16    be within the district in which the petition for an order directing such arbitration is filed." *Id.* at

17    11-13. Notably, however, the District Court did not purport to limit Cintas' right to enforce those

18    provisions in arbitration or direct that the AAA refrain from enforcing those provisions under the

19    parties' agreements. *Id.* Indeed, as noted above, the Court held that plaintiffs had waived any

20    argument that those provisions were not enforceable. *Id.* at 12 n.8.

## B.    PROCEEDINGS IN DISTRICT COURT AS TO OPT-IN PLAINTIFFS

22    Because the Court's April 5, 2004 and May 4, 2005 Orders had only applied to the 56

23    named and opt-in plaintiffs whom the Court had compelled to arbitrate, those Orders did not

24    decide whether the approximately 2,200 opt-in plaintiffs who had opted in to the District Court

25    Action in the interim were obligated to arbitrate and, accordingly, as of May 4, 2005, the matters

26    as to those opt-in plaintiffs remained unsettled. In the summer of 2004, the parties had stipulated

27    to an order compelling about eleven (11) opt-in plaintiffs from certain states to arbitration. But

28    that stipulated order did not address whether their place-of-arbitration provisions would be

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION        -7-
AAA Case No. 11 160 01323 04

1   enforced or whether the District Court would compel the vast majority of the opt-in plaintiffs

2   (approximately 1,900) to arbitration.  Meckes Decl. Ex. 5 at 2 (*Veliz* Dkt. No. 160).

3         Although the Court's May 4, 2005 Order compelling these 56 plaintiffs to arbitrate in the

4   Northern District of California did not in any way limit Cintas' right to enforce the relevant place-

5   of-arbitration terms, plaintiffs' counsel had taken the position that an order under FAA Section 4

6   somehow gave plaintiffs license to proceed collectively and in violation of their express place-of-

7   arbitration terms.  Previously, at the first opportunity after plaintiffs' counsel first took that

8   position, Cintas reserved the right to enforce the arbitration agreements of the remaining 1,900

9   opt-in plaintiffs, who were not subject to the Court's order, by moving to stay under FAA Section

10   3 and not moving in the Northern District of California to compel under Section 4.  *See* Meckes

11   Decl. ¶ 10; *see also, e.g.*, Meckes Decl. Ex. 7 at 23 n.35 (*Veliz* Dkt. No. 388).

12         Because a motion under Section 4 of the FAA in the District Court Action was

13   unnecessary to enforce the arbitration agreements as to the remaining 1,900 opt-in plaintiffs,

14   Cintas elected to move in the Northern District of California only for an order *staying* further

15   litigation under Section 3 of the FAA until each of those approximately 1,900 plaintiffs had

16   arbitrated their disputes with Cintas in accordance with the terms of each of their agreements.

17   Meckes Decl. Ex. 9 (*Veliz* Dkt. No. 455).  At the same time, to the extent those opt-in plaintiffs

18   refused to arbitrate in the state and county where they last worked for Cintas, Cintas twice

19   expressly reserved the right to move under Section 4 in the appropriate District Courts nationwide

20   for an order compelling those plaintiffs to arbitrate in the agreed place if necessary (although

21   Cintas had that right whether it had reserved it or not).  Meckes Decl. Ex. 7 at 22-23 (*Veliz* Dkt.

22   No. 388); Ex. 11 at 1-4, 9 (*Veliz* Dkt. 463).  Those approximately 1,900 opt-in plaintiffs who were

23   the subject of Cintas' Motion to Stay and Judge Armstrong's Order thereon are referred to here as

24   the "Stay Motion Plaintiffs."

25         Faced with Cintas' FAA Section 3 Motion to Stay, which expressly disavowed any

26   reliance in the Northern District Action on FAA Section 4, plaintiffs engaged in a tenacious and

27   time-consuming effort to convince Judge Armstrong that her order compelling arbitration as to

28   the 56 plaintiffs somehow applied to all plaintiffs, including the Stay Motion Plaintiffs, despite

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION    -8-
AAA Case No. 11 160 01323 04

1   clear language in the Court's order stating that it applied only to the 56 plaintiffs whom the Court

2   had compelled to arbitrate in its April 5, 2004 Order. *See, e.g.*, Meckes Decl. Ex. 3. Finally, in a

3   February 13, 2006 Order filed on February 14, 2006, the Court granted Cintas' motion and stayed

4   further proceedings by each of the Stay Motion Plaintiffs until each of them had arbitrated their

5   disputes with Cintas "'in accordance with the terms of the agreement' into which such person

6   entered." Meckes Decl. Ex. 16 at 3 (quoting 9 U.S.C. § 3) (*Veliz* Dkt. No. 516). In so doing, the

7   Court incorporated the ruling and reasoning it had stated on the record of the hearings of the

8   motion. *Id.* at 1:25-27. Repeatedly at those hearings, the Court not only stated that the arbitration

9   agreements were enforceable, *see, e.g.*, Meckes Decl. Ex. 13 at 6:22-7:4, but harshly criticized

10   plaintiffs' counsel's tactics of trying to use Section 4 indirectly to invalidate the opt-in plaintiffs'

11   place-of-arbitration terms in their enforceable Arbitration Agreements. Ex. 13 at 25-28; *see also*

12   Meckes Decl. Ex. 12 at 14-16.

13          The Stay Motion Plaintiffs, however, did not commence arbitrations in accordance with

14   the terms of their agreements. In fact, purporting to represent them, Named Claimants' counsel

15   Michael Rubin indicated at oral argument in the District Court that the Stay Motion Plaintiffs did

16   not intend to arbitrate in the state and county where they last worked for Cintas, by stating that

17   they would instead seek to arbitrate in a single arbitration in San Francisco (before the Honorable

18   Bruce Meyerson) in direct contravention of each of the place-of-arbitration terms in each of their

19   arbitration agreements that the Court had ruled enforceable. Meckes Decl. Ex. 12 at 87:15-18.

20          Accordingly, and as it had twice expressly reserved the right to do, Cintas filed petitions

21   to compel arbitration under Section 4 of the FAA in the 70 United States District Courts for those

22   Districts encompassing the geographic areas where each Stay Motion Plaintiff had last worked for

23   Cintas.[5] Meckes Decl. ¶ 24. By those petitions, Cintas is currently seeking an order from each

24   such District Court directing each of the Respondents therein (*i.e.*, the same persons who are the

25   Stay Motion Plaintiffs) to arbitrate in that District in accordance with the terms of his or her

26

27   [5] An exemplar of the Section 4 Petitions filed by Cintas against each Stay Motion Plaintiff is
     attached to the Meckes Declaration as Exhibit 20. All of them are identical in text, except for

28   the names of the individual Respondents and local counsel. Meckes Decl. ¶ 25.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -9-
AAA Case No. 11 160 01323 04

1  arbitration agreement. *Id.* Cintas has served process on some Respondents and is continuing to

2  complete service of process on the remaining Respondents in those Section 4 petition

3  proceedings. *Id.* Accordingly, each of the Stay Motion Plaintiffs is subject to the jurisdiction of

4  the United States District Court for the judicial district where he or she last worked for Cintas.

5      As discussed more fully below, none of the Stay Motion Plaintiffs are parties to this

6  arbitration. Each Stay Motion Plaintiff, however, is a Respondent in Cintas' Section 4 petition

7  proceedings, which will compel each such individual to arbitrate any remaining claims in the

8  District Court where the petition as to such person was "filed." 9 U.S.C. §4 (emphasis added).

9  Accordingly, because the Stay Motion Plaintiffs are not parties to this arbitration and because

10  questions regarding their arbitration agreements are pending in the District Courts, this Arbitrator

11  has no jurisdiction or authority to make any rulings with respect to those individuals.

12  **C.    PROCEEDINGS IN THIS ARBITRATION**

13      Counsel for the Named Claimants submitted their "Demand for Classwide Arbitration

14  Under AAA Employment Rules and Supplementary Rules for Class Arbitration" ("Demand for

15  Arbitration") to the AAA on May 4, 2004. The Demand for Arbitration was presented in letter

16  format and purports to "demand arbitration on a class and/or collective basis of all state and

17  federal claims for overtime compensation and backpay alleged in plaintiffs' First Amended

18  Complaint for Injunctive Relief and Damages" that had been filed in *Veliz v. Cintas Corporation*

19  *et al.*, Case No. C-03-1180-SBA (N.D. Cal.) ("*Veliz*"). The First Amended Complaint in the

20  *Veliz* action purported to be incorporated by reference into the Demand for Arbitration. Meckes

21  Decl. Ex. 4.

22      The Demand for Arbitration states:

23      All Claimants bring their claims individually and as a collective
       action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.
24      §216(b), and as a class action under Fed. R. Civ. P. 23(b)(3) and
       applicable state labor laws, on behalf of current and former Cintas
25      employees (with the exceptions noted above) who worked as
       Service Sales Representatives, Commission Route Salespersons,
26      Commission Route Sales Representatives, Route Drivers and other
       persons performing a service and/or delivery function on a non-
27      hourly basis.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION        -10-
AAA Case No. 11 160 01323 04

The term "Claimants" is defined in Exhibit A to the Demand for Arbitration as "Paul Veliz, James White, Mark Chainuck, Jeff Jay, Tade L. Wasmer, Aaron M. Zadnick, Bobby C. Hodge, Earl C. Woods Jr., Amber Kelly and Sam Williams, on behalf of themselves and all others similarly situated." Given that these are essentially the same named plaintiffs listed in the First Amended Complaint who were compelled to arbitrate, Cintas understands that these are the putative class and FLSA collective representatives in this arbitration.[6] Cintas notes, however, that five other plaintiffs identified as putative class representatives were also compelled to arbitration as part of the group of 56 individually ruled upon by Judge Armstrong: Tom Jaramillo, Mark Fragola, John Cruz, Bryan Cruse and Julian Nazareth. Accordingly, in an exercise of caution and solely for purposes of this Motion, Cintas considers that these five individuals are also putative class representatives. This group of putative class representatives is referred to in this Motion as the "Named Claimants."

Although this arbitration was commenced in May 2004, after the appointment of Arbitrator Meyerson, the AAA held this arbitration in abeyance for almost a year while, as detailed above, plaintiffs made several motions and filed reams of papers in the District Court to extract themselves from arbitration—or at least to attempt to alter the terms of the agreements in their favor.

In letters submitted to the AAA and the Arbitrator, Named Claimants' counsel Michael Rubin has tried to assert that various individuals, including the Stay Motion Plaintiffs, have somehow become "claimants in this arbitration." *See, e.g.*, Meckes Decl. Ex. 14 at 2; Ex. 18 at 2. As stated in Cintas' December 22, 2005 letter in response, the vast majority of those persons have not complied with the AAA requirements for initiating claims against Cintas nor have they somehow "joined" the case—by amendment or otherwise.[7]

---

[6] *See, e.g.*, Plaintiffs' First Amended Complaint ¶ 2, which is attached as Exhibit B to the Demand for Arbitration. Meckes Decl. Ex. 4.

[7] A copy of Cintas' December 22, 2005 Letter is attached to the Declaration of Joseph A. Meckes as Exhibit 15 and incorporated herein by reference.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION        -11-
AAA Case No. 11 160 01323 04

In a telephonic hearing on January 2, 2006, the Arbitrator ruled that claimants had not submitted any motion to amend as required by National Rule 5 such that no persons, other than those specifically identified in the initial Demand for Arbitration, were parties to the arbitration. Meckes Decl. ¶ 18.  On March 1, 2006, in another telephonic hearing, the Arbitrator informed claimants' counsel that claimants must move to amend their demand for arbitration if they wished to attempt to join any claimants not previously identified.  Meckes Decl. ¶ 20 and Ex.17.  When claimants' counsel again, on March 29, 2006, tried to assert that the Stay Motion Plaintiffs were parties to the arbitration, the Arbitrator confirmed by e-mail that the Demand for Arbitration had not been amended to include these individuals—and indeed that the required motion to amend had not been made.  Meckes Decl. Ex. 19.

The Arbitrator here does not have the authority or jurisdiction to entertain the claims of any person who wishes to arbitrate in a manner contrary to that required in his or her individual arbitration agreement—including the Named Claimants—whether individually or on behalf of someone else.  Moreover, because the Arbitrator has never permitted any additional claimants to join this arbitration, claimants' counsel does not even have a colorable argument that any such individuals have joined this arbitration or are subject to the Arbitrator's jurisdiction.  And, as stated above, each of the Stay Motion Plaintiffs are subject to Section 4 Petitions to compel arbitration in 70 District Courts.  Section 4 of the FAA dictates that each of those District Courts must compel any arbitrable claims to arbitration in the judicial district where each Section 4 petition was "filed."  9 U.S.C. §4.  Accordingly, none of those individuals can purport to "join" this arbitration, and the Arbitrator here has no jurisdiction to entertain any such efforts.

## IV.    ARGUMENT

### A.    THE ARBITRATION AGREEMENTS CANNOT BE RULED TO PERMIT ARBITRATION TO PROCEED ON BEHALF OF A CLASS OR COLLECTIVELY

#### 1.    Legal Standard In Clause Construction Proceeding

Rule 3 of the Supplemental Rules for Class Arbitration provides the standard for a clause construction proceeding:

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No.  11 160 01323 04                -12-

1        Upon appointment, <u>the arbitrator shall</u> determine as a threshold
2  matter, in a reasoned partial final award <u>on the construction of the</u>
   <u>arbitration clause, whether the applicable arbitration clause permits</u>
3  the arbitration to proceed on behalf of or against a class.

4  (emphasis added). Rule 3 dictates that the arbitrator shall determine on the construction of the

5  arbitration clause to determine whether the applicable clause *permits* arbitration to proceed on

6  behalf of a class. Thus, if the arbitration clause does not affirmatively permit class arbitration, the

7  standard is not met and class arbitration cannot proceed.

8        As the party seeking to show that the Arbitration Agreements permit arbitration to proceed

9  on behalf of a class, the Named Claimants bear the burden of showing that the parties so intended.

10  The United States Supreme Court has recognized that "the general rule [is] that the burden of

11  proof lies on the party asserting the affirmative of a proposition." *United States v. R. Enters., Inc.*,

12  498 U.S. 292, 305 (1991); *see also Burnett Plaza Assocs. v. NCNB Tex. Nat'l Bank*, No. 3:89-CV-

13  1290-X, 1994 U.S. Dist. LEXIS 7781, *54 (N.D. Tex. 1994) (same); *Rex Paper Co. v. Reichhold*

14  *Chems., Inc.*, 252 F. Supp. 314, 318 (W.D. Mich. 1966) (same); *see generally* 9 WIGMORE ON

15  EVIDENCE, § 2486 (Chadbourn rev. 1981). This is a corollary of the principle that the burden of

16  persuasion should be borne by the party attempting to "change the present state of affairs."

17  MCCORMICK, EVIDENCE § 337 (2d ed. 1972).

18        This basic principle also applies where, as here, a decision-maker must decide a threshold

19  issue. For example, a party moving to consolidate actions bears the burden of showing that the

20  criteria for consolidation are satisfied. *See In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373

21  (2d Cir. 1993); *In re Consolidated Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998); *Schneck*

22  *v. IBM*, No. 92-4370 (GEB), 1996 U.S. Dist. LEXIS 10126, *3 (D.N.J. Jun. 24, 1996). Similarly,

23  a party seeking to proceed on behalf of a class bears the burden of showing that the action meets

24  the prerequisites for class certification. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S.

25  147, 161 (1982); *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005); *Thorn v.*

26  *Jefferson-Pilot Life Ins. Co.*, 438 F.3d 376, 382 (4th Cir. 2006); *Zinser v. Accufix Research Inst.,*

27  *Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

28  ///

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No. 11 160 01323 04

-13-

1       Because the Named Claimants are seeking "the affirmative of the proposition" that the

2   Arbitration Agreements "permit arbitration to proceed on behalf of . . . a class," it is the Named

3   Claimants' burden to show that that is what the Arbitration Agreements provide.  If, in

4   promulgating Supplemental Rule 3, the AAA had intended to permit class arbitration to proceed

5   unless the party opposing class treatment could show that the agreements forbid class treatment,

6   Supplemental Rule 3 would have been so written.  Likewise, if class arbitration were to be

7   permitted where such a right was otherwise provided by statute, such a standard also would have

8   been written into Supplemental Rule 3.  Instead, however, the AAA adopted in Supplemental

9   Rule 3 a standard that requires a showing that each of the Arbitration Agreements themselves

10  must "permit" arbitration if there is to be a partial final award allowing the arbitration to proceed

11  on behalf of a class.  If such permission is not found *in the agreements,* the agreements do not

12  permit it.

13      Because the arbitral rules chosen by the parties are incorporated into the arbitration

14  agreement, the Arbitrator lacks authority or jurisdiction to modify the standard set by

15  Supplemental Rule 3 or any other terms of the parties' Arbitration Agreements.  As the United

16  States Supreme Court has held, "[a]rbitration under the [FAA] is a matter of consent, not

17  coercion, and the parties are generally free to structure their arbitration agreements as they see

18  fit." *Volt Info. Scis. v. Bd. of Trs.,* 489 U.S. 468, 479 (1989).  "Just as they may limit by contract

19  the issues which they will arbitrate, . . . so too may they specify by contract the rules under which

20  that arbitration will be conducted." *Id.*  Because an arbitrator derives his authority from the

21  parties' agreement, he "is confined to interpretation and application of [the parties'] agreement;

22  he does not sit to dispense his own brand of industrial justice." *United Steelworkers of America v.*

23  *Enter. Wheel & Car Corp.,* 363 U.S. 593, 597 (1960).[8]  It would be "inimical to the policies

24

---

25  [8]   The laws of the states at issue here are to the same effect: An arbitrator is bound, and his
jurisdiction is determined by, the terms of the parties' agreement. *see e.g., Anheuser-Busch,*

26  *Inc. v. Beer Drivers,  Local Union No. 744, Int'l Bhd. of Teamsters,* 280 F.3d 1133, 1141 (7th
Cir. 2002) (applying Illinois law); *Scotch Plains-Fanwood Bd. of Educ. v. Scotch Plains-*

27  *Fanwood Educ. Ass'n,* 651 A.2d 1018, 1022 (N.J. 1995); *W. Employers Ins. Co. v. Jefferies &*
*Co.,* 958 F.2d 258, 262 (9th Cir. 1992)(applying California law); *Detroit Coil Co. v. Int'l*

28  *Assoc. of Machinists & Aerospace Workers,* 594 F.2d 575, 580 (6th Cir. 1979) (applying
Michigan law); *Int'l Bhd. of Elec. Workers v. Citizens Gas & Coke Utility,* 428 N.E.2d 1320,

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1  underlying state and federal arbitration law [to] force the parties to arbitrate in a manner contrary

2  to their agreement." *Volt*, 489 U.S. at 472.

3         In reviewing arbitration agreements, the arbitrator generally must apply ordinary state law

4  contract principles. *See Volt*, 489 U.S. at 474 (interpretation of arbitration agreements is

5  "ordinarily a question of state law"). Here, each of the Named Claimant's Arbitration

6  Agreements is governed by the law of the state where he last worked for Cintas and by the FAA.

7  *See, e.g.*, Meckes Decl. Ex. 1 at ¶ 4. Each of the Named Claimants last worked for Cintas in one

8  of the following states: California, Colorado, Connecticut, Illinois, Indiana, Michigan, Missouri,

9  New Jersey, and New York.[9] Thus, in determining whether the Arbitration Agreements permit

10  arbitration to proceed on behalf of a class, the Arbitrator must apply the laws of these states.

11         **2.    State Law Standards for Construing Contracts**

12         The arbitrator must seek to ascertain the parties' intentions solely from the language that

13  they used in the agreement if possible. According to California courts, the mutual intent of the

14  parties must, if possible, be inferred "solely from the written provisions of the contract."

15  *Whiteside v. Tenet Healthcare Corp.*, 101 Cal. App. 4th 693, 702 (2002) (citing CAL. CODE CIV.

16  PROC. § 1639). Similarly, in Colorado, Michigan, Missouri, New Jersey, and New York, the

17  plain language of the contract is the place where the arbitrator must look to ascertain the parties'

18  intent. *See Bristol-Myers Squibb Co. v. Ikon Office Sol'ns, Inc.*, 295 F.3d 680, 686 (7th Cir.

19  2002); *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005); *Seidel v.

20  Houston Cas. Co.*, 375 F. Supp. 2d 211, 219 (S.D.N.Y. 2005); *Communications Workers of Am.

21  Local 1087 v. Monmouth County Bd. of Social Servs.*, 476 A.2d 777, 782 (N.J. 1984); *Zollman v.*

---

23  1326 (Ind. Ct. App. 1981); *Harty v. Cantor Fitzgerald & Co.*, 881 A.2d 139, 150 n.7 (Conn. 2005); *Rockland County Bd. of Coop. Educ. Servs. v. BOCES Staff Ass'n*, 308 A.D.2d 452, 454 (N.Y. App. Div. 2003); *Denver v. Denver Firefighters Local No. 858*, 663 P.2d 1032, 1040 (Colo. 1983); *Daniel Constr. Co., Div. of Daniel Int'l Corp. v. Int'l Union of Operating Engineers, Local 513*, 570 F. Supp. 299, 302 (E.D. Mo. 1983).

9  Paul Veliz and James White last worked for Cintas in California; Mark Chainuck, Jeff Jay, Tade L. Wasmer and Aaron M. Zadnick last worked in Illinois; Amber Kelly and Samuel Williams last worked in New Jersey; Bobby Hodge and Earl Woods, Jr. last worked in Michigan; Mark Fragola last worked in Connecticut; Tom Jaramillo last worked in Colorado; John Cruz last worked in Indiana; Bryan Cruse last worked in Missouri; and Julian Nazareth last worked in New York.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION        -15-
AAA Case No. 11 160 01323 04

1   *Geneva Leasing Assocs.*, 780 N.E.2d 387, 393 (Ind. Ct. App. 2002); *Haywood v. Fowler*, 475

2   N.W.2d 458, 461 (Mich. Ct. App. 1991).  Likewise, the laws of Illinois and Connecticut state that

3   "the intent of the parties must be determined solely from the contract's plain language, and

4   extrinsic evidence outside the 'four corners' of the document may not be considered." *Much v.*

5   *Pac. Mut. Life Ins. Co.*, 266 F.3d 637, 643 (7th Cir. 2001) (applying Illinois law); *Rumbin v.*

6   *Utica Mut. Ins. Co.*, 757 A.2d 526, 541 (Conn. 2000).  "When a court is required to interpret [a]

7   contract, the goal should be to discern and enforce the parties' mutual intent."  *Thor Seafood*

8   *Corp. v. Supply Mgmt. Servs.*, 352 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005).  To this end, "[t]he

9   court looks to the objective, outward expression of the contract." *Id.*

10      In reviewing the contract, the arbitrator's duty "is simply to ascertain and declare what, in

11   terms or in *substance*, is contained therein, and not to insert what has been omitted or omit what

12   has been inserted." *Jensen v. Traders & Gen. Ins. Co.*, 52 Cal. 2d 786, 790 (1959) (emphasis

13   added).  California courts will not bind parties to obligations for which the contract is silent.

14   *Chula Vista Police Officers' Assn. v. Cole,* 107 Cal. App. 3d 242, 249 (1980).

15      In Illinois, there is a "strong presumption" against reading terms into contracts, and courts

16   will *not* "insert a contract term when the agreement itself is silent."  *Fix v. Quantum Indus. Ptnrs.*

17   *LDC,* 374 F.3d 549, 553 (7th Cir. 2004).  "If a written contract purports on its face to be a

18   complete expression of the whole agreement, it is to be presumed that the parties introduced into

19   it every material item and term, and in construing it the court will not add thereto another term

20   about which the agreement is silent." *Klefstad v. Am. Cent. Ins. Co.*, 207 F.2d 288, 290 (7th Cir.

21   1953).

22      The laws of the other states are no different: the arbitrator may not disregard the parties'

23   intent "to create a new or better contract or to add to, subtract from, modify, or alter any terms of

24   the agreement." *Communications Workers,* 476 A.2d at 782; *see also Bonney v. Citizens' Mut.*

25   *Auto. Ins. Co.,* 53 N.W.2d 321, 324 (Mich. 1952) (Courts "can neither make a new agreement for

26   the parties nor, by addition, give it a meaning contrary to its express and unambiguous terms.");

27   *Cirrito v. Turner Constr. Co.*, 458 A.2d 678, 680 (Conn. 1983); *In re Marriage of Stokes*, 608

28   P.2d 824, 829 (Colo. Ct. App. 1979); *Louisville & C. Packet Co. v. Rogers*, 49 N.E. 970, 972 (Ind.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION     -16-
AAA Case No. 11 160 01323 04

1    Ct. App. 1898) (Courts cannot "add a new element to the terms of the contract previously made by

2    the parties."). For example, according to New York law, the arbitrator "cannot under the guise of

3    construing a contract add language which the parties could have inserted had they so desired."

4    *Edwards v. State*, 178 N.Y.S.2d 287, 292-93 (N.Y. Ct. Cl. 1958). Similarly, according to Missouri

5    law, it is the arbitrator's "duty…to interpret and enforce [the contract] as the parties themselves

6    have made them." *Hughes v. Toledo Scale & Cash Register Co.*, 86 S.W. 895, 899 (Mo. Ct. App.

7    1905).

8             Finally, a "cardinal principle of contract construction" is that a "document should be read

9    to give effect to all of its provisions and to render them consistent with each other." *Mastrobuono*

10   *v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63 (1995); *see also Trident Ctr. v. Connecticut*

11   *General Life Ins.*, 847 F.2d 564, 566 (9th Cir. 1988) (Applying California law, "[t]he normal rule

12   of construction, of course, is that courts must interpret contracts, if possible, so as to avoid internal

13   conflict."); *Licciardi v. Kropp Forge Div. Employees' Retirement Plan*, 797 F. Supp. 1375, 1381

14   (N.D. Ill. 1992) ("In interpreting a contract, it is presumed that all provisions were intended for a

15   purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the

16   contract's provisions."); *Northwest Bergen County Utils. Auth. v. Midland Park*, 604 A.2d 229,

17   233 (N.J. Super. Ct. 1992) ( "[E]ffect should be given to all parts of the contract and an

18   interpretation or construction which gives reasonable meaning to all of its provisions is preferred

19   to one that leaves a portion of the writing useless or inexplicable."); *Singer v. Goff*, 54 N.W.2d

20   290, 292 (Mich. 1952) (noting "the cardinal principle which requires us to construe this contract as

21   a whole and give harmonious effect, if possible, to each word and phrase"); *Harseim v. Booth*, 33

22   N.E. 1016, 1017 (Ind. 1893) ("The writing must be construed as a whole, and effect given to each

23   word and portion, if it can be so construed as to do so."). A contract "is to be interpreted in its

24   entirety to harmonize all of its provisions." *Roberts v. Adams*, 47 P.3d 690, 694 (Colo. Ct. App.

25   2001); *Merrill Lynch, Pierce, Fenner & Smith v. Adler*, 234 A.D.2d 139, 140 (N.Y. App. Div.

26   1996); *Dugan v. Grzybowski*, 332 A.2d 97, 100 (Conn. 1973) ("[R]ules of construction . . . dictate

27   giving effect to all the provisions of a contract, construing it as a whole and reconciling its

28   clauses). "[A] construction which entirely neutralizes one provision should not be adopted if the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -17-
AAA Case No. 11 160 01323 04

1  contract is susceptible of another construction which gives effect to all of its provisions and is

2  consistent with the general intent." *Soukup v. Employers' Liab. Assur. Corp.*, 108 S.W.2d 86, 92

3  (Mo. 1937).

4  These are the legal rules that govern this motion. Applying them to the Arbitration

5  Agreements leads to a single conclusion: there is no basis for finding that the agreements "permit"

6  arbitration to proceed on behalf of a class.

### 3.  Language of the Arbitration Agreements Cannot Be Read To Permit Arbitration to Proceed on Behalf of a Class or Collectively

9  There are no terms in any of the Arbitration Agreements that specifically address class or

10  collective proceedings and no indication in any of the Arbitration Agreements that the parties

11  intended to permit arbitration to proceed on behalf of a class. Under Supplemental Rule 3 the

12  Arbitrator has no discretion to look any place but the terms of the Arbitration Agreements. If the

13  Named Claimants cannot carry their burden of showing that the terms of the Arbitration

14  Agreements "permit arbitration to proceed" on behalf of the class, that is the end of the inquiry.

15  But there is more. The express written terms in each of the Arbitration Agreements are

16  directly at odds with any inference that the parties intended to permit arbitration to proceed on

17  behalf of a class or collectively. The Arbitrator cannot construe the Arbitration Agreements to

18  permit arbitration to proceed on behalf of a class or collectively without ignoring, invalidating

19  and rewriting many of the Arbitration Agreements' express terms. Because the Arbitrator draws

20  his jurisdiction and authority from the terms of the agreements, and must apply the Arbitration

21  Agreements to give effect to all of their terms, any construction that permits class or collective

22  arbitration is unlawful and exceeds the scope of the Arbitrator's jurisdiction and authority.

### a.  The Informal Resolution Requirement Shows that Class Proceedings are Not Permitted

24  One of the terms of the Arbitration Agreements is a requirement that any Cintas employee

25  who has a dispute with Cintas meet with Cintas informally in an effort to resolve the dispute.

26  Both the language of the Arbitration Agreements and basic logic dictate that the Arbitrator would

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No. 11 160 01323 04                    -18-

1  have to ignore (and thereby invalidate) this threshold requirement if he finds that the Arbitration

2  Agreements permit arbitration to proceed on behalf of a class.

3       The *first sentence* of each Arbitration Agreement provides that the individual "Employee"

4  signatory must confer in good faith with Cintas before initiating any claim:

> 5      Should any dispute or difference arise between Employee and
> Employer concerning whether Employer or any agent of Employer
> 6      ever at any time violated any duty to Employee, right of Employee,
> law, regulation or public policy or breached this Agreement,
> 7      Employee and Employer shall confer and attempt in good faith to
> resolve promptly such dispute or difference.

9  Meckes Decl. Ex. 1 at ¶ 5. It is only after this effort fails to resolve "such dispute or difference"

10  that the aggrieved Employee is permitted "to pursue Employee's claim" in arbitration. *Id.*

11       This term demonstrates that the parties did not intend to permit arbitration to proceed on

12  behalf of a class. Under this express term, an employee can only pursue those claims that he or

13  she has attempted in good faith to resolve with Cintas. Given that individual employees have no

14  authority to try to resolve with Cintas the claims of other employees, an individual employee

15  could never "confer and attempt in good faith" to resolve with Cintas claims of others that he or

16  she later purports to assert on behalf of a class.

17       Moreover, it is only when this good faith attempt fails that the employee is permitted to

18  pursue arbitration of that *individual employee's* claim:

> 19      To have a fair, timely, inexpensive and binding method of resolving
> any such dispute or difference remaining unresolved after Employee
> 20      and Employer confer in good faith, should Employee desire to
> pursue *Employee's claim*, Employee shall . . . submit to Employer a
> 21      written request to have *such claim, dispute or difference* resolved
> through impartial arbitration . . . .

23  Meckes Decl. Ex. 1 at ¶ 5 (emphasis added). Thus, it is only if the employee fails to resolve

24  "Employee's claim" (not the claims of others) that he or she is permitted to resolve that particular

25  employee's own "claim, dispute or difference" through impartial arbitration.

26       To purport to rule that the Arbitration Agreements permit individual employees to proceed

27  on behalf of a class to pursue the claims of others without first ever attempting to resolve—or

28  having the authority to resolve—the claims the employee purports to assert on behalf of a class

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -19-
AAA Case No. 11 160 01323 04

1  would rob Cintas of one of the fundamental terms of the Arbitration Agreement. As noted above,

2  no states' law permits arbitrators to add terms to, or omit terms from, the parties' agreements. It

3  would be unlawful for the Arbitrator to imply a term permitting class arbitration that would

4  essentially nullify or waive one of the agreement's express terms – particularly a term that is a

5  cornerstone of the parties' agreed dispute resolution regime. This is something the Arbitrator

6  simply does not have the jurisdiction or authority to do. *United Steelworkers*, 363 U.S. at 597.

7                  b.    **The Express Place-of-Arbitration Provision Precludes These**

8                     **Plaintiffs From Proceeding with the Collective or Class-wide
Arbitration They are Seeking**

9        The Arbitration Agreements each contain an express place-of-arbitration provision

10  requiring that each employee's "claim, dispute or difference [be] resolved through impartial

11  arbitration conducted in accordance with the [National Rules] and held in the county and state

12  where Employee currently works for Employer or most recently worked for Employer." Meckes

13  Decl. Ex. 1 at ¶ 5. Not only does this place-of-arbitration provision expressly preclude the kind

14  of nationwide class or collective arbitration demanded here, it is inconsistent with any intent to

15  permit arbitration to proceed on behalf of a class.

16        First, it is apparent that permitting these Named Claimants to proceed on behalf of several

17  state-law subclasses and as representatives in a collective action would require the Arbitrator to

18  ignore the parties' agreement regarding the place of arbitration.[10] While it is conceivable that a

19  class or collective arbitration limited to persons proceeding in the state and county where each

20  named claimant in such a proceeding last worked might not violate this provision, the Arbitrator

21  cannot interpret the Arbitration Agreements to permit the Named Plaintiffs or others to proceed

22  collectively or on behalf of putative classes when doing so would directly violate this important

23  contractual term. Accordingly, for this reason alone, the Arbitrator cannot construe the

24  Arbitration Agreements to permit arbitration to proceed on behalf of a class or collectively—or at

25  least not in the manner demanded by the Named Claimants in this arbitration.

26  

27  [10] None of the Named Claimants or any other person who they contend has "joined" this
Arbitration is permitted to proceed collectively in a single arbitration or to violate the express

28  place-of-arbitration term in his or her Arbitration Agreement.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -20-
AAA Case No. 11 160 01323 04

1    Second, the place-of-arbitration provision is compelling proof that the parties did not

2  intend to permit arbitration to proceed on behalf of a class or collectively.  If the parties had

3  intended to permit class-wide or collective arbitration (particularly the kind of nationwide, multi-

4  state class proceeding the Named Claimants advocate here), each of the individual parties to the

5  separate individual contracts would not have agreed to hold their arbitrations in the state and

6  county where each person last worked.  Instead, this provision demonstrates the parties' intent to

7  arbitrate their disputes locally—not the place that is the most convenient and tactically beneficial

8  to claimants' counsel.

9              c.    **Enforcement of Each of the Place-of-Arbitration Provisions is
                      Also Necessary for a Fair Proceeding**

10    The express place of arbitration provision is also inextricably intertwined with the

11  contractual requirement that arbitration be "a fair, timely, inexpensive and binding method" of

12  resolving disputes between Cintas and its employees.  As a matter of fairness (and contract),

13  Cintas is entitled to the benefit of the place-of-arbitration provision so that it can defend itself in

14  the place where the witnesses and evidence are most likely to be located, *i.e.*, the place where the

15  employee last worked for Cintas.  Permitting a consolidated Arbitration would deprive Cintas of

16  the kind of proceeding that the parties agreed was fair – a proceeding in the state and county

17  where each employee last worked for Cintas.[11]

18    Cintas has and will assert that at least two FLSA exemptions apply in whole or in part to

19  each individual who falls within the proposed class of Service Sales Representatives ("SSRs")

20  that the Named Claimants hope to represent: the Motor Carrier Act exemption ("MCA

21  exemption") and the Outside Sales exemption.  Because the facts and circumstances regarding

22  these exemptions will vary widely and will depend on evidence specific to individual Cintas

23  facilities and individual routes at those facilities, Cintas is contractually entitled to arbitrate these

24

_____

[11]   As discussed above, the place-of-arbitration term has been ruled enforceable by Judge
25    Armstrong and, like the other terms of the contract, it cannot be disregarded.  The Arbitrator
      has no jurisdiction to do so. In any event, moreover, forum selection clauses in contracts are
26    presumptively fair and reasonable and are enforced unless the party opposing the chosen
      forum satisfies a high burden of showing that the inconvenience of proceeding in the chosen
27    forum is unreasonable. *See, e.g., Carter v. Countrywide*, 362 F.3d 294, 299-300 (5th Cir.
      2004).
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -21-
AAA Case No. 11 160 01323 04

1  claims in the agreed place—the place where Cintas will have easy access to the witnesses and

2  documents necessary to prove its defenses.  To further understand why Cintas is so adamant

3  about enforcing its place-of-arbitration terms, Cintas provides below a brief summary of Cintas'

4  Rental and First Aid & Safety businesses as well as the two primary FLSA defenses.  The legal

5  and factual underpinnings of Cintas' defenses show the degree to which a localized and

6  individualized analysis will be required.

(1)  **Background on Cintas' Business and Operations**

8        To understand why the express place-of-arbitration provision is essential to a fair

9  proceeding in arbitration, an overview of Cintas Rental and First Aid & Safety businesses is

10  appropriate.[12]  Although one of Cintas' product lines is uniforms, neither its business nor the

11  responsibilities of its employees is *uniform* at all. Cintas is a highly diversified company serving a

12  wide variety of customers as diverse as America itself.

13        While Cintas is involved in several business lines, there are two that are of interest here:

14  the Rental Division and the First Aid and Safety Division ("FAS").  Only these divisions have in

15  the past employed salaried SSRs who might fall within the scope of the class described in the

16  Named Claimants' Demand for Arbitration.  Within these business divisions are several hundred

17  individual locations that employ SSRs to service customers and to sell them additional products

18  and services.  Each Cintas location is run by a general manager, who is responsible for that

19  location's personnel and for its profits and losses.

20        Speaking very generally, Rental Division locations rent and sell an enormous variety of

21  uniforms, garments, shoes, mops, mats, towels, linens and paper goods and provide industrial

22  services to business consumers.  The managers of each Rental Division location are expected to

23  develop a deep knowledge of their local market and to institute procedures to help Cintas

---

[12]  For additional information regarding the breadth and variety of Cintas' business, see Cintas' corporate website at http://www.cintas.com.  Cintas provides the information in this section of the brief as important background and context.  Cintas believes the information stated in this section is utterly beyond dispute.  To the extent the Arbitrator believes that any of this information should be submitted in the form of written testimony, Cintas hereby offers to provide such written testimony on these points for the Arbitrator's consideration.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -22-
AAA Case No.  11 160 01323 04

1   capitalize on its diversity and the needs of their particular market. Thus, for example, a manager

2   of a Rental Division location serving greater Detroit would have a different approach to Cintas'

3   business in that market than would a manager located in rural Nebraska. For example, the Detroit

4   location might have a large contingent of heavy industrial customers who wear out garments at a

5   high rate, while the Nebraska location might focus primarily on agriculture or light retail

6   customers whose primary product purchases are mops, mats or towels and who do not wear out

7   uniforms as quickly. Such differences are also present within a particular location, with some

8   routes focused on entirely certain product lines, such as fire retardant clothing or protective attire,

9   while other routes at that same location focusing primarily on facilities supplies. Also,

10  customers' needs will vary by geography, with customers in the northern parts of the United

11  States needing more seasonal products, such as coats, hats, and gloves, than those in western or

12  southern states. Obviously, the responsibilities of SSRs and the products they sell and/or deliver

13  will vary tremendously by route, by industries served by geography.

14      Cintas' FAS Division is focused primarily on keeping business and industrial companies

15  equipped with the first aid and safety equipment that employees need on a daily basis. This

16  business runs the gamut from ensuring that basic first aid cabinets are well-stocked with

17  medicines and bandages, to installing eye wash stations, to keeping companies stocked with hard

18  hats, work gloves, safety glasses, and even cardiac defibrillators. Again, depending on the

19  geography of the FAS location and the identities and needs of customers in the region, the kinds

20  of products an SSR sells and/or delivers to customers will vary wildly. For example, an SSR

21  serving primarily office buildings might sell a great deal of aspirin but few safety goggles or

22  hardhats. An SSR serving primarily heavy industrial customers might be just the opposite. Like

23  Rental Division locations, the responsibilities of the SSR and the kinds of products they sell will

24  differ substantially between different locations and, indeed, between different SSRs' routes at the

25  same location.

26              **(2)**      **Motor Carrier Act Exemption**

27      The importance of these differences is apparent when one considers the defenses by

28  Cintas in response to any FLSA claim. In her November 4, 2003 Order, Judge Armstrong ruled

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -23-
AAA Case No. 11 160 01323 04

that Cintas was entitled to assert defenses to plaintiffs' FLSA claims based on the Motor Carriers

Act exemption, 49 U.S.C. §13102(13) ("MCA exemption").  The District Court held:

> [The Motor Carriers Act] applies to Cintas because it is in the
> business of transporting property such as uniforms for sale, rent or
> otherwise.  It applies to SSRs if they fall under one of four
> categories, all of which are related to the degree a driver participates
> in distributing goods in interstate commerce.  A driver who spends
> as little as 3.65 percent of his time performing this duty can fall
> under the MCA exemption so that the FLSA does not apply to him.

Meckes Decl. Ex. 2 at 7 (*Veliz* Dkt. No. 121).

Under the MCA exemption, an employee who is within the regulatory authority of the

Secretary of Transportation is not entitled to be paid for overtime under the FLSA.  *Klitzke v.*

*Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir. 1997).  The Secretary of Transportation has

jurisdiction, and thus regulatory authority, over employees transporting goods in interstate

commerce where the employees are engaging in activities directly affecting the safety of motor

vehicles.  49 U.S.C. § 13501; 29 C.F.R. § 782.2.  This "interstate commerce" requirement may be

satisfied in at least two ways (either of which is sufficient):  (1) the carrier is transporting goods

across state lines; or (2) the carrier is not transporting goods across state lines, but their

transportation is part of a "practical continuity of movement" in the flow of interstate commerce.

*Klitzke*, 110 F.3d at 1469; *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217 (2d Cir. 2002).

As Judge Armstrong noted in her November 4, 2003 Order, only a minimal level of

interstate activity is required to satisfy the MCA exemption.  "It is the *character* of the activities

rather than the proportion of either the employee's time or of his activities that determines the

actual need for the [Secretary's] power."  *Peraro ex rel. Castro v. Chemlawn Services Corp.*, 692

F. Supp. 109, 114 (D. Conn. 1988) (emphasis added); *Hutson v. Rent-A-Center, Inc.*, 209 F. Supp.

2d 1353, 1359 (M.D. Ga. 2001) ("A minor involvement in interstate commerce as a regular part

of employee's duties…subject[s]…employee to the Department of Transportation" jurisdiction; a

person making only two deliveries per week, some intrastate, is exempt).  This minimal level has

long been recognized by the United States Supreme Court. *Morris v. McComb*, 332 U.S. 422, 431

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION        -24-
AAA Case No.  11 160 01323 04

1    (1947) (As little as 3.65% of a driver's time spent driving goods that are in interstate commerce is

2    sufficient to satisfy the MCA exemption).

3        Cintas believes that upon individual analysis, each of the SSRs qualify for the MCA

4    exemption under one or more of the following four tests:

- Drivers who actually cross state lines to make deliveries on their routes are exempt.

- Drivers who drive primarily intrastate but who *may* be required as part of their job duties to cross state lines are exempt. *See Chao v. First Class Coach Co.*, 214 F. Supp. 2d 1263, 1276 (M.D. Fla. 2001) (drivers were exempt where they were expected to be able and available to drive all routes and where any driver could be assigned an interstate route at any time).

- Drivers who are part of the "practical continuity of movement" of goods from the manufacturers or suppliers outside state to customers. *Klitzke*, 110 F.3d at 1470.

- Drivers who actually are subject to DOT regulation, *i.e.*, those who drive trucks with an average gross weight in excess of 10,000 pound in interstate commerce, are exempt under the MCA exemption. *Reich v. American Driver Serv.*, 33 F.3d 1153, 1155 (9th Cir. 1994).

Accordingly, to defend itself against the claim of any SSR, Cintas must present evidence to show

that each such SSR asserting claims against Cintas is subject to one or more of these defenses

based on facts unique to that SSR. The decision-maker on the merits will have to examine what

kind of truck each individual SSR drove, where he or she drove it, and exactly what was on the

back of the truck.

### (3)    Outside Sales Exemption

    Just as with the analysis required under the MCA exemption, the Outside Sales exemption

turns on factors specific to each individual SSR. The FLSA exempts from its overtime

requirements "any employee employed . . . in the capacity of outside salesman." 29 U.S.C.

§ 213(a)(1). Regulations to the FLSA further define an outside salesperson as:

    [A]ny employee:

(a)    who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

1        (1)     making sales within the meaning of [§ 213(a)(1)]; or

2        (2)     obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

4    (b)     Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: *provided, that work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.*

29 C.F.R. § 541.500 (emphasis added).  The regulations provide that driver salespersons are exempt where the driver salesperson calls on established customers, delivering goods in prearranged amounts and persuading these customers to accept delivery of increased amounts of goods or of new products, as long as such solicitation is frequent and regular.  29 C.F.R. § 541.505(b), 541.505(f)(2).  Work incidental to these sales such as  loading the truck, delivering the products sold, and collecting payment is then characterized as exempt work.  29 C.F.R. § 541.505(b).

        (4)    **<u>The Arbitration Agreements Dictate that Cintas Be Allowed to Prove its FLSA and State Law Overtime Exemptions in Local Arbitrations</u>**

As is apparent from the standards to be applied and the rulings already made by Judge Armstrong, Cintas' defenses to the proposed class members' FLSA claims will require an individualized determination as to whether each is subject to either the MCA exemption or the Outside Sales exemption or both.  Because such an individualized determination is necessary, those claims can be most efficiently and fairly resolved, as is in any event required by the Arbitration Agreements, only in a place near where an employee worked for Cintas.  For example, in showing that a particular proposed class member was properly characterized as exempt under the MCA exemption, Cintas may be called on to show that that a common job duty at that person's particular Cintas facility was that SSRs be ready to transport goods across state lines if necessary.  Of course, this will require testimony of live witnesses for each such individual or at least for each location where such individual worked.  Similarly, to show that goods delivered by a proposed class member were in the practical continuity of interstate

1   commerce, Cintas may need to put on testimony of the managers, stockroom clerks or others from

2   each specific Cintas location to show the methodology used by each location in the management

3   of inventory and the handling of products relating to each specific SSR's route.

4        Similarly, in determining whether a particular SSR is subject to the Outside Sales

5   Exemption, the arbitrator will need to understand how SSRs at a particular location were trained,

6   how they were supervised and what sales goals they were individually expected to meet over a

7   particular period of time.  Likewise, because Cintas locations serve different kinds of businesses,

8   with different kinds of products in geographically diverse regions, Cintas will be required to

9   present testimony that is at least specific to particular employees and locations to show how those

10  employees and SSRs generally from those locations perform their job duties.  Again, these issues

11  will require live witnesses—witnesses who will be difficult to bring to a remote location and,

12  given time factors, even more difficult to present in a consolidated proceeding.

13       Cintas notes that Arbitrator Meyerson has stated in the different contexts of other

14  proceedings his belief in those other cases that collective and/or class arbitration can be more

15  "efficient and cost effective" than individual proceedings.[13]  An arbitrator, however, is not

16  entitled to ignore the contractually mandated terms in the case before him because he or she

17  believes a different proceeding would be more efficient.  And, in any event, given the stakes

18  involved in a class or collective arbitration, time-consuming judicial review of interim awards and

19  the substantial notice requirements mandated by the Supplemental Rules, a single nation-wide

20  collective or class arbitration may actually take far longer and may be far more costly than if

21  aggrieved individuals seek to resolve their disputes with Cintas individually and locally in

22  accordance with the terms of each of the Arbitration Agreements.[14]

23

---

24  [13]  Cintas notes that Arbitrator Meyerson in *Smith and TeleTech Customer Care Management*,
     AAA Case No. 11 160 02726 04, relying on language in the arbitration agreement suggesting
25   that arbitration be administered in order to be efficient and cost-effective, found that the parties
     intended to allow FLSA collective and class arbitration to proceed.  Applying any such
26   sentiment here to invalidate the express terms of the each of the parties' agreements, however,
     would be unlawful and would exceed the Arbitrator's jurisdiction and authority.

27

28  [14]  Indeed, if any allegedly aggrieved claimants had initiated arbitration individually at the time
     the District Court action was filed almost three years ago, Cintas believes those claims would

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1    Besides a timely and inexpensive proceeding, Cintas is contractually entitled to a <u>fair</u>

2    proceeding, which, under the terms of the Arbitration Agreements, includes arbitration in the

3    county and state where each individual claimant last worked for Cintas.  Where the parties have

4    agreed on a term that is presumptively fair, the Arbitrator is not authorized to sacrifice an element

5    of that agreement simply to promote his perception of efficiencies in class or collective

6    arbitration—that probably do not even exist in the context of this matter.

7         d.    **Parties' Intent to Proceed Individually Evidenced by**
              **Contractual Limitations Period and Maximum Filing Fees**

8

9    The parties' intent to proceed in arbitration individually is also shown by the Arbitration

10   Agreements' one-year limitations period and its cap on the filing fees to be borne by individual

11   claimants.  If the parties had intended to permit arbitration to proceed on behalf of a class, they

12   would not have included either of these provisions.

13   The contractual one-year limitations period strongly implies that the parties intended only

14   that the "Employee's" individual claims (and not those of others) are subject to arbitration.[15]

15   Under this provision, an employee wishing to arbitrate with Cintas "shall, within one year of the

16   date when the dispute or difference first arose or within one year of when Employee's

17   employment ends, whichever occurs first," submit a request to have "such claim" resolved

18   through arbitration.  Meckes Decl. Ex. 1 ¶ 5.  This language implies that only the claims of the

19   individual employee (*i.e.*, those claims he or she could not resolve informally with Cintas) may be

20   initiated within the one-year period.  If the parties had intended to permit the arbitration to

21   proceed on behalf of a class, it would be nonsensical to tie the date the arbitration is to be

22

23   have been resolved long ago.  It is only Claimants' counsel's strategic desire for class
     proceedings that has resulted in all of the delays to date.  Judge Armstrong harshly criticized
24   plaintiffs' counsel on the record for requiring extensive court proceedings in seeking to obtain
     a tactical advantage in arbitration in direct violation of each of the Stay Motion Plaintiffs'
25   Arbitration Agreements.  *See* Transcript of Proceedings, October 27, 2005 at 25-28, which is
     included with the Meckes Decl. as Ex. 13.
26

27   [15]  As noted above, Judge Armstrong severed the one-year limitations period for plaintiffs who
     last worked for Cintas only in the places located in the Second, Fourth, Fifth, Sixth, Ninth and
28   Tenth Circuits.  This however, is irrelevant to the parties' intent in agreeing to arbitrate.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -28-
AAA Case No.  11 160 01323 04

1  submitted to the date a putative class representative's claim arose or the date that the putative

2  representative ceased his or her employment.  Otherwise, an individual who had left the company

3  or whose claims had arisen years before could initiate arbitration if the claim of at least one class

4  member had arisen within the previous year.  It defies logic that that is what the parties intended

5  by this provision.

6       The parties' intent to allow only individual arbitration is further evidenced by the express

7  limitation in the agreement that the "Employee's initial share of the arbitration filing fee shall not

8  exceed one day's pay or $100, whichever is less."  If the parties had intended to permit arbitration

9  to proceed on behalf of a class or collectively in the manner demanded by the Named Claimants,

10  this provision would not refer to "employee's initial share" in the singular.  If the parties had

11  intended to permit class or collective arbitration they undoubtedly would have stated whether this

12  $100 fee is to be borne by each participant in the collective action or allocated among

13  participants.

    **4.**    **No Terms In Arbitration Agreements Imply or Suggest that Class or Collective Arbitration is Permitted**

16       While there are many terms of the Arbitration Agreements that defy any intention to

17  permit class or collective arbitration, there is no language suggesting that class or collective

18  arbitration might be permitted.  Under Supplemental Rule 3, the absence of any contract terms

19  that can be construed to permit arbitration to proceed on behalf of a class should end the inquiry.

20       Cintas notes, however, that in *Sidhu and GMRI and Darden Restaurants,* AAA Case No.

21  11 160 02273 04 and in *Smith and Teletech Customer Care Management,* AAA Case No. 11 160

22  02726 04, it appears that Arbitrator Meyerson interpreted arguably silent arbitration agreements

23  to permit class arbitration based on reasoning that would defy rulings already made by Judge

24  Armstrong in this matter.  To the extent *Sidhu* or *Smith* assumes that class and/or collective

25  arbitration is available in arbitration unless the parties specifically prohibit it, or to the extent that

1   it assumes that class proceedings are necessary for claimants in arbitration to vindicate statutory

2   rights, the reasoning underpinning those decisions has no place here.[16]

3   ### a.    Arbitrator Meyerson's Decisions in *Sidhu* and *Smith*

4       In both *Smith* and *Sidhu*, it appears that Arbitrator Meyerson held that agreements that are

5   apparently silent on the question of class or collective arbitration permit class or collective

6   arbitration unless specifically prohibited.  Not only was Arbitrator Meyerson's reasoning in these

7   cases contrary to the standard set in Supplemental Rule 3 and legally flawed, those decisions are

8   directly at odds with rulings in this matter by Judge Armstrong–rulings that are binding in this

9   proceeding under Supplemental Rule 1(c).

10      In holding that collective and class arbitration was permitted in *Smith,* Arbitrator

11  Meyerson did not point to any terms that could be construed to permit class or collective

12  arbitration, which is the standard under Supplemental Rule 3 and applicable law.  Instead,

13  Arbitrator Meyerson reasoned that the parties' silence is not dispositive because "under the

14  FLSA, the right to bring a collective action derives from federal law, not from any understanding

15  or agreement of the parties."[17]  *Smith* at 2.

16      In *Sidhu*, on the other hand, Arbitrator Meyerson pointed to two contractual provisions

17  which he said created an ambiguity as to whether class proceedings were permitted.  *Sidhu* at 2.

18  First, Arbitrator Meyerson noted that the relevant arbitration agreement "applies to the '**claims** of

19  **Employees** . . . for wages or the compensation due.'"  *Id.*  (Emphasis in original).  Second,

20  Arbitrator Meyerson pointed to broad grants of arbitral authority in the relevant arbitration

---

[16]  Cintas notes that decisions of arbitrators – including those of Arbitrator Meyerson – have no
precedential value.  Cintas addresses the previous decisions of Arbitrator Meyerson so that,
respectfully, errors in those decisions, or reasoning in those decisions that is inconsistent with
Judge Armstrong's rulings, will not be repeated here.  That said, Cintas also notes that all of
the underlying arguments, briefs and/or other papers from those cases are not available.  So
perhaps there were other, unarticulated factors involved in those cases that would be known to
Arbitrator Meyerson but not to counsel in this case.

[17] But, as Judge Armstrong has ruled, applying multiple precedents from the United States
Supreme Court and the federal Courts of Appeals, an individual "forfeits any procedural rights
arising from the FLSA, while retaining her substantive rights (e.g., the right to obtain
substantive relief) in arbitration."  In so ruling, the Court held there was no substantive right to
class proceedings in arbitration.  Meckes Decl. Ex. 8 at 4-6 (*Veliz* Dkt. No. 426).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION
AAA Case No. 11 160 01323 04                    -30-

1   agreements and in the National Rules that gave the arbitrator permission to "grant the same 'legal

2   and equitable relief . . . as could a court of competent jurisdiction.'" *Id.* From these terms,

3   Arbitrator Meyers reasoned that one could "infer that a class arbitration is permitted." *Id.*

4        In both *Sidhu* and *Smith,* Arbitrator Meyerson found the parties' silence with respect to

5   class arbitration to be insignificant because, "[i]n the absence of arbitration, where an employee is

6   employed pursuant to ordinary company rules, such rules (*e.g.*, a personnel handbook or manual)

7   would not expressly authorize an employee to file a class action." *Sidhu* at 2 n.1; *Smith* at 2.

8   Thus, Arbitrator Meyerson reasoned that the parties' silence in their agreements "does not

9   demonstrate that it was the intent of the parties to *prohibit class arbitration." Sidhu* at 2; *Smith* at

10  2 (emphasis added).

11       Also, in both *Smith* and *Sidhu,* Arbitrator Meyerson also relied on the Supreme Court's

12  opinion in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991), to imply that class

13  arbitration is required if arbitration is to be a suitable substitute for litigation. *Smith* at 2; *Sidhu* at

14  3. In both cases, Arbitrator Meyerson reasoned that, under *Gilmer,* the arbitral forum is

15  inadequate for claimants to vindicate their statutory rights unless the class mechanism is

16  available.

17       In these rulings, it appears that Arbitrator Meyerson misconstrued the standard set by

18  Supplemental Rule 3 to hold that, unless arbitration is prohibited, it is permitted. Nothing in

19  Supplemental Rule 3 gives the arbitrator any authority to determine whether arbitration is

20  otherwise permitted by something other than the agreement (*e.g.*, by the FLSA). If the Arbitrator

21  reasons that claimants bring into the arbitral forum some "right" to class proceedings, the

22  Arbitrator impermissibly adds terms to the parties' agreement. In this case, such a ruling is

23  precluded by the District Court's binding rulings on these issues. Because Supplemental Rule

24  1(c) dictates that the Court's orders control, as explained in more depth below, the Arbitrator here

25  cannot deviate from them to reach a contrary result.

26  ///

27  ///

28  ///

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION    -31-
AAA Case No. 11 160 01323 04

1

2

      **b.**    <u>**Because Arbitrators Are Prohibited From Inserting Terms into the Parties' Agreement, an Arbitrator Cannot Permit Class Arbitration Unless the Parties So Intended**</u>

3           To the extent Arbitrator Meyerson's Clause Construction awards in *Smith* and *Sidhu* hold

4  that the parties' silence in their agreements as to class arbitration can be read to permit arbitration

5  to proceed on behalf of a class, those decisions are incorrect.  As discussed above, the laws of the

6  relevant states uniformly prohibit courts or arbitrators from re-writing contracts to insert terms.

7  For the arbitrator to permit class or collective arbitration in this case—particularly where doing so

8  would result in the wholesale disregard and invalidation of other terms—would run contrary to

9  the parties' intent and would exceed the Arbitrator's contractual authority.

10          Under similar circumstances, the Los Angeles County Superior Court in *DirecTV v. Cable*

11  *Connection, Inc. et al.,* Case No. BS095987, recently rejected an arbitral panel's decision

12  allowing class arbitration to proceed where there was no evidence of an intention to permit or

13  prohibit class arbitration.[18]  In the only court order published by the AAA on its Class Action

14  Docket as reviewing a Clause Construction Award, the Superior Court rejected the arbitral

15  panel's reasoning that either silence in the arbitration agreement or the fact that class actions are

16  generally available in court gave the panel the authority to interpret the agreements to permit class

17  arbitration.  *Id.* at 2.

18          The court ruled that the "threshold question" for the panel to decide under the

19  Supplemental Rules is "whether the parties agreed to class-wide arbitration."  *DirecTV* at 4.

20  Where the agreement is silent and does not evidence any intent one way or the other regarding the

21  treatment of class claims, arbitrators simply "do not have the authority to add a procedure for

22  which the contract did not provide."  *Id.* at 3.  Because arbitrators derive their authority from and

23  are bound by the terms of the arbitration agreement, for an arbitrator to construe an agreement to

24  permit class arbitration without any evidence that the parties so intended is "essentially [to add] a

25

26

27

28

    [18]  The underlying arbitration is captioned *Cable Connection et al. and DirecTV,* AAA Case No. 11 145 00752 04.  Copies of the Los Angeles County Superior Court order vacating the panel's partial award, along with a copy of the award submitted to the court for review are attached to the Declaration of Joseph A. Meckes at Exhibits 21 and 22.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

**CINTAS' CLAUSE CONSTRUCTION MOTION**     -32-
AAA Case No.  11 160 01323 04

1  term to the contract, " *Id.* at 5 (citing *United Steelworkers*, 363 U.S. at 597) ("[A]n arbitrator is

2  confined to interpretation and application of the [governing] agreement; he does not sit to

3  dispense his own brand of industrial justice.").

4      *DirecTV's* reasoning is equally applicable here. Simply because the class or collective

5  mechanism is available in court does not give the arbitrator the authority to import it into

6  arbitration. Unless the parties agreed to permit class arbitration, they are not permitted. Where

7  an arbitrator inserts such a term in the absence of any intent to permit class or collective

8  proceedings, the arbitrator exceeds the contractual bounds of his jurisdiction and authority.

9          c.    **The District Court has Held that Class Arbitration is Not
                 Necessary for Plaintiffs to Vindicate their Statutory Rights**

10

11      Not only are the basic foundations of Arbitrator Meyerson's decisions in *Smith* and *Sidhu*

12  eliminated by *DirecTV*, both of those decisions rely on the erroneous assumptions that class

13  arbitration is necessary for the arbitral forum to be a "suitable substitute" for litigation, and that

14  the class mechanism is somehow imported into the arbitral forum by operation of law. Not only

15  are these assumptions legally incorrect, they are directly contrary to a ruling already issued by

16  Judge Armstrong that is binding in this matter.

17      In *Sidhu*, Arbitrator Meyerson wrote:

18          [T]his result is consistent with the requirements of *Gilmer v.
            Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) in which the

19          United States Supreme Court held that for arbitration to be a suitable
            substitute for litigation with respect to the protection of statutory

20          employment rights, arbitration must provide employees with a
            forum that permits them to effectively vindicate their cause of action

21          in the arbitral forum.

22  *Sidhu* at 3; *see also Smith* at 2. While Arbitrator Meyerson was correct that the arbitral forum

23  must be a suitable substitute for litigation, Judge Armstrong has held in this matter that even the

24  complete inability to proceed collectively or as a class in arbitration does not make the arbitral

25  forum a less suitable substitute for litigation. Ruling on a motion brought by the Named

26  Claimants, Judge Armstrong held that the class procedure is <u>not</u> necessary for plaintiffs to

27  vindicate their rights in an arbitral forum. Meckes Decl. Ex. 8 at 4-6 (*Veliz* Dkt. No. 426).

28  ///

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION              -33-
AAA Case No. 11 160 01323 04

1    Judge Armstrong relied on United States Supreme Court precedent in *Gilmer* (as well as

2    several circuit court opinions) and reached the diametrically different conclusion from that

3    reached by Arbitrator Meyerson in *Smith* and *Sidhu*. *Id.* Faced with higher costs than they had

4    anticipated to arbitrate a class proceeding, 56 plaintiffs—including Named Claimants here—had

5    sought reconsideration of the Court's order compelling them to arbitration on the grounds that the

6    plaintiffs would be unable to vindicate their statutory FLSA rights in arbitration because the costs

7    of arbitration would preclude them from pursuing their claims on a class or collective basis—

8    even though individual claimants could proceed with individual arbitrations for approximately

9    $100 each. *Id.*

10    Judge Armstrong, however, directly rejected the idea that class or collective proceedings

11    in arbitration were necessary for the arbitration to be a suitable substitute for arbitration. *Id.*

12    Judge Armstrong held that even the "complete inability to pursue arbitration on a class or

13    collective basis" does not "impact a plaintiff's ability to vindicate his or her statutory rights" in

14    arbitration if the plaintiff has access individually to an arbitral forum. *Id.* at 6.

15    In *Smith,* Arbitrator Meyerson went beyond the terms of the parties' agreement to hold

16    that the right to collective proceedings is found not in the parties' agreement but in procedural

17    rights provided to claimants by the FLSA. *Smith* at 2. In so ruling, Arbitrator Meyerson did not

18    construe the parties' *agreements* to determine whether the *agreements* permitted arbitration to

19    proceed on behalf of a class or collectively. Instead, Arbitrator Meyerson assumed that the

20    claimants carried with them into arbitration a right to proceed collectively. Thus, it appears that

21    Arbitrator Meyerson misconstrued Supplemental Rule 3 to require proof that a collective action

22    was *prohibited*, not whether a class proceeding was *permitted* as required under Supplemental

23    Rule 3.

24    More importantly, however, Arbitrator Meyerson's decision in *Smith* is directly at odds

25    with Judge Armstrong's ruling based on well established jurisprudence that claimants in

26    arbitration *do not* carry with them procedural rights from litigation into the arbitral forum.

27    Relying on *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 320 (9th Cir. 1996), Judge Armstrong held

28    "that when an employee agrees to arbitrate, she forfeits *any* procedural rights arising from the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -34-
AAA Case No. 11 160 01323 04

1   FLSA, while retaining her substantive rights (*e.g.*, the right to obtain substantive relief) in

2   arbitration." Meckes Decl. Ex. 8 at 6 (*Veliz* Dkt. No. 426) (emphasis added). In so ruling, Judge

3   Armstrong stated that the availability of class or collective proceedings is not among the basic

4   procedural and remedial protections required for claimants to pursue and vindicate their statutory

5   rights. *Id.* at 6 n.3.

6          Because Judge Armstrong has, by Order, addressed and resolved these issues, the

7   Arbitrator has no discretion under Supplemental Rule 1(c) to deviate from the Court's rulings as

8   he considers whether the Arbitration Agreements permit arbitration to proceed on behalf of a

9   class or collectively.

10                    **d.    Language of National Rule 34(d) and the Arbitration**
                             **Agreements is Not Amenable to Construction Permitting Class**
11                           **Arbitration**

12         In *Sidhu*, Arbitrator Meyerson wrote that the parties' broad grant of authority to the

13   arbitrator to grant the same "legal and equitable relief . . . as could a court of law," along with

14   their incorporation of the National Rules (in particular National Rule 34(d)) created an ambiguity

15   as to whether the parties intended to permit class arbitration. *Sidhu* at 2. This reasoning cannot

16   be applied here. Neither the language of the Arbitration Agreements here nor the language of

17   National Rule 34(d) can be read to create any kind of "ambiguity" as to whether the parties

18   intended to permit class arbitration.

19         First, the notion that the class mechanism is a "remedy or relief" that is available in

20   arbitration is inconsistent with Judge Armstrong's previous rulings in this case as well as the

21   black letter principle of law that there is no substantive right to the class procedure.[19] As Judge

22

23   [19] Federal procedural laws are not incorporated into the parties' arbitration agreement and do not
        apply in the arbitral forum. *See Glencore, Ltd. v. Schnitzer Steel Prods. Co.*, 189 F.3d 264,
24      267-68 (2d Cir. 1999) (" The federal rules do not govern the procedure in the hearings before
        the arbitrators."); *Pike v. Freeman*, 266 F.3d 78, 92 n.17 (2d Cir. 2001) ("[T]he Federal Rules
25      of Civil Procedure do not apply in arbitrations before the American Arbitration Association.");
        *see also Schlessinger v. Rosenfeld, Meyer & Susman*, 40 Cal. App. 4th 1096, 1108 (1995) (As
26      a "general proposition . . . rules of civil procedure . . . do not apply in arbitration
        proceedings."). "By agreeing to submit disputes to arbitration, a party relinquishes his
27      courtroom rights . . . in favor of arbitration 'with all of its well known advantages and
        drawbacks.'" *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du*
28      *Papier*, 508 F.2d 969, 975 (2d Cir. 1974).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION        -35-
AAA Case No. 11 160 01323 04

1  Armstrong stated: "So long as a plaintiff can pursue the substantive statutory right through

2  arbitration, a plaintiff's inability to proceed collectively or on behalf of a class is legally

3  irrelevant." Meckes Decl. Ex. 8 at 5 (*Veliz* Dkt. No. 426). Likewise, citing *Kuehner v. Dickinson*

4  *& Co.,* 84 F.3d 316, 320 (9th Cir. 1996), Judge Armstrong held that "when an employee agrees to

5  arbitrate, she forfeits <u>any</u> procedural rights arising from the FLSA, while retaining her substantive

6  rights (*e.g.*, the right to obtain substantive relief) in arbitration." *Id.* at 6 (emphasis added).

7      In fact, the idea that the term "remedy or relief" can somehow be interpreted to include the

8  class procedure or some "right" to proceed collectively is at odds with the very essence of the law

9  of remedies. In his treatise, Professor Dobbs states:

10      The law of remedies is . . . sharply distinguished from the
       substantive law of rights. It is also distinguished from the law of
11      procedure. Procedural law deals with the process of getting from
       right to remedy. Getting there is the important thing for the law of
12      procedure.

13                                      . . .

14      Judicial remedies usually fall in one of four major categories: (1)
       damages remedies; (2) restitutionary remedies; (3) coercive
15      remedies such as injunction; or (4) declaratory remedies.

16  DAN B. DOBBS, LAW OF REMEDIES, § 1.1 (1993).[20] A "remedy" or "relief" is thus the manner in

17  which a tribunal vindicates a claimant's substantive rights, not the process by which that

18  vindication is achieved.

19      This is consistent with *Carter v. Countrywide*, 189 F. Supp. 2d 606, 618-19 (N.D. Tex.

20  2002), *aff'd* 362 F.3d 294 (5th Cir. 2004), where the court held that the term "remedies and relief"

21  in the NAF arbitral rules meant "remedies and relief" as described by Professor Dobbs, such as

22  damages, attorneys' fees and the like. *Id.* At the same time, the court held that procedural rights,

23  such as the class mechanism or the right to discovery, are *not* imported into the arbitral forum. *Id.*

24  ///

25

26  [20]  In the 1972 edition of Professor Dobbs' treatise, he states the difference as follows: "The law
       of judicial remedies concerns itself with the nature and scope of the relief to be given a
27     plaintiff once he has followed appropriate procedure in court and has established a substantive
       right. The law of remedies is thus sharply distinguished from the law of substance and
28     procedure." DAN B. DOBBS, THE LAW OF REMEDIES (1972).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION                    -36-
AAA Case No. 11 160 01323 04

The Arbitrator cannot, therefore, confuse the availability of the class mechanism in arbitration with a "remedy or relief" that is available in Court to somehow create an ambiguity that does not exist. Having a class mechanism is not the vindication of any substantive rights, but rather is "provided only as a means to enforce substantive law." *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 462 (1974). There is nothing "remedial" about the class procedure—it does not cure any injury, does not prevent any harm and does not punish a wrongdoer. The Named Claimants surely would not consider that they have obtained a "remedy" or "relief" in this arbitration if the best they could achieve is to proceed on behalf of a class. To consider the class mechanism to be a "remedy" or that it somehow provides "relief" to any claimant "would be to confuse the means with the ends -- to sacrifice the goal for the going." *City of San Jose*, 12 Cal. 3d at 462.

Moreover, if the class mechanism is incorporated into arbitration under the rubric of a "remedy or relief," then all other procedural rules and variations that might be available in court for discovery, for admission of evidence, for jury trials, etc. would have to be incorporated into arbitration as well. Obviously, this is not what the parties intended since such a proceeding would have none of the benefits of arbitration, but all of its procedural burdens. As the United States Supreme Court held in *Gilmer,* "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" 500 U.S. at 31. If the Arbitrator construes the term "remedy or relief" to include the class mechanism—or any courtroom procedure—he is doing nothing more than rewriting each agreement.

That the parties here did not intend the term "remedy or relief" to include courtroom procedures is further shown by the language used in the Arbitration Agreements themselves: "The arbitrator shall have the power to award appropriate relief, including damages, costs and attorney's fees as available under relevant laws . . . ." Meckes Decl. Ex. 1 at ¶ 5. Under the legal maxim *ejusdem generis,* general terms followed by more specific references are interpreted to include only the "persons or things of the same general kind or class as those specifically mentioned." *Cahill v. Liberty Mut. Ins. Co.* 80 F.3d 336, 338 n.2 (9th Cir. 1996); *Save Our Little*

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -37-
AAA Case No. 11 160 01323 04

1   *Vermillion Env't v. Illinois Cement Co.*, 725 N.E.2d 386, 390 (Ill. App. Ct. 2000); *Hawkins v.*

2   *Great W. R. R. Co.*, 17 Mich. 57, 63 (1868); *Abeles v. Adams Eng'g Co.*, 165 A.2d 555, 560 (N.J.

3   App. Div. 1960); *Jewel Tea Co. v. Watkins,* 145 P. 719, 721 (Colo. Ct. App. 1914); *Scullin Steel*

4   *Co. v. Mississippi Valley Iron Co.*, 273 S.W. 95, 97 (Mo. 1925); *Metropolitan Life Ins. Co. v.*

5   *Noble Lowndes Int'l*, 643 N.E.2d 504, 508 (N.Y. 1994); *24 Leggett St. Ltd. Pshp. v. Beacon*

6   *Indus.*, 685 A.2d 305, 313 (Conn. 1996); *see also* 5 CORBIN ON CONTRACTS §24.28 (Matthew

7   Bender 2005) ("meaning of the general term in a contract is limited by accompanying specific

8   illustrations"). Here, applying *ejusdem generis,* the general term "appropriate relief" can only be

9   interpreted to include remedies such as "damages, costs and attorneys' fees," not procedures like

10  class actions—or any other procedures—that might otherwise be available in litigation.

11      Accordingly, it would be unlawful for the Arbitrator to rule that the terms "remedy" or

12  "relief" create an ambiguity as to whether the parties intended to permit class arbitration.  These

13  terms have a clear, legal meaning that is simply not subject to such a strained interpretation.

14   **B.    THE ARBITRATION AGREEMENTS DO NOT PERMIT CONSOLIDATION OF THE**
15           **CLAIMANT'S INDIVIDUAL CLAIMS**

16      The Arbitration Agreements also do not permit the Named Claimants as *individuals* to

17  consolidate their claims—amongst themselves or with anyone else.[21]  As explained above, each

18  Named Claimant is subject to an enforceable place-of-arbitration provision that requires him or

19  her to arbitrate in the state and county where he or she last worked for Cintas—here, this is ten

20  different counties in nine different states.  Second, the language of the Arbitration Agreements

21  does not permit any inference that the parties intended to allow consolidation of the individual

22  disputes between each Named Claimant and Cintas.  Finally, allowing the Named Claimants to

23  proceed on a consolidated basis would cause Cintas to suffer prejudice.  Because allowing these

24  Named Plaintiffs to join their claims is contrary to the Arbitration Agreements and the National

25  Rules, the Arbitrator does not have the jurisdiction or authority to permit consolidation.

26

27   [21]  Cintas notes that the Demand for Arbitration states that the Named Claimants bring their
         claims both individually and on behalf of the putative class of similarly situated individuals.
28       Meckes Decl. Ex. 4.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -38-
AAA Case No.  11 160 01323 04

1.   **Arbitrations Between Cintas and Each Named Claimant is Required to Be Held in the State and County Where Each Named Claimant Last Worked for Cintas**

The Arbitration Agreements are unambiguous.  If an employee is unable to resolve his or her dispute with Cintas informally, he or she must submit a request for arbitration "to be held in the county and state where Employee currently works for Employer or most recently worked for Employer." *See, e.g.*, Meckes Decl. Ex. 1 at ¶ 5.  Rule 9 of the National Rules further confirms that such place-of-arbitration provisions are binding: "The parties may designate the location of the arbitration by mutual agreement."  It is only "in the absence of such agreement," that the AAA has any authority itself to fix the place of arbitration or that the Arbitrator has any authority to resolve disputes regarding the place of arbitration. *Id.*

The Named Claimants in this arbitration cannot join their claims to proceed collectively because they are required to arbitrate their disputes with Cintas in the ten different counties in the nine different states across the country where they last worked for Cintas.  Claimant Veliz last worked for Cintas in Los Angeles County California; claimant White last worked in San Bernardino County California; claimant Jaramillo last worked in Denver County, Colorado; claimant Fragola last worked in New Haven County, Connecticut; claimants Chainuck, Wasmer and Zadnick last worked in Will County, Illinois; claimant Jay last worked in Cook County, Illinois; claimant Cruz last worked in Marion County, Indiana; claimants Hodge and Woods last worked in Genessee County, Michigan; claimant Cruse last worked in Greene County, Missouri; and claimants Kelly and Williams last worked in Middlesex County, New Jersey. *See* Meckes Decl. Ex. 4 at Ex. B ¶¶ 8-12, 15-21, 24, 26, 27).

Cintas anticipates that the Named Claimants will argue that they are somehow entitled to proceed collectively in a single arbitration because Judge Armstrong compelled them to arbitrate in the Northern District of California. *See* Meckes Decl. Ex. 8 at 11-13 (*Veliz* Dkt. No. 426).  Nothing in the Court's Order, however, suggests that it conferred upon these claimants any *right* to arbitrate in the Northern District of California or to arbitrate collectively.  Instead, the Court simply recognized that its power to compel arbitration was limited by Section 4 of the FAA to the judicial district in which it sits.  The Court wrote that "to the extent that the arbitration

1    agreements of the 56 plaintiffs compelled to arbitrate by the April 5, 2004 Order require

2    arbitration to proceed outside of this judicial district, *the Court* cannot enforce those provisions."

3    *Id*. at 13 (emphasis added).

4         The Court recognized, however, that compelling the Named Claimants to arbitrate in the

5    Northern District of California did *not* render their place-of-arbitration agreements unenforceable

6    by Cintas.  The Court wrote:

7               Plaintiffs did not assert that the place-of-arbitration provisions of the
               arbitration agreements were unenforceable in briefing on Defendants
8               Motion to Compel Arbitration, nor did Plaintiffs raise it as a grounds
               for relief in its Motion for Reconsideration pursuant to Civ. L.R. 7-
9               9.   Accordingly, to the extent plaintiffs argue that these provisions
               are unfair, they have waived those arguments.

10

11   *Id*. at 12 n.8.  If the Court had considered its Order compelling arbitration to render the Named

12   Claimants' place-of-arbitration provisions unenforceable by Cintas, it would not have concluded

13   that the Named Claimants had waived any arguments that those provisions were unfair, since the

14   point would have been moot.

15        The only reasonable interpretation of the Court's May 4, 2005 Order is that that Order

16   required the Named Claimants to arbitrate in the Northern District of California but did not limit

17   Cintas' right to enforce the place-of-arbitration provision if it chose to do so.  This would be the

18   natural outcome of a motion to compel arbitration made by Cintas to those 56 plaintiffs.  To the

19   extent the Court ordered 56 plaintiffs to arbitrate in the Northern District of California, the Court

20   eliminated any right the Named Claimants might have had to arbitrate elsewhere.  Thus, as the

21   moving party, any right to require that arbitration take place in the Northern District of California

22   belongs to Cintas alone, and is therefore, Cintas' right to enforce—or to waive—as it sees fit.  By

23   initiating the lawsuit in the Northern District of California, the Named Claimants put themselves

24   into a position of being compelled to arbitrate here—thereby giving up any right they might have

25   had to arbitrate in the counties where they last worked for Cintas.  But, by moving to compel

26   arbitration under Section 4, Cintas could not be said to have waived any right to enforce the

27   place-of-arbitration provision—particularly given the requirement under Section 4 that the

28   arbitration agreements be enforced according to their terms.  9 U.S.C. § 4.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -40-
AAA Case No.  11 160 01323 04

1    Throughout this arbitration, Cintas has been steadfast in its position that the express place-

2    of-arbitration terms in the Arbitration Agreements must be enforced.  Given that the express

3    place-of-arbitration provisions prevent this arbitration (as posited by the Named Claimants) from

4    proceeding any further, the Arbitrator must enforce the terms of their Arbitration Agreements.

5    **2.    The Arbitrator Cannot Consolidate Arbitration Proceedings Where the**
     **Separate Arbitration Agreements are Silent on the Issue of**
6    **Consolidation**

7    Beyond the fact that the express place-of-arbitration provisions bar the Named Claimants

8    from consolidating their claims, a majority of courts have held that "the sole question" when

9    determining whether consolidation is permitted "is whether there is a written agreement among

10   the parties providing for consolidated arbitration." *Del E. Webb Constr. v. Richardson Hosp.*

11   *Auth.*, 823 F.2d 145, 150 (5th Cir. 1987) (citing *Weyerhaeuser Co. v. W. Seas Shipping Co.*, 743

12   F.2d 635, 637 (9th Cir. 1984)).  "[C]onsolidation is improper [where] the terms of the

13   [arbitration] agreements [do] not provide for it." *Id.* at 149; *see also Gov't of U.K. of Gr. Brit. v.*

14   *Boeing Co.*, 998 F.2d 68, 70 (2d Cir. 1993); *Baesler v. Continental Grain Co.*, 900 F.2d 1193,

15   1195 (8th Cir. 1990); *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281,

16   283 (11th Cir. 1989).  As noted above, these authorities are consistent with Supplemental Rule 3,

17   which puts the burden on the party seeking class arbitration to show that the agreements permit it.

18   Here, each Named Claimant (and each member of any classes they purport to represent)

19   signed separate employment agreements with Cintas, which include their own separate arbitration

20   provisions.  Where arbitration agreements are silent, this is sufficient in and of itself to prevent

21   the Arbitrator from consolidating what should be separate individual arbitration proceedings into

22   one proceeding. *See Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 727 (7th Cir. 2004)

23   ("[A]rbitration claims of multiple parties cannot be consolidated.").  And, "where there [are]

24   separate arbitration agreements with different parties signing each agreement," the Arbitrator

25   should not find the parties implicitly consented to consolidated arbitration. *Rolls-Royce Indus.*

26   *Power, Inc. v. Zurn EPC Servs.*, No. 01 C 5608, 2001 U.S. Dist. LEXIS 18278, * 14 (N.D. Ill.

27   Nov. 6, 2001).  Even if the Arbitrator believes that consolidation will be more efficient, he "is not

28   permitted to interfere with private arbitration [agreements] in order to impose [his] own view of

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -41-
AAA Case No.  11 160 01323 04

1  speed and economy." *See Boeing*, 998 F.2d at 70, 73. "This is the case even where the result

2  would be the possibly inefficient maintenance of separate proceedings." *Id.* at 73.

3       Here, as discussed above, the express place-of-arbitration provision plainly dictates that

4  consolidation cannot be permitted. But even if the Arbitration Agreements were silent on this

5  issue, however, the Arbitrator could not interpret that silence as the parties' consent to

6  consolidation.

7           **3.    The Arbitrator Cannot Invalidate the Terms of the Parties' Arbitration
                    Agreement to Consolidate Multiple Arbitration Proceedings**
8

9       A minority of courts have held that a consolidation is appropriate where the agreement is

10  silent—but only when consolidation does not "contradict[] the contractual terms regarding

11  arbitration." *New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 5 (1st Cir. 1988).

12  Such consolidation is permitted only "when the language of the arbitration clause is broad and in

13  no way suggests limits on the subjects or the parties to the agreed-upon arbitration." *Id.*[22]

14       Where, as here, the parties have agreed to an express place-of-arbitration term, the courts

15  have refused to order consolidation where doing so would nullify that term. *See, e.g., Seguro de*

16  *Servicio de Salud v. McAuto Systems Group, Inc.*, 878 F.2d 5, 10 (1st Cir. 1989); *Painewebber,*

17  *Inc. v. Fowler*, 791 F. Supp. 821, 825 (D. Kan. 1992); *Hyundai Am. v. Meissner & Wurst GmbH*

18

---

19  [22]  In *New England Energy, Inc. v. Keystone Shipping Co.*, the First Circuit held that a court may

20  consolidate arbitration proceedings if the parties' arbitration agreement is silent on the issue
    and if the relevant state's law specifically provides for consolidation. 855 F.2d at 5. But, as

21  noted above, this was only within the context of where the consolidation order did not
    contradict any of the terms in the arbitration agreement. *See id.* In any event, none of the

22  Named Claimants resides in a jurisdiction within the First Circuit. And moreover, as further
    noted earlier, the contract laws of California, Connecticut, Colorado, Illinois, Indiana,

23  Michigan, Missouri, New Jersey, and New York prohibit an arbitrator from disregarding or
    modifying the terms of the parties' agreement. Indeed, California and Michigan courts have

24  specifically refused to consolidate arbitration proceedings where consolidation would be
    contrary to the parties' intent or would contradict specific provisions in the parties' arbitration

25  agreements, including the agreements' place of arbitration provisions. *See Hyundai Am.*, 26 F.
    Supp. 2d at 1218-20; *see also Parker v. McCaw*, 125 Cal. App. 4th 1494, 1505 (2005)

26  ("Court-ordered consolidation does not achieve substantial justice under the circumstances if it
    substantially alters a party's contractual rights, or it results in unfair prejudice."); *Bay County*

27  *Bldg. Auth. v. Spence Bros.*, 362 N.W.2d 739, 742 (Mich. Ct. App. 1984) ("[H]owever sound
    they may consider consolidated arbitration to be as a matter of policy, courts are not

28  empowered to direct parties to undertake it when one of them objects.").

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION           -42-
AAA Case No. 11 160 01323 04

1   *& Co.-U.S. Operations*, 26 F. Supp. 2d 1217, 1218-20 (N.D. Cal. 1998); *Cullman Ventures, Inc.*

2   *v. Conk*, 252 A.D.2d 222, 229 (N.Y. App. Div. 1998); *Balfour v. Commercial Metals Co.*, 607

3   P.2d 856, 857 (Wash. 1980). Because the Arbitrator does not have the power to disregard terms

4   in Cintas' arbitration agreements, the Arbitrator should reject consolidation of the Claimants'

5   proceedings. *See Cullman*, 252 A.D.2d at 229 ("A court's failure to give effect to provisions in

6   separate agreements contemplating separate arbitrations is an unauthorized reformation of those

7   contracts.").

8       **4.    The Arbitrator Cannot Consolidate Multiple Arbitration Proceedings
              Where Each Proceeding Requires Individualized Factual Analysis**

9

10          Some courts have held that consolidation of arbitration proceedings is permissible, but

11   only where "no substantial right is prejudiced." *Robinson v. Warner*, 370 F. Supp. 828, 829

12   (D.R.I. 1974); *see also Seguro de Servicio de Salud*, 878 F.2d at 8; *Compania Espanola de*

13   *Petroleos, S. A. v. Nereus Shipping, S. A.*, 527 F.2d 966, 974-75 (2d Cir. 1975).[23] Here as noted

14   above, each individual arbitration proceeding will require fact-intensive inquiries into each

15   Claimant's individual job duties and employment relationship with Cintas.

16          Among other things, resolution of each individual Claimants' dispute will require a fact-

17   intensive inquiry of each Claimant's specific employment circumstances to determine if a FLSA

18   exemption applies to that Claimant. For example, application of the MCA Exemption will

19   involve highly individualized facts about each Claimant, each Claimant's route, each Claimant's

20   job duties, the Claimant's vehicle, and exactly which each Claimant's vehicle carries. Likewise,

21   the Outside Sales Exemption, will turn on facts specific to each individual Claimant. Because

22   individualized issues of fact will predominate, consolidation is not appropriate here—particularly

23   given that it is inconsistent with the plain language of the employment agreements.

24   *///*

25

26   [23]  Subsequent Second Circuit decisions have limited the holding in *Nereus* to situations where
          the parties "were bound by the same arbitration agreement." *See N. River Ins. Co. v.*
27        *Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995). Accordingly, the *Nereus*
          holding no longer permits consolidation where the parties have entered into "separate
28        contractual agreements to arbitrate." *Id.*

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -43-
AAA Case No. 11 160 01323 04

1    **V.    CONCLUSION**

2          Because the language of the Arbitration Agreements contains no terms that can be

3    construed to permit arbitration to proceed on behalf of a class, Cintas is entitled to a Clause

4    Construction Award so holding.  To reach a contrary result, the Arbitrator would have to ignore

5    and invalidate express terms in the Arbitration Agreements—which is something the Arbitrator is

6    without the jurisdiction, authority or power to do.  The reasoning relied on by Arbitrator

7    Meyerson in other cases to permit class arbitration would run afoul of rulings already rendered by

8    the District Court in this action.  Accordingly, and under Supplemental Rule 1(c) and otherwise,

9    the Arbitrator here has no discretion to deviate from Judge Armstrong's rulings.

10          Cintas is further entitled to a Clause Construction Award ruling that the individual Named

11   Claimants cannot pursue their individual claims collectively, either among themselves or with any

12   number of other potential claimants.  Absent a provision in the parties' agreements allowing

13   consolidation, it is not permitted as a matter of law—particularly where, as here, allowing this

14   diverse group of Named Claimants would result in the wholesale disregard of the express place-

15   of-arbitration terms in each of their Arbitration Agreements as well as the arbitration agreements

16   of any other potential claimants they hope to represent.

17

18                                      Respectfully submitted,

19
     Dated:  April 7, 2006                SQUIRE, SANDERS & DEMPSEY L.L.P.
20

21

22                                      By_____
                                             Mark C. Dosker
23
                                        Attorneys for Respondent
24                                      CINTAS CORPORATION

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

CINTAS' CLAUSE CONSTRUCTION MOTION          -44-
AAA Case No.  11 160 01323 04