# BEFORE THE
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re Cintas Corp.
Overtime Pay Arbitration Litigation

MDL Docket No. 1781

## RESPONSE BRIEF BY CINTAS CORPORATION IN OPPOSITION TO MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407



# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY .................................................................. 1

II. FACTUAL BACKGROUND ........................................................................... 2

III. ARGUMENT ............................................................................................... 7

    A.  The Panel Must First Decide Whether it Has Subject Matter Jurisdiction To Do That Which The Pending Motion Seeks ...................................... 7

    B.  The Jurisdictional Reach Of Section 1407 ............................................ 8

    C.  Summary Proceedings Under Section 4 Of The FAA Are Not Civil Actions Subject To Transfer ................................................................. 9

        1.  The Text and Structure Of The FAA Demonstrates That Section 4 Proceedings Are Unique Summary Proceedings, Not Civil Actions ......... 9

        2.  The Legislative History Of The FAA Further Shows That Section 4 Proceedings Are Unique Summary Proceedings, Not Civil Actions .................................................................................. 11

        3.  Rule 81(a)(3) Demonstrates That Section 4 Proceedings Are Unique Summary Proceedings, Not Civil Actions ................................... 14

    D.  Proceedings Under Section 4 Of The FAA Do Not Have Pretrial Proceedings Capable Of Coordination Or Consolidation By The Panel ............. 15

    E.  The Requirements For Transfer Under Section 1407 Are Not Met ..................... 17

    F.  In the Alternative, If The Panel Decides That it Has Subject Matter Jurisdiction and If The Panel Decides That The Requirements For Transfer Under Section 1407 Are Met, then Certainly The Transferee Court Should Be That of The Honorable Saundra Brown Armstrong of the Northern District of California ........................................................................... 19

IV. CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Arbaugh v. Y & H Corp.*,
__ U.S. __, 126 S. Ct. 1235 (2006)...................................................................7

*Ex parte McCardle*,
74 U.S. 506 (1869).........................................................................................8

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982).......................................................................................7

*Mansfield, Coldwater & Lake Michigan R. Co. v. Swan*,
111 U.S. 379 (1984).......................................................................................8

*Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*,
460 U.S. 1 (1983).........................................................................................11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967).......................................................................................9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)......................................................................................7, 8

*United States v. Ceja-Prado*,
333 F.3d 1046 (9th Cir. 2003) .........................................................................7

*Yakus v. United States*,
321 U.S. 414 (1944).......................................................................................7

## FEDERAL STATUTES AND RULES

9 U.S.C. § 2 ..................................................................................................9

9 U.S.C. § 3 ...............................................................................................3, 9

9 U.S.C. § 4 ..........................................................................................*passim*

9 U.S.C. § 6 ................................................................................................11

28 U.S.C. § 1407................................................................................1, 8, 19

29 U.S.C. § 201 *et seq.*..................................................................................2

# TABLE OF AUTHORITIES (cont'd)

## FEDERAL STATUTES AND RULES (cont'd)

**Page**

29 U.S.C. §1001 *et seq.*...............................................................................................2

29 U.S.C. § 216 ...............................................................................................................2

Act of Feb. 12, 1925, c.213, 43 Stat. 883 .....................................................................11

Fed. R. Civ. P. 1 .............................................................................................................14

Fed. R. Civ. P. 2 .............................................................................................................14

Fed. R. Civ. P. 3 .............................................................................................................14

Fed. R. Civ. P. 81(a)(3)...........................................................................................1, 14

Fed. R. Evid. 803(3).........................................................................................................6

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................................2

## LEGISLATIVE HISTORY

House Report, H.R. Rep. No. 90-1130 (1968), *reprinted in* 1968
    U.S.C.C.A.N. 1898, 1900 ......................................................................................17

House Report, H.R. Rep. No. 68-96 (1924)...........................................................11, 12

Joint Hearings before the Subcommittees of the Committees on the Judiciary on
S.1005 and H.R.646, *Bills to Make Valid and Enforceable Written Provisions or
Agreements for Arbitration of Disputes Arising Out of Contracts, Maritime
Transactions, or Commerce Among the States or Territories or with Foreign
Nations*, 68th Cong., First Sess. at 33-41 (January 9, 1924)........................................12, 14

Senate Report, S. Rep. No. 68-536 (1924) ............................................................11, 12

## I.    INTRODUCTION AND SUMMARY

In their motion to the Panel seeking transfer of 70 Petition proceedings to compel arbitration filed in 70 District Courts by Cintas Corporation ("Cintas"), the self-described "Veliz Plaintiffs" urge this Panel to transfer those proceedings to the Northern District of California for consolidation with a civil action pending in that District ("the Veliz Action").  Cintas opposes this motion because the statute granting this Panel its jurisdiction and authorizing the Panel to transfer civil actions to a single district for consolidated pretrial proceedings does not extend jurisdiction to, or authorize the transfer of, Petition proceedings to compel arbitration and because, even if there were jurisdiction and even if transfer were authorized, the conditions for transfer have not been met in this matter.

There are three main reasons why, as the analysis herein shows, 28 U.S.C. § 1407 does not apply to summary proceedings to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA") 9 U.S.C. § 4.

First, as confirmed by the FAA's text, the FAA's structure, the FAA's legislative history and the Federal Rules of Civil Procedure -- especially Rule 81(a)(3) -- summary proceedings under Section 4 of the FAA are not "civil actions" subject to this Panel's jurisdiction for possible transfer within the meaning of Section 1407.  Second, Section 4 admits of no pretrial proceedings that could meaningfully be consolidated even if transfer were jurisdictionally authorized.  Third, in the circumstances of this case, transfer would not be authorized or appropriate because there are no common issues of fact to be determined, but only individual issues that are undisputed and/or have already been decided.

Finally, however, Cintas states that if the Panel decides that the reasons summarized above and addressed in detail below do not preclude the Panel from transferring the Petition proceedings and that the requirements of Section 1407 are met, then certainly the transferee court

should be that of the Honorable Saundra Brown Armstrong of the United States District Court for the Northern District of California. In so stating, however, Cintas emphasizes that under any circumstances the ultimate outcome on each of the 70 Petition proceedings will and by statute must be the same -- because under Section 4 of the FAA, the arbitration(s) by the Respondents in each such Petition proceeding must, by statute, take place within the District where each such Petition was "filed." 9 U.S.C. § 4 (emphasis added). The 70 Petition proceedings were filed in the 70 respective Districts.

## II.    FACTUAL BACKGROUND

On March 19, 2003, certain individuals -- who are not Respondents in any of the 70 Petition proceedings -- filed a lawsuit against Cintas in the United States District Court for the Northern District of California alleging claims for relief under the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201 *et seq.*), the Employee Retirement Income Safety Act ("ERISA") (29 U.S.C. § 1001 *et seq.*), certain state wage and hour laws, and the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) styled as Veliz et al v. Cintas Corporation etc., Case No. C-03-01180 (SBA) (N.D. Cal.) (hereinafter "the Veliz Action"). The gravamen of plaintiffs' claims in the Veliz Action was that they were improperly characterized as "exempt" employees and were not paid overtime compensation.

Certain plaintiffs in the Veliz Action purported to act as representatives of a putative "opt-in" collective action under Section 16(b) of the Fair Labor Standards Act (29 U.S.C. § 216(b)), as representatives of a putative nationwide Rule 23 class action under ERISA, and as representatives of certain putative state sub-classes under Rule 23.

Subsequently, each of the persons who are now Respondents to the 70 Petition proceedings filed with the Court in the Veliz Action "Consents to Sue" and purported to opt-in to the Veliz Action and assert claims for "unpaid overtime premiums under the federal Fair Labor Standards Act ('FLSA') 29 U.S.C. § 216(b)" and also purported to designate Altshuler, Berzon,

Nussbaum, Rubin & Demain, Traber & Voorhees, and Lerach, Coughlin, Stoia & Robbins, LLP, to represent him or her in the Veliz Action.

Each Respondent to the 70 Petition proceedings is party to an individual employment agreement with Cintas that provides for binding arbitration of all disputes with Cintas, including statutory claims such as the FLSA claims asserted by Respondents in the Veliz Action. A copy of each Respondent's employment agreement is submitted in the appropriate one of the 70 Petition proceedings, as an Exhibit to the Declaration of Jenice Clendening submitted therein.

The employment agreement of each Respondent to the 70 Petition proceedings requires that such arbitration between him or her and Cintas be "conducted in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes and [that it be] held in the county and state where [the Respondent] currently works for [Cintas] or most recently worked for [Cintas]."

On June 3, 2005, Cintas moved to stay further proceedings in the Veliz Action by the persons who are now Respondents in the 70 Petition proceedings, pursuant to Section 3 of the Federal Arbitration Act (9 U.S.C. § 3). The plaintiffs in the Veliz Action (including persons who are now the Respondents in the 70 Petition proceedings) did not deny that they were required to arbitrate their FLSA claims against Cintas. Instead, through their counsel in the Veliz Action they filed a cross-motion requesting that the Court deem Cintas' motion to stay under Section 3 of the FAA to be, in effect, a petition to compel under Section 4 of the FAA.

In so moving, their counsel in the Veliz Action were seeking preemptively to nullify each of the individuals' express place-of-arbitration terms, by trying to themselves invoke Section 4's requirement that a district court can compel arbitration only in the district where the petition is filed. Previously, in motion proceedings that did not apply on this point to the persons who are now Respondents in the 70 Petition proceedings, the District Court in the Veliz Action had ruled that Section 4 of the FAA dictates that the arbitral hearing and any other arbitral proceedings be held in the judicial district where the petition under Section 4 is filed, even if the petition under Section 4 is filed by a defendant in an action filed by plaintiffs who are subject to place-of-

- 3 -

arbitration provisions that would ordinarily require arbitration elsewhere.  In so ruling, however, the Northern California District Court expressly limited the scope of its ruling to the 56 plaintiffs who had been the subject of Cintas' Motion to Compel in the Veliz Action, which does not include any of the persons who are now Respondents in the 70 Petition proceedings.

In this context, as to the persons who are now Respondents in the 70 Petition proceedings, Cintas expressly chose not to move or petition the Northern California District Court to compel arbitration under Section 4, but instead expressly moved in that Court only for a stay of litigation under Section 3.  Previously, Cintas had expressly reserved -- including in but not limited to submissions on the record in the Veliz Action on December 14, 2004 and September 6, 2005 -- its right to petition in the 70 District Courts under Section 4, although Cintas continued to have that right regardless whether or not it reserved that right.

Prior to the hearing on the relevant motions, the Northern California District Court ordered the parties to complete a meet and confer process and submit a joint stipulation identifying: (a) which of the plaintiffs in the Veliz Action may litigate their claims before the Northern California District Court, (b) which of the plaintiffs are required to arbitrate their claims, and (c) which plaintiffs the parties are unable to agree fall in either of the two categories.[1]  The order further directed that the joint stipulation specifically reference plaintiffs by name, by applicable Employment Agreement (the enforceability of which the Northern California District Court had previously ruled upon or was called on to rule upon in the then-pending motions) and any other identifying information the parties believed would be helpful.  Exhibit 1 to Request for Judicial Notice submitted herewith ("RJN") [Docket No. 500 in Veliz Action].

---

[1] Out of about 1900 persons whose individual agreements were at issue, only six challenged the enforceability of their individual arbitration agreements.  The Veliz Court considered the two sides' evidence about each of those six persons, and ruled in the individual's favor on three of the challenges and in Cintas' favor on three of the challenges.  Exhibit 5 to Request for Judicial Notice submitted herewith, at pages 7-9.  [Docket No. 516 in Veliz Action].

The parties submitted their joint stipulation on September 29, 2005.  Exhibit 2 to RJN [Docket No. 501 in Veliz Action].

Thereafter, on the record of a hearing on the motions then-pending before the Northern California District Court, the persons who are now Respondents in the 70 Petition proceedings stated unequivocally through their counsel in the Veliz Action -- Michael Rubin of Altshuler, Berzon, Nussbaum, Rubin & Demain -- that they do not intend to arbitrate in accordance with the terms of their enforceable agreements with Cintas in that they will not observe the place-of-arbitration terms in their agreements but will instead seek to proceed in a single arbitration in San Francisco.  Exhibit 3 to RJN at 87:15-18 [Docket No. 512 in Veliz Action]; Dosker Decl. at paragraph 3.

By Order filed on February 14, 2006, the Northern California District Court granted Cintas' motion to stay under Section 3 and rejected all of the arguments by the opt-in plaintiffs (including the persons who are now Respondents in the 70 Petition proceedings) that the Court should allow Respondents hereto to proceed in arbitration in Northern California.  On the record of the hearings on those motions, the Northern California District Court stated that the arguments by the opt-in plaintiffs in the Veliz Action (including the persons who are now Respondents in the 70 Petition proceedings) were without any basis in fact or law and that the opt-in plaintiffs (including the persons who are now Respondents in the 70 Petition proceedings) had no statutory or case authorities or even factual support for their motion, and that plaintiffs' counsel had no answer -- as to why the opt-in plaintiffs (the persons who are now Respondents in the 70 Petition proceedings) were disregarding what each of the opt-in plaintiffs (the persons who are now Respondents in the 70 Petition proceedings) had agreed to in his or her enforceable arbitration agreement -- other than the strategic desire of their counsel to have all such persons in one location.[2]  Exhibit 3 to RJN at 14:15-19, 16:15-17, 97:9-17; and Exhibit 4 to RJN, at 4:3-14, 7:5-

_____

[2] That burning desire of their counsel arose and continues because counsel brought the Veliz Action as a pressure tactic as part of an overall "corporate campaign" against Cintas by certain labor unions, acting in concert with the unions' lawyers, who are the plaintiffs' lawyers in the Veliz Action.  Examples of evidence of the state of mind and the intent, plan, motive, and design

10 and 25:2-28:24 [Docket No. 518 in Veliz Action].

A copy of the Northern California District Court's Order filed on February 14, 2006 is attached hereto as Exhibit 5 to RJN [Docket No. 516 in Veliz Action]. That Order adopts the reasons the Court stated on the record at the hearings on those motions. *Id.*, at 1:25-27. Repeatedly at those hearings, the Court stated that the arbitration agreements are enforceable. *See, e.g.*, Exhibit 3 to RJN, at 5:4-6:2, 8:22-9:18, 10:18 and 12:19; and Exhibit 4 to RJN, at 6:23. The Order lists by name each of the persons who are now Respondents in the 70 Petition proceedings. Exhibit 5 to RJN [Docket No. 516 in Veliz Action].

Despite the Northern California District Court's Order that litigation be stayed until each of the persons listed therein have arbitrated in accordance with the terms of his or her individual employment agreements, however, each of those persons has failed or neglected or refused, and continues to fail or neglect or refuse, to arbitrate in accordance with the terms of his or her agreement and continues to fail or neglect or refuse to comply with his or her agreement. Indeed, counsel for plaintiffs in the Veliz Action (including the persons who are now Respondents in the 70 Petition proceedings) stated on the record in the Veliz Action that they would seek to have the claims heard in arbitration in Northern California. Exhibit 3 to RJN at 87:15-18; Dosker Decl. at paragraph 3

Meanwhile, earlier in the Veliz Action, the Northern California District Court has already held as a matter of federal law that the persons who are now Respondents in the 70 Petition proceedings have no substantive right to proceed collectively or as a class in arbitration. Exhibit 6 to RJN at pp. 4-7 [Docket No. 426 in Veliz Action].

In a teleconference on March 1, 2006, plaintiffs' counsel in the Veliz Action -- Michael

---

– see Fed. R. Evid. 803(3) -- which has caused the Veliz plaintiffs' counsel to cause the individuals to fail, refuse and neglect to arbitrate in the manner provided for in each individual's admittedly enforceable arbitration agreement are, among other things, multiple statements by those unions and by their lawyers who filed the Veliz Action and are handling it. Exhibit 1 to Declaration of Mark C. Dosker ("Dosker Decl.") submitted herewith [Docket No. 292 in Veliz Action]; and Dosker Decl. at paragraphs 5-7 and Exhibits 2-4 thereto.

Rubin of Altshuler, Berzon, Nussbaum, Rubin & Demain -- again stated that the Veliz Plaintiffs do not intend to arbitrate in accordance with the terms of their enforceable agreements with Cintas in that they will not observe the place-of-arbitration terms in their agreements but will instead seek to proceed in a single arbitration in San Francisco.  Dosker Decl. at paragraph 3.

　　　To date, none of the persons who are Respondents in the 70 Petition proceedings has initiated arbitration against Cintas in the county where he or she currently works for Cintas or last worked for Cintas.

## III.　　ARGUMENT

### A.　　The Panel Must First Decide Whether it Has Subject Matter Jurisdiction To Do That Which The Pending Motion Seeks

　　　The Panel must first decide whether it has subject matter jurisdiction to do that which the pending motion seeks.  The objection that a federal court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, __ U.S. __, 126 S. Ct. 1235, 1240 (2006).  "Commonly it is said that 'jurisdictional' questions, particularly concerning the court's power to deal with the subject matter, may be raised at any stage or in a collateral attack." *Yakus v. United States*, 321 U.S. 414, 473 (1944).  "No action of the parties can confer subject matter jurisdiction upon a federal court.  Thus the consent of the parties is irrelevant." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  "The parties' agreement, however, cannot create subject matter jurisdiction nor waive its absence." *United States v. Ceja-Prado*, 333 F.3d 1046, 1049 (9th Cir. 2003).

　　　In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), the United States Supreme Court adhered to the rule that a federal court may not hypothesize subject matter jurisdiction for the purpose of otherwise proceeding on the matter before the court.  The

Supreme Court rejected a doctrine, once approved by several Courts of Appeals, that allowed federal tribunals to pretermit jurisdictional objections "where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." 523 U.S. at 93. Recalling "a long and venerable line of our cases", the Supreme Court stated that: "The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception'" because "'jurisdiction is power to declare the law,'" and "'without jurisdiction the court cannot proceed at all in any cause.'" *Id.* at 94-95 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869) (emphasis added) and *Mansfield, Coldwater & Lake Michigan R. Co. v. Swan*, 111 U.S. 379, 382 (1984)).

Mindful of these bedrock rules of law, Cintas respectfully submits that the Panel must first decide whether it has subject matter jurisdiction to do that which the pending motion seeks.

### B.    The Jurisdictional Reach Of Section 1407

The first sentence of Section 1407(a) sets forth the limits on the Panel's jurisdiction. That sentence provides:

> (a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.

As the statute provides, only "*civil actions*" may be transferred. Those civil actions must involve "*one or more common questions of fact*" and they may only be transferred "*for coordinated or consolidated pretrial proceedings*." In the present circumstance, the arbitration proceedings are not subject to transfer because they are not "civil actions", they do not have any pretrial proceedings capable of coordination or consolidation and they do not involve any common issues of fact.

- 8 -

**C.    Summary Proceedings Under Section 4 Of The FAA Are Not Civil Actions Subject To Transfer**

**1.    The Text and Structure Of The FAA Demonstrates That Section 4 Proceedings Are Unique Summary Proceedings, Not Civil Actions**

The key provisions of the FAA are Sections 2, 3 and 4. Section 2 provides that arbitration agreements shall be valid and enforceable; Section 3 requires a court to stay actions brought on issues referable to arbitration; and Section 4 allows a party to an arbitration agreement to petition a district court to compel arbitration and requires the district court so petitioned to so compel once it is satisfied that an agreement for arbitration has been made and has not been honored. 9 U.S.C. §§ 2, 3, 4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). Each of the 70 proceedings sought to be transferred here is a Petition proceeding brought under Section 4 of the FAA.

Section 4 of the FAA vests in the district courts limited jurisdiction to issue orders summarily compelling arbitration. That section provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall

- 9 -

hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4. The key aspects of Section 4 proceedings, which distinguish them from civil actions, are apparent from the text of the statute. Section 4 proceedings are commenced by petition, not complaint. The relief sought by the petition is not a judgment for damages or injunctive relief, but "an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." *Id.* The statute provides for only five days notice to the party against whom the order is sought. The district court's role is limited to determining whether an arbitration agreement was made and not honored. If the making of the arbitration agreement or the failure to perform it is an issue, then "the court shall proceed *summarily* to the trial thereof." *Id.*

Section 4 contemplates no pretrial proceedings and has none of the other hallmarks of a civil action. Rather, it is carefully structured *to avoid* pretrial proceedings and the expense and complexity of a civil action governed by the Federal Rules of Civil Procedure.

Not only does the text and structure of Section 4 establish that proceedings under it are not to be considered "civil actions" with complex pretrial proceedings requiring coordination or consolidation, the jurisdictional language of the section distinguishes civil actions from summary proceedings to compel arbitration. Jurisdiction is given to district courts "which, save for [the arbitration] agreement, would have jurisdiction under Title 28, in *a civil action* . . . between the

- 10 -

parties . . . ." *Id.* (emphasis added). This express statutory grant of jurisdiction would be rendered surplusage if the proceeding under Section 4 were itself to be a "civil action".

Section 6 of the FAA likewise emphasizes the difference between civil actions and proceedings under the FAA. That section provides:

> Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise expressly provided.

9 U.S.C. § 6. This section contemplates none of the normal pretrial proceedings involving initial disclosures, discovery, pretrial conferences, and the like that are the hallmarks of the civil actions to which this Panel's jurisdiction extends. As the United States Supreme Court has stated: "The Arbitration Act calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 29 (1983). This clear goal of the FAA could not be accomplished if the full panoply of pretrial proceedings were applicable to cases under Section 4 of the FAA.

### 2.    The Legislative History Of The FAA Further Shows That Section 4 Proceedings Are Unique Summary Proceedings, Not Civil Actions

The distinction between a full-blown civil action and the summary proceedings of Section 4 is further delineated by the legislative history of the FAA. The FAA was enacted on February 12, 1925. Act of Feb. 12, 1925, c.213, 43 Stat. 883. Its legislative history includes a House Report, H.R. Rep. No. 68-96 (1924) ("House Report"), a Senate Report, S. Rep. No. 68-536 (1924) ("Senate Report"), two separate reported hearings and limited floor debate.[3] This history further shows that the summary proceedings of Section 4 are not "civil actions" to which the Panel's jurisdiction extends.

---

[3] For the convenience of the Panel, and opposing counsel, copies of the legislative history materials cited herein are provided by Cintas in the Appendix of Authorities submitted with this Brief.

The House Report summarized the benefits of the summary procedures of Section 4 as follows:

> The bill declares simply that such agreements for arbitration shall be enforced, and provides a procedure in the Federal courts for their enforcement. The procedure is very simple, following the lines of ordinary motion procedure, reducing technicality, delay, and expense to a minimum and at the same time safeguarding the rights of the parties.

H.R. Rep. No. 68-96, at 2. The Senate Report is equally clear about the simplicity of the procedures of Section 4:

> Section 4 provides a simple method for securing the performance of an arbitration agreement. The aggrieved party may apply to the proper district court on five days' notice, and the court will order the party to proceed. The constitutional right to a jury trial is adequately safeguarded.

S. Rep. No. 68-536, at 3.

The summary observations of the two reports derived from more detailed submissions that were made part of the record in hearings on the relevant Senate and House bills. In particular, a chief proponent of the arbitration legislation, Mr. Julius Henry Cohen, who was a member of the American Bar Association committee which proposed the legislation and was general counsel for the New York State Chamber of Commerce, submitted a detailed briefing paper to the Senate and House subcommittees that held joint hearings on the bills. Joint Hearings before the Subcommittees of the Committees on the Judiciary on S.1005 and H.R.646, *Bills to Make Valid and Enforceable Written Provisions or Agreements for Arbitration of Disputes Arising Out of Contracts, Maritime Transactions, or Commerce Among the States or Territories or with Foreign Nations*, 68th Cong., First Sess. at 33-41 (January 9, 1924) ("Joint Hearings"). The briefing paper specified the evils to which arbitration agreements and the proposed arbitration law would be directed as follows:

> The evils at which arbitration agreements in general are directed are three in number. (1) The long delay usually incident to a proceeding at law, in equity or in admiralty, especially in recent years in centers of commercial activity, where there has arisen great congestion of the court calendars. This delay arises not only from congestion of the calendars, which necessitates each case awaiting its turn for consideration, but also frequently from preliminary motions and other steps taken by litigants, appeals therefrom, which delay consideration of the merits and appeals from decisions upon the merits which commonly follow the decision of any case of real importance. (2) The expense of litigation. (3) The failure, through litigation, to reach a decision regarded as just when measured by the standards of the business world.

Joint Hearings at 34-35. Unfortunately, some of these perceived "evils" remain characteristic of the litigation of civil actions today.

The paper went on to endorse the bills at issue as the solution and described their essential characteristics as follows:

> Where one party refuses to carry out the agreement, however, the other party now has a remedy formerly denied him. This remedy is not, as has been suggested, equally cumbersome with the old actions in the courts, nor is there any prospect that it will ever become so. At the outset the party who has refused to arbitrate because he believes in good faith that his agreement does not bind him to arbitrate, or that the agreement is not applicable to the controversy, is protected by the provision of the law which requires the court to examine into the merits of such a claim. Such examination is, however, made summarily, so there is a minimum of delay and expense.
>
> **The procedure for the enforcement of arbitration agreements is very simple. It reduces technically and formality to a minimum. It follows the same course as do ordinary motions before the given District Court.** Reasonable notice to the adverse party is assured by the requirement that notice of the application be given as though it were summary process. Thereafter, however, except in the case where the existence and applicability of the arbitration agreement are in question, the question **whether arbitration should be ordered is decided upon motion papers, affidavits and such exhibits as the party chooses to submit, obviating the necessity of appearance in court, together with the calling of witnesses and the opportunity for other preliminary**

- 13 -

> *motions and proceedings.  The whole matter should be disposed*
> *of within a few days after the application is made.*

*Id.* at 35-36 (emphasis added).

The procedures contemplated by the FAA's proponents and reflected in Section 4 as enacted are entirely incompatible with pretrial proceedings of the type that this Panel is empowered with consolidating and coordinating.  As the legislative history of the FAA confirms, Section 4 requires only summary action by the district court with no pretrial proceedings and so a Section 4 proceeding is entirely distinct from a "civil action" subject to Section 1407.

### 3.     Rule 81(a)(3) Demonstrates That Section 4 Proceedings Are Unique Summary Proceedings, Not Civil Actions

The scope of the Federal Rules of Civil Procedure is set in Rule 1.  The rules "<u>govern the procedure in the United States district courts in all suits of a civil nature</u> whether cognizable at law or in equity or in admiralty, <u>with the exceptions stated in Rule 81</u>." (emphasis added).  Rule 2 provides:  "There shall be one form of action to be known as 'civil action'."  Rule 3 provides: "A civil action is commenced by filing a complaint with the court."

Rule 81(a)(3) is directly relevant here.  That rule provides in pertinent part:  "In proceedings under Title 9, U.S.C., relating to arbitration . . . these rules apply only to the extent that matters of procedure are not provided for in those statutes."

Taken together, these rules further confirm that Petition proceedings under Section 4 of the FAA are not "civil actions".

First, Rule 81 limits the application of the Federal Rules to matters not provided for in the FAA and characterizes as "proceedings" and not "civil actions" the judicial activities contemplated by the FAA.  As noted above, Section 4 provides a procedural framework and a fast timetable for summary disposition of petitions to compel arbitration.  The different

requirements and time limits of the Federal Rules, including those related to pleadings, parties, pretrial conferences, case management, depositions and discovery, are all rendered inapplicable by the contrary provisions of Section 4.

Second, because no "complaint" is ever filed under Section 4, which provides for a "petition" to compel arbitration, no "civil action" could be commenced in a proceeding under Section 4, as Rule 3 makes clear.

The 70 Petition proceedings under Section 4 of the FAA are not "civil actions" subject to the various pretrial requirements of the Federal Rules of Civil Procedure and so are not within the jurisdiction of the Panel to coordinate or consolidate, either with other proceedings under Section 4 or with the civil action by the Veliz Plaintiffs in the Northern District of California.

### D.    Proceedings Under Section 4 Of The FAA Do Not Have Pretrial Proceedings Capable Of Coordination Or Consolidation By The Panel

As noted above, proceedings under Section 4 of the FAA are summary by statute. They contemplate no discovery. The only issues to be determined are whether the parties made an agreement in writing to arbitrate their dispute and, if so, whether the respondent has refused to comply with the arbitration agreement. If these issues are undisputed, arbitration will be ordered forthwith, and must take place in the district where the petition was filed. If there is a legitimate dispute about the existence of an arbitration agreement or compliance with it, then there must be a summary trial, either to the court or to a jury. In the language of Section 4: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." This requirement makes no provision for pretrial proceedings, but requires the court to proceed immediately to the trial of the single issue

in dispute.[4]  If each of the Respondents in the Section 4 Petition proceedings has an arbitration agreement with Cintas (as everyone has admitted throughout the record in Veliz and as the Court in the Veliz Action held) and if a Respondent in a particular Petition proceeding nevertheless asserts that he or she has not refused to comply with his or her arbitration agreement in the manner provided for in such agreement, then this will be determined by the district court where the petition is filed on motion -- or if legitimate factual disputes exist, by summary jury trial. Neither such a dispositive motion nor a summary trial is a pretrial proceeding that can be meaningfully consolidated or coordinated, and none of the motions that the Veliz Plaintiffs threaten to bring is permissible under Section 4.

As is clear from the record in Veliz as stated in each of the 70 Petitions, there is no legitimate dispute but that there is an arbitration agreement between Cintas and each individual Respondent, and that each Respondent has failed to comply with it by failing to arbitrate in the manner provided for in such agreement, so each district court has only one option -- to compel arbitration in the district where the petition has been filed.  Section 4 explicitly so provides:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.  Even assuming this simple judicial act is a "pretrial proceeding", it is not the sort that Section 1407 contemplates will be an appropriate basis for transfer.[5]

---

[4] The Veliz Plaintiffs assert that they will "move to dismiss, strike, stay, or abate" the Section 4 Petition proceedings at issue.  No such motion is permitted by Section 4.

[5] The legislative history of Section 1407 confirms the intent of Congress that the power of multidistrict coordination and consolidation be limited to cases with significant discovery to be managed.  "By the term 'pretrial proceedings' the committee has reference to the practice and

If a legitimate factual dispute could somehow arise about whether a particular

Respondent has refused to arbitrate in the manner provided for in his or her agreement, then

Section 4 requires a summary trial.  Under no circumstances can a trial be considered a "pretrial

proceeding", and the Veliz Plaintiffs do not appear to contend otherwise.  Indeed, the existence

of any legitimate factual issues would require the immediate remand of the transferred

proceedings for summary trial.

In short, in these Section 4 summary arbitration matters, there are no pretrial proceedings

to be consolidated or coordinated under Section 1407.

### E.    The Requirements For Transfer Under Section 1407 Are Not Met

Even if the Panel had jurisdiction to consider the pending motion to transfer (which

respectfully it does not), a fundamental requirement for transfer is not met because the Section 4

arbitration proceedings do not involve common issues of fact.  The only questions presented to a

district court in a Section 4 proceeding are:  (1) is there a written arbitration agreement and (2)

has the respondent refused to perform that agreement as written.

The parties do not, and cannot, dispute that the written arbitration agreements exist and

are enforceable.  Each of the Respondents in each of the Petition proceedings has so admitted in

the Veliz Action.  The Court in the Veliz Action has determined that each of those individuals'

arbitration agreement is enforceable.

---

procedure which precede the trial of an action.  These generally involve deposition and discovery,
and, of course, are governed by the Federal Rules of Civil Procedure." H.R. Rep. No. 90-1130.
at 1900 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900.  That report further notes:  "It is
expected that such transfer is to be ordered only where significant economy and efficiency in
judicial administration may be obtained.  The types of cases in which massive filings of
multidistrict litigation are reasonably certain to occur include not only civil antitrust actions, but
also, common disaster (air crash) actions, patent and trademark suits, products liability actions
and securities law violations, among others." *Id.*  These types of cases do not bear even a
superficial resemblance to a Section 4 proceeding to compel arbitration.

The only arguably remaining potential factual question in any of the Section 4 proceedings is whether a particular Respondent has refused to perform his or her arbitration agreement as written. Each of the arbitration agreements require in pertinent part that the arbitration be "held in the county and state where Employee currently works for Employer or most recently worked for Employer." The Veliz Plaintiffs cannot legitimately dispute that each of the Respondents has failed, neglected or refused (which is the test under 9 U.S.C. § 4) to arbitrate in the locations provided for by their respective agreements. The Veliz plaintiffs' motion is based on their counsel's ongoing (but thus far rejected) quest that all the individual Respondents should be permitted to arbitrate in San Francisco. The pending Section 4 Petition proceedings thus raise no factual issues at all.

If there were factual issues about either the existence of an agreement to arbitrate or a particular Respondent's non-performance of it, in any event, any such issues would be unique to each individual and not common issues of fact which Section 1407 requires as a predicate for transfer. Moreover, as soon as any such factual issues were identified by a transferee court, Section 4 would require their immediate resolution by summary trial, so remand would be required in accord with Section 1407(a).[6]

If the facts are undisputed, then transfer is not authorized by Section 1407. If the facts are legitimately disputed as to any Respondent, they must be resolved by summary trial in the district where the Petition was filed against that Respondent. There is no room for pretrial proceedings to be coordinated or consolidated.

---

[6] To the extent that the Veliz Plaintiffs seek to argue about the proper construction of the arbitration agreements at issue, those arguments are legal, not factual.

Because there are no common issues of fact in the various Section 4 proceedings, but only undisputed facts or questions of law, Section 1407 does not permit the transfer of the Section 4 proceedings.

> **F.    In the Alternative, If The Panel Decides That it Has Subject Matter Jurisdiction and If The Panel Decides That The Requirements For Transfer Under Section 1407 Are Met, then Certainly the Transferee Court Should Be That of the Honorable Saundra Brown Armstrong of the Northern District of California**

If the Panel decides that the reasons addressed above do not preclude the Panel from transferring the Petition proceedings and that the requirements of Section 1407 are met, then certainly the transferee court should be that of the Honorable Saundra Brown Armstrong of the United States District Court for the Northern District of California. In so stating, however, Cintas emphasizes that under any circumstances the ultimate outcome on each of the 70 Petition proceedings will and by law must be the same either way -- because under Section 4 of the FAA, the arbitration(s) by the Respondents in each such Petition proceeding must, by statute, take place within the District where each such Petition was "filed." 9 U.S.C. § 4 (emphasis added). The 70 Petition proceedings were filed in the 70 respective Districts.[7]

---

[7] In stating what it does in this sub-section, and not laying out in detail here its underlying analysis, Cintas does not admit by silence any of the arguments made by the Veliz plaintiffs on their pending motion. Cintas observes that Judge Armstrong correctly made the rulings whose effect the Veliz plaintiffs are trying to avoid by using the pending motion. If the Panel decides it has subject matter jurisdiction to do what the pending motion seeks, and if the Panel decides that the requirements of 28 U.S.C. § 1407 are met, then Cintas readily states that the transferee Court should be that of Judge Armstrong. So Cintas sees no purpose in taking the Panel's time to further show in complete detail why and how many of the self-serving, incorrect and irrelevant characterizations in the Veliz plaintiffs' papers on the pending motion are just that.

## IV.    CONCLUSION

The Panel should conclude that it does not have subject matter jurisdiction to do that which the pending motion seeks, and that transfer is not authorized by Section 1407; but that even if there were jurisdiction and even if transfer were authorized, the statutory conditions for transfer have not been met in this matter.  In the alternative, however, if the Panel decides that it does have subject matter jurisdiction, that transfer is authorized and that the statutory conditions for transfer have been met in this matter, then certainly the transferee court should be that of the Honorable Saundra Brown Armstrong of the Northern District of California.

Dated: April 26, 2006                           Respectfully submitted,

                                                _____
                                                Mark C. Dosker

                                                SQUIRE, SANDERS & DEMPSEY L.L.P.
                                                Mark C. Dosker
                                                Nathan Lane III
                                                Michael W. Kelly
                                                Joseph A. Meckes
                                                Angela N. O'Rourke
                                                Y. Anna Suh
                                                Michelle M. Full
                                                One Maritime Plaza, Third Floor
                                                San Francisco, California  94111
                                                Telephone:  (415) 954-0200
                                                Facsimile:  (415) 393-9887

                                                Attorneys for
                                                CINTAS CORPORATION