# Exhibit 3

Original 1
FILED

NOV 1 0 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3   DEPARTMENT 3, FOURTH FLOOR SAUNDRA BROWN ARMSTRONG, JUDGE

 4                         -oOo-

 5   VELIZ                    )  C-03-01180E SBA

 6           PLAINTIFF,       )

 7   V.                       )  TUESDAY, OCTOBER 18, 2005

 8   CINTAS CORPORATION,      )  OAKLAND, CALIFORNIA

 9           DEFENDANT.       )  PLAINTIFF/DEFENDANTS MOTIONS

10   _____ )

11           REPORTER'S TRANSCRIPT OF PROCEEDINGS

12   APPEARANCES:

13   FOR THE PLAINTIFF:

14   ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
     BY:  MICHAEL RUBIN,
15        EILEEN B. GOLDSMITH,
          ATTORNEYS AT LAW
16   177 POST STREET, SUITE 300
     SAN FRANCISCO, CALIFORNIA  94108
17   TEL (415) 421-7151
     FAX (415) 362-8064
18   MRUBIN@ALTSHULERBERZON.COM

19   FOR THE DEFENDANT:

20   LERACH, COUGHLIN, STOIA GELLER RUDMAN ROBBINS, LLP
     BY:  STEVEN W. PEPICH,
21        ATTORNEY AT LAW
     655 WEST BROADWAY, SUITE 1900
22   SAN DIEGO, CALIFORNIA  92101-3301
     TEL (619) 231-1058
23   FAX (619) 231-7423
     WWW.LERACHLAW.COM, SPEPICH@LERACHLAW.COM

24

25   (MORE APPEARANCES ON THE NEXT PAGE)
```

2

```
 1   SQUIRE, SANDERS & DEMPSEY, LLP
     BY:  MARK C. DOSKER,
 2         ATTORNEY AT LAW
     ONE MARITIME PLAZA, SUITE 300
 3   SAN FRANCISCO, CALIFORNIA  94111-3492
     TEL (415) 954-0200
 4   DIRECT (415) 954-0210
     FAX (415) 393-9887
 5   MDOSKER@SSD.COM

 6   REPORTED BY:  STARR A. WILSON, CSR 2462

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1    OAKLAND, CALIFORNIA; TUESDAY, OCTOBER 18, 2005; 3:00 P.M.,

2    DEPARTMENT THREE, THIRD FLOOR; SAUNDRA BROWN ARMSTRONG,

3    JUDGE

4                        -oOo-

5            THE CLERK:   ALL RISE.   THIS COURT IS NOW IN

6    SESSION.   THE HONORABLE SAUNDRA BROWN ARMSTRONG PRESIDING.

7    PLEASE BE SEATED.

8            CALLING CIVIL 03-1180, VELIZ VS. CINTAS

9    CORPORATION.

10           MR. RUBIN:   GOOD AFTERNOON, YOUR HONOR.   MICHAEL

11   --

12           THE COURT:   GOOD AFTERNOON.

13           MR. RUBIN:   GOOD AFTERNOON, YOUR HONOR.   MICHAEL

14   RUBIN FOR THE PLAINTIFFS.

15           THE COURT:   GOOD AFTERNOON, MR. RUBIN.

16           MR. PEPICH:   GOOD AFTERNOON, YOUR HONOR.   STEVEN

17   PEPICH FOR CINTAS.

18           THE COURT:   STEPHEN PEPICH, GOOD AFTERNOON.

19           MR. PEPICH:   GOOD AFTERNOON.

20           MS. GOLDSMITH:   EILEEN GOLDSMITH FOR CINTAS.

21           THE COURT:   EILEEN GOLDSMITH.   GOOD AFTERNOON, MS.

22   GOLDSMITH.

23           MR. DOSKER:   GOOD AFTERNOON, YOUR HONOR.   MARK

24   DOSKER FOR CINTAS.

25           MS. O'ROURKE:   OKAY.   GOOD AFTERNOON, YOUR HONOR.

4

```
 1   ANGELA O'ROURKE ALSO APPEARING FOR CINTAS.

 2              THE COURT:  OKAY.  GOOD AFTERNOON.

 3        OKAY.  I APPRECIATE YOUR BEING AVAILABLE THIS

 4   AFTERNOON.  I NEEDED A LITTLE MORE TIME TO KIND OF GO

 5   THROUGH AND SORT OUT SOME OF THE MATERIAL THAT YOU ALL HAVE

 6   SUBMITTED SINCE THERE IS QUITE A BIT.

 7              WHAT I THOUGHT I WOULD DO TODAY IS TO KIND OF GO

 8   THROUGH WITH YOU WHAT MY INCLINATIONS ARE WITH RESPECT TO

 9   SOME OF THESE ISSUES, AND -- AND WHAT MY RULINGS ARE WITH

10   RESPECT TO OTHERS.  AND THEN TELL YOU WHAT MY QUESTIONS ARE

11   WITH RESPECT TO OTHERS.  AND THAT WAY YOU ALL CAN FOCUS YOUR

12   ORAL ARGUMENT ON -- ON ANY OR ALL OF THAT.

13              UM, FIRST OF ALL, FOR THE RECORD, IF THIS MATTER

14   COMES BEFORE THE COURT ON -- ON DEFENDANT'S MOTION TO STAY

15   PROCEEDINGS PURSUANT TO TITLE NINE, UNITED STATES CODE,

16   SECTION THREE, AS TO CERTAIN OPT-IN PLAINTIFFS WHO ARE NOT

17   SUBJECT TO THE COURT'S APRIL 5, 2004 ORDER.

18              SECOND, PLAINTIFF'S MOTION CONCERNING COMPLIANCE

19   WITH COURT ORDERS REGARDING WHICH PLAINTIFFS MUST ARBITRATE

20   AND WHICH PLAINTIFFS MAY LITIGATE THEIR NON-ERISA OVERTIME

21   WAGE CLAIMS.

22              THIRD, DEFENDANT'S MOTION TO DISMISS AS TO CERTAIN

23   OPT-IN PLAINTIFFS FOR IMPROPER VENUE.  OR, IN THE

24   ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE OR, IN THE

25   ALTERNATIVE, TO TRANSFER IN THE INTERESTS OF JUSTICE AND
```

1  CONVENIENCE.

2      AND, FOURTH, PLAINTIFF'S MOTION FOR LEAVE TO FILE

3  A SECOND AMENDED COMPLAINT.

4      NOW, BASED UPON THE BRIEFING SUBMITTED BY THE

5  PARTIES, THE JOINT STATEMENT FILED IN SEPTEMBER, THE COURT

6  SUMMARIZES THE PERTINENT ISSUE AS FOLLOWS:

7      FIRST OF ALL, THE PARTIES, THE COURT'S

8  UNDERSTANDING IS, THE PARTIES HAVE REACHED AGREEMENT

9  REGARDING WHICH PLAINTIFFS MAY LITIGATE AND WHICH ARE

10  SUBJECT TO ENFORCEABLE ARBITRARY PROVISIONS; SPECIFICALLY,

11  (1), THE PARTIES HAVE AGREED THAT 444 PLAINTIFFS MAY

12  LITIGATE THEIR CLAIM BEFORE THIS COURT.  THAT'S IN THE JOINT

13  STATEMENT.

14      WELL, IF THERE'S A DISPUTE, WE CAN SPEAK TO THAT.

15  I WANT TO SUMMARIZE MY UNDERSTANDING SO YOU ALL CAN TELL ME

16  IF THAT'S CORRECT.

17      SECOND, PURSUANT TO THE COURT'S APRIL 5, 2004

18  ORDER, 55 PLAINTIFFS ARE COMPELLED TO ARBITRATE THEIR

19  CLAIMS.

20      THIRD, PURSUANT TO THE COURT'S JUNE 9, 2004 ORDER,

21  STIPULATION AND ORDER -- EXCUSE ME -- THE COURT'S JUNE 9,

22  2004 STIPULATION AND ORDER COMPELLING ARBITRATION OF OPT-IN

23  PLAINTIFFS FROM ALABAMA, FLORIDA, KENTUCKY AND NEVADA, THE

24  PARTIES AGREED, 11 PLAINTIFFS ARE COMPELLED TO ARBITRATE

25  THEIR CLAIMS.

6

1        NEXT, THE PARTIES AGREE THAT 1,700 PLAINTIFFS ARE

2  SUBJECT TO ENFORCEABLE ARBITRATION AGREEMENTS.

3        AND THOSE ARE THE ISSUES THAT THE PARTIES HAVE

4  REACHED AGREEMENT REGARDING SO FAR; IS THAT CORRECT?

5        MR. DOSKER:  YOUR HONOR, ON THE LAST ONE, THE

6  17200 -- THE 1700 --

7        THE COURT:  YES.

8        MR. DOSKER:  -- WHICH IS, I BELIEVE, YOUR HONOR'S

9  REFERRING TO EXHIBIT E TO THE JOINT STATEMENT.

10       THE COURT:  RIGHT.

11       MR. DOSKER:  I WANT TO JUST EMPHASIZE --

12       THE COURT:  JOINT STATEMENT IS ON PAGE TWO, 12 TO

13  15 AND EXHIBIT E.

14       MR. DOSKER:  YES, YOUR HONOR.  I JUST WANT TO

15  EMPHASIZE AS IS SET FORTH ON PAGE ONE OF THE JOINT

16  STATEMENT, THAT THAT LIST, WHILE THE PARTIES AGREE THAT THEY

17  HAVE ENFORCEABLE ARBITRATION AGREEMENTS UNDER SECTION TWO OF

18  THE FEDERAL ARBITRATION ACT, CINTAS VERY STRONGLY SUBMITS

19  THAT IT HAS MOVED ONLY TO STAY AS TO THEM, NOT AS TO COMPEL

20  UNDER SECTION FOUR; AND THAT, THEREFORE, THEY CAN ONLY BE

21  STAYED, NOT COMPELLED, BY THIS COURT.  THE PLAINTIFFS HAVE A

22  DIFFERENT VIEW AS SET FORTH IN THEIR BRIEF.

23       THE COURT:  RIGHT.  WELL, WHAT I'M READING IS

24  BASICALLY WHAT YOU HAVE IN HERE, IN YOUR JOINT STATEMENT

25  THAT YOU AGREE THAT 1700 PLAINTIFFS ARE SUBJECT "TO

7

1  ENFORCEABLE ARBITRATION AGREEMENTS".

2       I'LL GET INTO THE LEGAL ISSUES IN TERMS IF YOU

3  HAVE AN ISSUE. BUT IS THAT WHAT YOU HAVE IN YOUR JOINT

4  STATEMENT NOT CORRECT?

5       MR. DOSKER: NO, THAT IS CORRECT.

6       THE COURT: OKAY. WELL, THEN THAT'S ALL I KNOW IF

7  IT IS CORRECT.

8       MR. DOSKER: BUT IT IS MODIFIED BY WHAT IS IN THE

9  JOINT STATEMENT, PAGE ONE, LINES 11 TO 16. AND THAT HAS THE

10 FUNDAMENTAL QUESTION OF WHAT'S THE LEGAL OUTCOME?

11      THE COURT: WHAT IS THE PURPOSE OF WHAT YOU HAVE

12 AT PARAGRAPH -- AT PAGE TWO LINES 12 TO 15 IN EXHIBIT E?

13      MR. DOSKER: THE PURPOSE OF PAGE -- OF THAT --

14      THE COURT: PAGE TWO, LINES 12 TO 15.

15      MR. DOSKER: YES, YOUR HONOR. THAT IS TO CONVEY

16 TO YOUR HONOR THAT THE PARTIES AGREE THAT THERE ARE

17 ENFORCEABLE ARBITRATION AGREEMENTS SENT TO THOSE PEOPLE BUT

18 THE DISPUTE IS OVER.

19      THE COURT: RIGHT. AND THAT'S ALL I SAID. THAT'S

20 ALL I SAID. I DON'T WANT TO GET INTO A DISCUSSION OF

21 SEMANTICS. I'M JUST READING WHAT YOU ALL HAVE PROVIDED ME

22 IN YOUR JOINT STATEMENT AND SAYING THAT'S WHAT YOU ALL HAVE

23 AT LEAST REPRESENTED TO ME THAT YOU AGREE.

24      MR. DOSKER: YES, YOUR HONOR.

25      THE COURT: I'M NOT -- I'VE NOT IDENTIFIED ALL THE

8

1    ISSUES YET.  I HAVEN'T EVEN GOT INTO THE BEGINNING YET.  I

2    JUST GOT INTO THE WHAT I CONSIDER THE AGREEMENT BASED ON

3    WHAT YOU HAVE ALL HAVE TOLD ME IN YOUR -- IN THIS JOINT

4    STATEMENT.  AND SO, UM, AS I UNDERSTAND IT, THAT THAT --

5    THOSE ARE THE AGREEMENTS; IS THAT CORRECT?

6             MR. DOSKER:  YES.

7             THE COURT:  AS SET FORTH ARE THE PARTICULAR

8    AGREEMENTS UNDER WHAT YOU HAVE HERE AS YOU STATED ON PAGE

9    TWO --

10             MR. DOSKER:  CORRECT.

11             THE COURT:  -- LINES 12 TO 15.

12             MR. DOSKER:  YES.  SUBJECT TO WHAT WE HAVE SAID ON

13    PAGE ONE, LINES 11 TO 16, YES, YOUR HONOR.

14             THE COURT:  YOU DON'T HAVE THAT IN PARAGRAPH ON

15    PAGE TWO, LINES 12 TO 15.  I'M JUST READING WHAT YOU HAVE ON

16    PAGE TWO, LINES 12 TO 15, IN TERMS OF WHAT YOU'VE AGREED TO.

17    THAT'S WHAT I TOLD YOU ALL TO SUBMIT.  THAT'S WHAT YOU

18    SUBMITTED.  AND THAT'S WHAT YOU SAID.  AND THAT'S WHAT I'M

19    SAYING NOW.  OKAY.

20             ANYTHING ELSE THAT -- THAT YOU DIDN'T STATE

21    CORRECTLY?

22             MR. RUBIN:  YOUR HONOR, PLAINTIFF'S AGREE THAT

23    YOUR STATEMENT OF THE AGREEMENT IS ACCURATE AND CORRECT.

24             THE COURT:  OKAY.  THANK YOU.

25             NOW, THE PARTIES REMAIN IN DISPUTE TO SOME EXTENT

9

1    REGARDING WHICH PLAINTIFFS MAY LITIGATE AND WHICH ARE

2    SUBJECT TO ENFORCEABLE ARBITRATION PROVISIONS; SPECIFICALLY,

3    FIRST, PLAINTIFF'S ARGUE THE ARBITRATION AGREEMENTS ARE

4    UNENFORCEABLE UNDER ARIZONA, LOUISIANA AND PENNSYLVANIA LAW;

5    THUS PLAINTIFFS CONTEND PLAINTIFFS FROM THOSE STATES WHICH

6    ARE, I THINK 196 PLAINTIFFS, MUST LITIGATE THEIR CLAIMS.

7            NEXT, THE PARTIES DISPUTE THE APPLICABLE LAW

8    GOVERNING CLAUSE, AND THE EFFECT OF STATE LAW ON THE

9    ENFORCEABILITY OF THE ARBITRATION AGREEMENTS AS TO TWO

10   PLAINTIFFS.

11           THIRD, PLAINTIFFS ALLEGE PROCEDURAL

12   UNCONSCIONABILITY AS TO SIX PLAINTIFFS.

13           AND THEN NEXT, DEFENDANTS SEEK TO DISMISS OR

14   TRANSFER 36 PLAINTIFFS FOR IMPROPER VENUE.

15           IS THAT CORRECT SO FAR?

16       MR. DOSKER:  YES, YOUR HONOR.

17       MR. RUBIN:  FROM PLAINTIFF'S PERSPECTIVE, YOUR

18   HONOR, THAT IS CORRECT.  MY NOTES HAD 170 LOUISIANA, ARIZONA

19   AND PENNSYLVANIA PLAINTIFFS.  BUT YOU ARE PROBABLY RIGHT.

20       THE COURT:  I HAVE 196.  LET ME JUST SEE.  AND I'M

21   LOOKING AT PAGE TWO, YOUR JOINT STATEMENT, PAGE TWO, LINES

22   17 TO 28, AND EXHIBITS F, G AND H.

23       MR. RUBIN:  I'M SURE I ADDED THEM INCORRECTLY.

24   BUT THOSE -- THOSE ARE THE LISTS.  AND THEY'RE IDENTIFIED.

25   AND IF THAT'S WHAT THEY ADDED UP TO.

10

1         THE COURT:  OKAY.

2         MR. RUBIN:  IT'S WHATEVER THEY ADD UP TO.

3         THE COURT:  OKAY.  THANK YOU.  AND SO THE

4    COURT IS, UM, --

5         MR. RUBIN:  JUST DOUBLE CHECK.

6         THE COURT:  MR. DOSKER?

7         MR. DOSKER:  WE'LL DOUBLECHECK THE NUMBERS.

8         THE COURT:  OKAY.  GOOD.  THANK YOU.  BECAUSE

9    THAT'S ALL WE DID WAS JUST ADDED IT UP.  SO IF OUR ADDITION

10   IS INCORRECT, WE'LL CORRECT THE RECORD AFTER THE RECESS.

11        MR. RUBIN:  IT'S PROBABLY INCORRECT.

12        MR. DOSKER:  WE'LL AGREE IT'S WHATEVER THOSE

13   EXHIBITS ADD UP TO.

14        THE COURT:  AND SO FROM MY PERSPECTIVE, THE COURT

15   IS FACED WITH THE FOLLOWING SIX DISPUTED ISSUES BY THE

16   PARTIES:  THE FIRST ISSUE IS WHETHER THE 1700 PLAINTIFFS

17   LISTED IN EXHIBIT E OF THE JOINT STATEMENT, WHICH THE

18   PARTIES AGREE ARE SUBJECT TO ENFORCEABLE ARBITRATION

19   AGREEMENTS, MUST BE COMPELLED TO ARBITRATE OR WHERE THEIR

20   CLAIMS MAY BE STAYED BY THIS COURT.

21        THE SECOND ISSUE IS WHETHER THE ARBITRATION

22   AGREEMENTS ARE ENFORCEABLE UNDER THE LAWS OF LOUISIANA,

23   ARIZONA AND PENNSYLVANIA.

24        THE THIRD ISSUE IS WHETHER THERE WAS PROCEDURAL

25   UNCONSCIONABILITY AS TO SIX PLAINTIFFS.

11

1      THE FOURTH ISSUE, WHETHER THE DEFENDANTS MAY

2  EITHER DISMISS OR TRANSFER THE CLAIMS OF 36 PLAINTIFFS.

3      THE FIFTH ISSUE IS WHETHER PLAINTIFFS MAY BE

4  GRANTED LEAVE TO AMEND THEIR FIRST AMENDED COMPLAINT.

5      AND THEN THE SIXTH ISSUE IS WHAT THE APPLICABLE

6  LAW GOVERNING CLAUSE IS REGARDING THE TWO PLAINTIFFS LISTED

7  IN EXHIBIT ONE OF THE JOINT STATEMENT.

8      WITH RESPECT TO THE SIXTH ISSUE, I WILL SAY THERE

9  IS NO BRIEFING BEFORE THE COURT ON THIS ISSUE.  THE ONLY

10  EVIDENCE SUBMITTED TO THE COURT ON THE ISSUE ARE THE

11  DECLARATIONS OF MANAGER OF ACCOUNTING SERVICES FOR CINTAS

12  CORPORATION, STEVEN CHRISTENSON.

13      FROM PAYROLL RECORDS MAINTAINED BY CINTAS IN THE

14  REGULAR AND ORDINARY CASE OF ITS BUSINESS, MR. CHRISTENSON

15  HAS DETERMINED THE STATE WHERE EACH EMPLOYEE WAS WORKING

16  WHEN HE OR SHE RECEIVED HIS OR HER LAST PAYCHECK FROM

17  CINTAS.  AND THAT STAGE IS GEORGIA FOR BOTH PLAINTIFFS IN

18  EXHIBIT ONE.

19      SO IT'S NOT CLEAR ON WHAT BASIS PLAINTIFFS ARE

20  DISPUTING THE DETERMINATION THAT GEORGIA IS THE APPLICABLE

21  STATE, BUT YOU MAY ADDRESS THIS IN YOUR ORAL ARGUMENT IF YOU

22  CHOOSE TO.  IF NOT, UM, I WILL STATE THAT IT'S MY

23  INCLINATION WITH REGARD TO THAT ISSUE TO FIND, BASED UPON

24  WHAT I HAVE, THAT GEORGIA WILL BE THE STATE FOR THOSE

25  PERSONS IN THE ABSENCE OF YOUR ADDRESSING THE ISSUE.

12

1      MR. RUBIN:  THANK YOU, YOUR HONOR.

2      THE COURT:  NOW, I WILL STATE NOW, AND SO WITH

3  RESPECT TO THE ISSUES THAT I HAVE IDENTIFIED, THOSE ARE ALL

4  THE ISSUES THAT ARE BEFORE ME AT THIS POINT; IS THAT

5  CORRECT?

6      MR. RUBIN:  THAT IS CORRECT, YOUR HONOR.

7      MR. DOSKER:  I BELIEVE SO, YOUR HONOR, YES.

8      THE COURT:  SO I WILL NOW GO THROUGH AND STATE MY

9  INCLINATION WITH REGARD TO ISSUES NUMBER ONE THROUGH FIVE

10  SINCE I'VE ALREADY GIVEN YOU MY INCLINATION WITH RESPECT TO

11  NUMBER SIX.  AND IN THE CONTEXT OF THE MOTION, FOR THE FOUR

12  MOTIONS THAT ARE PENDING BEFORE THIS COURT, AND I WILL

13  INDICATE SPECIFIC QUESTIONS AS I INDICATE THEM AS I GO ALONG

14  IF I HAVE SPECIFIC QUESTIONS, WHICH QUESTIONS THAT YOU MAY

15  WANT TO INCORPORATE INTO YOUR DISCUSSION.

16      WITH RESPECT TO THE MOTION TO STAY, I AM INCLINED

17  TO GRANT THE DEFENDANT'S MOTION TO STAY.  THE COURT HAS NO

18  QUESTIONS REGARDING THIS MOTION AS THE PARTIES HAVE AGREED

19  THAT 1700 PLAINTIFFS ARE "SUBJECT TO ENFORCEABLE ARBITRATION

20  AGREEMENTS".  AND SINCE SECTION THREE OF THE FEDERAL

21  ARBITRATION ACT REQUIRES THIS COURT TO STATE FURTHER

22  PROCEEDINGS ONCE IT IS SATISFIED THAT PLAINTIFF'S CLAIMS ARE

23  REFERRABLE TO ARBITRATION, THE COURT IS INCLINED TO STATE

24  THE CLAIMS OF THOSE 1700 PLAINTIFFS.

25      SECTION THREE OF THE FAA STATES, "IN ANY SUIT OR

13

1   PROCEEDING BROUGHT -- IN ANY OF THE COURTS OF THE UNITED

2   STATES UPON ANY ISSUE".  I'M SORRY.  THERE IS A

3   TYPOGRAPHICAL ERROR HERE.  OKAY.

4           OKAY.  "IF ANY SUIT OR PROCEEDING BE BROUGHT IN

5   ANY OF THE COURTS OF THE UNITED STATES UPON ANY ISSUE

6   REPARABLE TO ARBITRATION UNDER AN AGREEMENT IN WRITING, FOR

7   SUCH ARBITRATION, THE COURT IN WHICH SUCH SUIT IS PENDING

8   UPON BEING SATISFIED THAT THE ISSUE INVOLVED IN SUCH SUIT OR

9   PROCEEDING IS REFERRABLE TO ARBITRATION UNDER SUCH AN

10  AGREEMENT, SHALL, ON APPLICATION BY ONE OF THE PARTIES, STAY

11  THE TRIAL OF THE ACTION UNTIL SUCH ARBITRATION HAS BEEN HAD

12  IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT, PROVIDING THE

13  APPLICANT FOR THE STAY IS NOT IN DEFAULT IN PROCEEDING WITH

14  SUCH ARBITRATION.  THERE IS NO ISSUE WITH RESPECT TO

15  DEFAULT".

16          SO THEREFORE THE APPROPRIATE INQUIRY FOR MOTION TO

17  STAY UNDER THE FAA IS WHETHER THE COURT IS SATISFIED THAT

18  THE ISSUE INVOLVED IN SUCH SUIT OR PROCEEDING IS REFERABLE

19  TO ARBITRATION UNDER AN ARBITRATION AGREEMENT.

20          AND, UM, WITHOUT GOING INTO ALL OF THE PROVISIONS,

21  THE COURT IS EMPOWERED TO SEVER THE PROVISIONS FOUND TO BE

22  UNCONSCIONABLE FROM AN EMPLOYMENT AGREEMENT AND ENFORCED

23  REMAINDER.

24          AND THE DEFENDANTS IN THIS CASE CONCEDE THAT SINCE

25  THE COURT HAS PREVIOUSLY FOUND UNCONSCIONABLE, THE COURT

1   RULES THE PAINES PROVISION THAT THEY WILL CONSENT TO AN

2   ORDER BY THIS COURT SEVERING THAT PROVISION FROM THE

3   EMPLOYMENT AGREEMENT; AND SECOND, SINCE THE COURT HAS ALSO

4   FOUND UNCONSCIONABLE THE TIME LIMITATION WITHIN WHICH AN

5   EMPLOYEE MUST BRING A CLAIM AS WELL AS THE PROVISIONS NOT

6   GUARANTEEING ATTORNEYS' FEES AND COSTS AS GOVERNED BY THE

7   LAWS OF CALIFORNIA, COLORADO, CONNECTICUT, MARYLAND,

8   MICHIGAN, NEW JERSEY, NEW YORK AND NORTH CAROLINA.

9           THE DEFENDANTS HAVE ALSO INDICATED THEY'RE WILLING

10  TO CONSENT TO ALSO SEVERING THOSE PROVISIONS AS WELL.

11          THIRD, THROUGH THE MEET AND CONFER PROCESS, THE

12  PARTIES HAVE AGREED THAT DEFENDANTS WILL NOT SEEK TO STAY

13  THE PROCEEDINGS AS TO OPT-IN PLAINTIFFS FROM TENNESSEE OR

14  WEST VIRGINIA.

15          NOW, WITHOUT CITATION TO ANY AUTHORITY, PLAINTIFFS

16  ARE ARGUING THAT ANY PLAINTIFF WHOSE CLAIMS ARE ARGUABLE

17  UNDER THIS COURT'S OPPORTUNITY ANALYSIS MUST BE COMPELLED TO

18  ARBITRATE AND ONLY THEN MAY THOSE PLAINTIFFS CLAIMS IN COURT

19  BE STATED UNDER SECTION THREE OF THE FAA.

20          BY THIS ARGUMENT, MY POSITION IS THE PLAINTIFFS

21  SEEM TO BE CONTEMPLATING THE OPPORTUNITY TO MAKE A

22  DETERMINATION THAT THE COURT'S AUTHORITY TO COMPEL

23  ARBITRATION PURSUANT TO SECTION FOUR OF THE FAA.

24          THE SUPREME COURT HAS HELD THAT "THE POWER TO

25  GRANT A STAY IS ENOUGH WITHOUT THE POWER TO ORDER THAT THE

15

1   ARBITRATION PROCEED FOR IF A STAY BE GRANTED, THE DEFENDANT

2   CAN NEVER GET RELIEF UNLESS HE PROCEEDS TO ARBITRATION".

3   AND THAT'S THE ANACONDA CASE AT 322 US 42.

4          ADDITIONALLY, THIS COURT HAS PREVIOUSLY STATED,

5   "NOTHING IN THE TEXT OF SECTION THREE SUGGESTS THAT THE

6   COURT CAN COMPEL ARBITRATION UNDER THAT SECTION".  AND

7   THAT'S IN MY ORDER, APRIL 5, 2004 ORDER, PAGE 13.

8          PERSUASIVE AUTHORITY ON THIS MATTER CAN BE FOUND

9   FROM THOSE COURTS THAT GRANTED A DEFENDANT'S MOTION TO STAY

10  WITHOUT ALSO COMPELLING ARBITRATION.  THE SIMS V. MARCEL

11  CHRYSLER CASE IS DIRECTLY ON POINT WITH THE CIRCUMSTANCES

12  PRESENTED IN THIS CASE.  AND I FOUND THAT CASE VERY

13  PERSUASIVE.

14         IN GRANTING DEFENDANT'S MOTION TO STAY, THE

15  DISTRICT COURT HELD "THE COURT RESPECTFULLY REJECTS THE

16  PLAINTIFF'S SUGGESTION THAT, IN THIS CASE, SEVENTH CIRCUIT

17  PRECEDENT, MANDATES THAT A STATE PENDING ARBITRATION NEVER

18  CAN BE GRANTED UNLESS AND UNTIL THE DEFENDANT MOVES TO

19  COMPEL UNDER SECTION FOUR OR OTHERWISE COMMENCES ARBITRATION

20  PROCEEDINGS AGAINST ITSELF.  NOTHING IN THE TEXT OF SECTION

21  THREE DIRECTS THAT RESULT.  AND PLAINTIFF HAS CITED NO

22  LEGISLATIVE HISTORY IN SUPPORT OF THAT INTERPRETATION.

23         LIKEWISE, SEVENTH CIRCUIT PRECEDENT DIRECTS THAT

24  THE FILING OF A MOTION TO STAY IS A PROPER METHOD FOR THE

25  INITIAL ASSERTION OF ARBITRATION RIGHTS.  SEVENTH CIRCUIT

1    TEACHING EXPRESSLY ACKNOWLEDGES THAT A LITIGANT SUCH AS

2    DEFENDANT IS OFTEN CONTENT WITH A STAY ALONE PURSUANT TO

3    SECTION THREE BECAUSE THE CASE AGAINST A DEFENDANT WILL THEN

4    BE STYMIED UNLESS THE PLAINTIFF PUSHES THE LITIGATION

5    FORWARD IN ARBITRATION.

6              AND AT LEAST FROM THE COURT'S RESEARCH ON THE

7    ISSUE, THE PARTIES BREACH ARE RATHER ABBREVIATED.  IT

8    APPEARS THAT EVERY COURT THAT HAS PASSED ON THE ISSUE HAS

9    FOUND THAT A DEFENDANT NEED NOT PUSH LITIGATION FORWARD

10   AGAINST ITSELF BY ACTUALLY COMMENCING ARBITRATION TO WARRANT

11   AN OTHERWISE LEGITIMATE STAY UNDER SECTION THREE OF THE FAA.

12             AND THAT'S THE -- FOUND AT PAGE 317, FED SUP 2ND

13   838, SPECIFICALLY AT PAGE 843.

14             AND THERE ARE A NUMBER OF OTHER CASES THAT I ALSO

15   FOUND PERSUASIVE.  BUT MORE IMPORTANTLY, PLAINTIFFS DO NOT

16   POINT TO ANY AUTHORITY THAT MANDATES A SIMULTANEOUS ORDER

17   COMPELLING ARBITRATION IN THE CONTEXT OF A MOTION TO STAY.

18   AND SO LONG AS THE EMPLOYMENT AGREEMENTS OF THE OPT-IN

19   PLAINTIFFS ARE ENFORCEABLE PURSUANT TO LOCAL STATE LAWS, THE

20   COURT IS INCLINED TO GRANT DEFENDANT'S MOTION TO STAY.

21             THAT'S MY INCLINATION WITH RESPECT TO THE MOTION

22   TO STAY.

23             WITH RESPECT TO THE MOTION CONCERNING COMPLIANCE,

24   THE COURT HAS THREE GLOBAL QUESTIONS IT WISHES THE PARTIES

25   TO ADDRESS IN THEIR ORAL ARGUMENTS CONCERNING PLAINTIFF'S

1       THE COURT:  SO A FACILITATIVE NOTICE HAS SAID THAT

2  IF THESE PEOPLE ARE ALL GOING TO BE COMPELLED TO ARBITRATION

3  SO WHY -- HOW WOULD I RELY ON IT WHEN I ISSUE A FACILITATIVE

4  NOTICE THAT DIDN'T SAY THAT?

5       MR. RUBIN:  BECAUSE THE PARAGRAPH SIX THAT I

6  QUOTED THAT DISCUSSED THE PROCEDURE WHERE THE ARBITRATORS'

7  DECISIONS ON CLASS CERTIFICATION WILL COME BACK TO YOU.

8       THE COURT:  ALL RIGHT.

9       MR. RUBIN:  OCCUR WHEN, AS THE PARTIES UNDERSTOOD

10  AT THE TIME, THE ARBITRATOR IS ONE WHO GOT THE CASES

11  PURSUANT TO AN ORDER COMPELLING ARBITRATION.  OTHERWISE, IF

12  SOME OTHER COURT COMPELLED ARBITRATION, AN ARBITRABLE

13  DECISION WOULD GO TO THAT COURT.  IF PLAINTIFFS FILED

14  ELSEWHERE, IT'S NOT CLEAR WHICH COURT IT WOULD GO TO.

15       WE WILL FILE THE ARBITRATION CLAIMS BEFORE JUSTICE

16  MYERSON.  AND WE WILL TRY TO HAVE THEM CONSOLIDATED AND

17  HEARD TOGETHER.  WE'RE TRYING TO AVOID UNNECESSARY

18  LITIGATION OVER ARBITRATION VENUE.

19       BUT YOUR STATEMENT, YOUR APPROVAL OF THE STATEMENT

20  THAT YOU WILL DECIDE CLASS CERTIFICATION ON REVIEW OF THE

21  ARBITRATOR'S DECISION NECESSARILY REFLECTED YOUR

22  UNDERSTANDING THAT YOU WOULD BE COMPELLING THE PLAINTIFFS'

23  NON-ERISA CLAIMS TO THE ARBITRATION THAT IS COMING BACK TO

24  YOU.  OTHERWISE, IT WOULD BE COMING BACK --

25       THE COURT:  THE ONES THAT I COMPEL ARBITRATION OF.

1  NOW, HAVING MOVED FOR RECONSIDERATION AND CHANGED THE GROUND

2  RULES, PLAINTIFF IS TRYING TO CONCOCT AN ARGUMENT BASED ON A

3  CMC, AN ILLUSION OF A CMC STATEMENT THAT SOMEHOW CINTAS GAVE

4  UP A CLEAR STATUTORY RIGHT TO MAKE THE MOTION THAT IT HAS

5  MADE AND WHICH IS PENDING BEFORE YOU NOW.  SO FOR THAT

6  ADDITIONAL REASON, YOUR HONOR, YOUR HONOR'S ADDITIONAL YOUR

7  HONOR'S ORIGINAL ASSESSMENT WHEN YOU TOOK THE BENCH THIS

8  AFTERNOON IS CORRECT.

9          THE COURT:  MR. RUBIN, IS THERE ANY AUTHORITY THAT

10  YOU CAN CITE TO WHERE A COURT CAN COMPEL ARBITRATION WITHOUT

11  A MOTION TO COMPEL UNDER SECTION FOUR?  IF SO, I'M GOING TO

12  GIVE YOU THE OPPORTUNITY TO PROVIDE IT TO ME AND LET MR. --

13  UM, COUNSEL.

14          MR. DOSKER:  DOSKER.  THANK YOU.

15          THE COURT:  I'M SORRY -- RESPOND TO IT BECAUSE IT

16  JUST SEEMS TO ME THAT YOU'RE ASKING FOR A NOVEL APPLICATION

17  OF SECTION THREE.  AND I, AND I HONESTLY AND IT COULD BE

18  THAT IT'S THE LATENESS OF THE HOUR.  WE'VE BEEN IN COURT ALL

19  DAY.  BUT I -- I'M JUST NOT -- I UNDERSTAND WHAT YOU'RE

20  ARGUING BUT WHAT YOU'RE POINTING ME TO, I'M NOT PERSUADED

21  SAYS THAT.

22          MR. RUBIN:  YOUR HONOR --

23          THE COURT:  I DON'T.  I, UM, AND I GUESS MAYBE THE

24  HEART OF THIS ALL THIS FOR ME, TOO, THAT'S MOST TROUBLING IS

25  THAT YOU ALL ARE THE ONES THAT SUBMITTED THE STIPULATION.

1    OUR HEARING.

2            MR. RUBIN:  THANK YOU, YOUR HONOR.

3            AND THANK YOU ALSO TO THE COURT REPORTER FOR

4    STICKING AROUND AND TO YOUR CLERK.  I KNOW IT'S LATE.  I

5    APPRECIATE IT.

6            THE COURT:  IT IS LATE.  OKAY.  YOU ALL HAVE A

7    NICE EVENING.

8            MR. DOSKER:  THANK YOU, YOUR HONOR.

9            MR. RUBIN:  THANK YOU, YOUR HONOR.

10           MR. DOSKER:  YOU, TOO.

11       (WHEREUPON, AT 5:45 P.M. THE PROCEEDINGS CONCLUDED.)

12             COURT REPORTER'S CERTIFICATE

13       I, STARR A. WILSON, CSR NO. 2462, UNITED STATES

14   DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, DO HEREBY

15   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

16   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

17       I CERTIFY THAT THE TRANSCRIPT FEES AND FORMAT

18   COMPLY WITH THOSE PRESCRIBED BY THE COURT AND JUDICIAL

19   CONFERENCE OF THE UNITED STATES.

20

21

22           STARR A. WILSON, CSR NO. 2462

23

24

25

# **Exhibit 4**

PAGES 1 - 87

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

PAUL VELIZ, ET AL.,      )
                         )
         PLAINTIFFS,     )
                         )
    VS.                  )    NO. C 03-01180 SBA
                         )
CINTAS CORPORATION, ET AL., )   THURSDAY, OCTOBER 27, 2005
                         )
                         )    OAKLAND, CALIFORNIA
         DEFENDANTS.     )
                         )

COPY

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          ALTSHULER, BERZON, NUSSBUAM
                         RUBIN & DEMAIN
                         177 POST STREET - SUITE 300
                         SAN FRANCISCO, CALIFORNIA  94108
                  BY:    MICHAEL RUBIN, ESQUIRE
                         EILEEN B. GOLDSMITH, ESQUIRE

                         LERACH COUGHLIN STOIA GELLER
                         RUDMAN & ROBBINS
                         401 B STREET, SUITE 1700
                         SAN DIEGO, CALIFORNIA 92101
                  BY:    STEVEN W. PEPICH, ESQUIRE


FOR DEFENDANTS:          SQUIRE, SANDERS & DEMPSEY
                         ONE MARITIME PLAZA, THIRD FLOOR
                         SAN FRANCISCO, CALIFORNIA  94111
                  BY:    MARK C. DOSKER, ESQUIRE
                         ANGELA N. O'ROURKE, ESQUIRE
                         Y. ANNA SUH, ESQUIRE


REPORTED BY:             DIANE E. SKILLMAN, CSR #4909, RPR, FCRR
                         OFFICIAL COURT REPORTER

2

        THE CLERK:  CALLING CIVIL 03-1180 VELIZ VERSUS CINTAS CORPORATION.

        THE COURT:  GOOD MORNING -- GOOD AFTERNOON, I SHOULD SAY.

        MR. RUBIN:  MICHAEL RUBIN OF ALTSHULER BERZON FOR PLAINTIFFS.

        THE COURT:  GOOD AFTERNOON.

        MR. RUBIN:  WITH ME IS EILEEN GOLDSMITH OF ALTSHULER BERZON AND OUR COLLEAGUE STEVEN PEPICH FROM THE LERACH LAW FIRM.

        THE COURT:  GOOD AFTERNOON.

        MR. DOSKER:  GOOD AFTERNOON, YOUR HONOR, MARK DOSKER FROM SQUIRE, SANDERS & DEMPSEY ON BEHALF OF CINTAS.  WITH ME ARE MY COLLEAGUES ANGELA O'ROURKE --

        THE COURT:  ANGELA O'ROURKE, OKAY.

        MR. DOSKER:  -- AND ANNA SUH.

        THE COURT:  ANNA WHAT?

        MR. DOSKER:  SUH, S-U-H.

        THE COURT:  S-U-H.  OKAY, GOOD AFTERNOON.

        OKAY.  WE'RE IN CONTINUATION OF THE HEARING THAT WE STARTED ON OCTOBER 18TH FOR ORAL ARGUMENTS ON THE MOTIONS, DEFENDANTS' MOTION TO STAY PROCEEDINGS, PLAINTIFFS' MOTION TO STAY IN COMPLIANCE WITH COURT ORDERS, DEFENDANTS' MOTION TO

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

3

1   DISMISS AS TO CERTAIN OPERATIVE PLAINTIFFS AND PLAINTIFFS'

2   MOTION TO FILE SECOND AMENDED COMPLAINT.

3         AT THE TIME THAT WE HAD THE LAST HEARING, WHICH

4   LASTED ABOUT TWO TO THREE HOURS, I GUESS, I HAD GIVEN YOU ALL

5   MY INCLINATIONS WITH RESPECT TO EACH OF THE MOTIONS, AND

6   ALTHOUGH THE ORAL ARGUMENT WAS FOCUSED EXCLUSIVELY ON THE

7   ISSUES RAISED BY DEFENDANTS' MOTION TO STAY, I HAD GIVEN YOU

8   SOME QUESTIONS WITH RESPECT TO THE OTHER MOTIONS THAT I WAS

9   INTERESTED IN HAVING YOU ADDRESS.

10         GIVEN THE TIME FRAME THAT WE SPENT DISCUSSING THE

11   MOTION TO STAY AND THE LATENESS OF THE HOUR, WE DECIDED THAT

12   COUNSEL FOR PLAINTIFFS' REQUEST TO CONTINUE THE HEARING TO

13   ALLOW YOU ALL TO SUBMIT SUPPLEMENTAL BRIEFING WITH RESPECT TO

14   THE ISSUE THAT YOU WERE ARGUING AND CONTINUE IT TILL TODAY, AND

15   I GRANTED THAT REQUEST.

16         I HAVE RECEIVED THE SUPPLEMENTAL BRIEFING THAT BOTH

17   OF YOU HAVE SUBMITTED, AND GIVEN THAT THE MOTION TO STAY IS BUT

18   ONE OF THE MOTIONS I HAVE TO RESOLVE TODAY, I AM ACTUALLY JUST

19   GOING TO RULE ON IT BASED ON WHAT YOU HAVE SUBMITTED.  I DON'T

20   REALLY HAVE A NEED FOR FURTHER ARGUMENT ON IT.  AND I WOULD

21   LIKE FOR YOU ALL -- I THINK YOU INDICATED YOU NEEDED A HALF AN

22   HOUR AND TAKE THE TIME THAT YOU HAVE TO FOCUS ON THE OTHER

23.  ISSUES AS WELL.

24         NOW, WITH RESPECT TO THE DEFENDANTS' MOTION TO STAY,

25   THERE APPEARS TO BE NO DISAGREEMENT AS TO WHETHER THE COURT

4

1    SHOULD GRANT THE MOTION TO STAY.  SO THAT MOTION IS OBVIOUSLY

2    GOING TO BE GRANTED.

3         THE ONLY ISSUE IS WHETHER THE COURT MUST ALSO COMPEL

4    ARBITRATION.  AND I HAVE GONE THROUGH WHAT BOTH OF YOU HAVE

5    SUBMITTED, AND IT'S SOMEWHAT TROUBLING TO ME THAT PLAINTIFFS

6    CITE TO NO CASE WHERE THE COURT HAS COMPELLED ARBITRATION OF

7    PLAINTIFFS' CLAIMS IN THE ABSENCE OF A MOTION TO COMPEL.

8    PLAINTIFFS CITE TO NO CASE WHERE A COURT HAS FOUND THE

9    DEFENDANT HAS WAIVED HIS RIGHTS TO SEEK AND STATE PURSUANT TO

10   SECTION 3.  AND PLAINTIFFS ALSO CITE TO NO CASE WHERE A COURT

11   FOUND AN ADOPTION OF JUDICIAL ESTOPPEL PREVENTING A DEFENDANT

12   FROM ELECTING TO SEEK A STAY PURSUANT SECTION 3, WHILE AT THE

13   SAME TIME ELECTING NOT TO SEEK A MOTION TO COMPEL UNDER

14   SECTION 4.

15        THE EXCERPTS THAT WERE -- FIRST OF ALL, I WILL SAY

16   THAT I WAS ALSO TROUBLED BY THE -- I GAVE FIVE -- GAVE YOU ALL

17   LEAVE TO FILE A SELF-CONTAINING SUPPLEMENTAL IN FIVE PAGES, AND

18   I WAS NOT UNDER THE IMPRESSION AT ALL IN READING THESE PAPERS

19   THAT YOU ALL HAD INDEED RESTRICTED YOURSELVES TO THE FIVE

20   PAGES, BUT BY INCORPORATING BY REFERENCE AND THEN ARGUING ABOUT

21   DOCUMENTS THAT WERE NOT PART OF THE FIVE PAGES, AND I

22   INTERPRETED THAT AS BEING A DIRECT ATTEMPT TO CIRCUMVENT THE

23   COURT'S GRANTING YOU FIVE PAGES.  AND I FOUND THAT TROUBLING.

24        IN ANY EVENT, READ IN CONTEXT, THE EXCERPTS THAT

25   WERE PROVIDED TO THE COURT DO NOT DEMONSTRATE DEFENDANTS AGREED

5

1    TO PROSPECTIVELY COMPEL FUTURE PLAINTIFFS TO ARBITRATION.  MUCH

2    OF THE QUOTED TEXT PERTAINS TO 36 ADDITIONAL SSR'S FROM STATES

3    WHICH QUOTE "BECAUSE OF TIMING OF WHEN THEIR CONSENTS TO SUE

4    WERE FILED" WERE NOT ADDRESSED IN THE MOTION TO COMPEL

5    ARBITRATION.  BECAUSE THOSE STATES WERE NOT ADDRESSED IN THE

6    COURT'S APRIL 5TH ORDER, THE PARTIES AGREED TO MEET AND CONFER

7    AS TO WHETHER THE COURT WOULD OR WOULD NOT ENFORCE THE

8    ARBITRATION AGREEMENT IN THOSE STATES.

9         THAT IS NOT A STATEMENT AS TO FUTURE TREATMENT OF

10    PLAINTIFFS THAT HAVE NOT YET OPTED IN, BUT A WAY IN WHICH THE

11    PARTIES CAN AGREE AS TO WHICH PLAINTIFFS MUST PROCEED IN

12    ARBITRATION OR IN COURT, WITHOUT THIS COURT'S RULING ON THE

13    MOTION.

14         THE CITING OF THE LANGUAGE IN THE APRIL 23RD ORDER

15    IN TERMS OF THE MOTION TO COMPEL ALSO IS NOT AS PLAINTIFFS

16    APPARENTLY HAVE INTERPRETED IT.  THE LANGUAGE BASICALLY IS THAT

17    THE PARTIES WOULD BE, ONCE THEY RECEIVED THE NOTICE, THE THRUST

18    OF THE ORDER WAS TO INSTRUCT THE PARTIES AS TO THE FORM AND

19    PROCEDURE OF MAILING THE FACILITATED NOTICE, AND THAT THEY

20    WOULD BE COMPELLED IN THE SENSE OF THE INDIVIDUALS BEING

21    LEGALLY REQUIRED TO ARBITRATE IN ACCORDANCE WITH THE TERMS OF

22    WHATEVER AGREEMENTS THEY HAD AT THE TIME THAT GOVERN.

23         AND, FINALLY, THE JUNE 9TH, 2004 ORDER COMPELLING

24    ARBITRATION OF OPT-IN PLAINTIFFS FROM ALABAMA, FLORIDA,

25    KENTUCKY, NEVADA AND OHIO BASICALLY WAS PART OF AN AGREEMENT

6

1   THAT YOU ALL -- YOU CAME UP WITH.  AND THERE IS NOTHING IN THE

2   WORDING OF THAT ORDER THAT SUGGESTS THAT IT APPLIES TO ANY

3   PLAINTIFF OTHER THAN THOSE WHO SUBMITTED CONSENT-TO-SUE FORMS

4   AS OF THAT DATE AND ARE FROM THOSE STATES OF ALABAMA, FLORIDA,

5   KENTUCKY, NEVADA AND OHIO.

6           THE STIPULATION AND ORDER IS SPECIFICALLY TIED TO

7   BRING OF THE MOTION TO COMPEL.  THE STIPULATION STATES QUOTE,

8   "IF CINTAS FILED A MOTION TO COMPEL ARBITRATION OF THE CLAIMS

9   OF CINTAS EMPLOYEES FROM", AND GIVES THE STATES AND GOES ON.

10  AND THEN THE COURT HELD THAT IT WAS COMPELLING ARBITRATION

11  SUBJECT TO QUOTE "ALL RIGHTS OF JUDICIAL REVIEW, APPEAL AND

12  CHALLENGE THAT THE PARTIES WOULD HAVE IF THEY HAD FULLY

13  LITIGATED SAID MOTION TO COMPEL ARBITRATION OF CLAIMS FILED BY

14  CINTAS EMPLOYEES."

15          I SEE THAT AS BEING A SIGNIFICANT DISTINCTION.  IN

16  GENERAL, MY READING OF PLAINTIFFS' PAPERS IS THAT PLAINTIFFS

17  ARE BASICALLY IGNORING THE RATIONALE BEHIND SECTION 4.  WHERE A

18  PLAINTIFF WHO IS OTHERWISE SUBJECT TO AN ENFORCEABLE

19  ARBITRATION AGREEMENT INSTEAD FILES A COMPLAINT AGAINST A

20  DEFENDANT IN COURT, SECTION 4 EMPOWERS THE DEFENDANT TO BRING A

21  MOTION TO COMPEL ARBITRATION OF THAT PLAINTIFF'S CLAIM.

22          THERE IS NO SUCH DISPUTE HERE.  THE PARTIES AGREE

23  THAT 1700 PLAINTIFFS ARE SUBJECT TO ENFORCEABLE ARBITRATION

24  AGREEMENTS.  IF THOSE 1700 PLAINTIFFS WISH TO PURSUE THEIR

25  CLAIMS AGAINST DEFENDANT, THEY MUST, THEREFORE, PROCEED IN

7

1    ARBITRATION.  AS A PRACTICAL MATTER, WHY SHOULD THIS COURT

2    COMPEL ARBITRATION OF PLAINTIFFS WHEN THEY KNOW AND THEY AGREE

3    THEY ARE SUBJECT TO ARBITRATION.  I DON'T UNDERSTAND WHY IT'S

4    EVEN NECESSARY WHEN THERE IS NO DISPUTE IN THAT RESPECT.

5            BUT, ANYWAY, THERE IS A TOTAL ABSENCE OF AUTHORITY

6    SUPPORTING PLAINTIFFS' POSITION, AND THE FACTS ARE NOT EVEN

7    SUPPORTING IT.  THE DEFENDANTS' MOTION TO STAY IS GRANTED.  AND

8    TO THE EXTENT THAT PLAINTIFFS HAVE A MOTION TO COMPEL OR TO

9    HAVE THE COURT FIND THAT IT MUST ALSO SIMULTANEOUSLY GRANT A

10   MOTION TO COMPEL WITH A MOTION TO STAY, THAT IS DENIED.

11           NOW, THE MOTION CONCERNING COMPLIANCE, I HAD A

12   COUPLE OF QUESTIONS.  THE FIRST QUESTION I HAD WAS WHETHER

13   THERE WAS ANY DISPUTE THAT THE IRREPARABLE HARM CLAUSE APPEARS

14   IN ALL YOUR AGREEMENTS WITH PLAINTIFFS.

15           MR. DOSKER:  YOUR HONOR, WE DOUBLE-CHECKED THAT, AND

16   WE BELIEVE THAT IT DOES APPEAR IN THEM ALL.

17           THE COURT:  IT DOES.  OKAY.

18           MR. DOSKER:  WE OBSERVE, YOUR HONOR, TO ANSWER THE

19   RELATED QUESTION YOUR HONOR HAD, WE THINK THAT, YES, YOUR HONOR

20   WAS RIGHT THAT THE BUSINESS PURPOSE FOR THE CLAUSE APPEARS IN

21   THE FACE OF IT, AND THAT IS THAT THE COURTS, OF COURSE, ARE

22   ALWAYS OPEN.  AN ARBITRATOR DOESN'T GET SELECTED FOR A MONTH OR

23   MAYBE TWO OR THREE INTO A CASE --

24           THE COURT:  RIGHT.

25           MR. DOSKER:  -- SO IF A PARTY NEEDS A TRO, TEMPORARY

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

25

1    YOUR HONOR.

2              THE COURT:  OKAY.

3              I ALSO WONDER, EVEN THOUGH I HAVE ALREADY DENIED THE

4    MOTION TO COMPEL, WHY DO YOU ALL FEEL IT NECESSARY TO FILE FOR

5    A MOTION TO COMPEL ARBITRATION OF 1700 PEOPLE THAT YOU ALL

6    AGREE MUST ARBITRATE?  WHY IS ALL THIS ACTIVITY NECESSARY?

7              MR. RUBIN:  WHY IS IT IMPORTANT?

8              THE COURT:  TO HAVE A MOTION TO COMPEL PEOPLE WHO

9    HAVE KNOWLEDGE THAT THEY HAVE TO ARBITRATE.

10             MR. RUBIN:  BECAUSE IF YOUR HONOR COMPELS

11   ARBITRATION --

12             THE COURT:  I MEAN, OTHER THAN YOUR STRATEGIC

13   WANTING TO HAVE IT IN ONE PLACE; IS THAT IT?  YOU WANT ME TO

14   PUT THEM ALL IN ONE PLACE, BUT --

15             MR. PEPICH:  THERE IS A REASON, YOUR HONOR --

16             THE COURT:  THE THING THAT BOTHERS ME IS THIS IS A

17   LOT OF WORK THAT IS UNNECESSARY BECAUSE YOU ALL DON'T HAVE ANY

18   DISPUTE AS TO WHETHER THEY HAVE TO ARBITRATE, BUT YOU COME IN

19   HERE ARGUING OVER WHETHER I HAVE TO COMPEL IT, AND I REALLY

20   WOULD LIKE YOU TO ANSWER DIRECTLY MY QUESTION --

21             MR. PEPICH:  I WILL DO THAT, YOUR HONOR.

22             THE COURT:  -- WHY ARE YOU ASKING ME TO COMPEL

23   ARBITRATION FOR 1700 PEOPLE THAT THERE IS NO DISPUTE MUST

24   ARBITRATE OTHER THAN A STRATEGIC DESIRE TO HAVE THEM IN ONE

25   LOCATION, WHICH I DON'T CONSIDER THE COURT OBJECTIVE HERE.

26

1          MR. PEPICH:  BECAUSE, YOUR HONOR, WE WOULD NOT AGREE

2    WITH CINTAS THAT THESE PEOPLE HAVE TO ARBITRATE.

3          THE COURT:  I THOUGHT YOU ALREADY HAVE.

4          MR. PEPICH:  WE HAVE ONLY AGREED TO THAT BECAUSE WE

5    EARLIER STIPULATED THAT THE PROVISIONS OF THE APRIL 5 ORDER

6    COMPELLING THE FIRST 55 PEOPLE TO ARBITRATE WOULD EXTEND OUT TO

7    FUTURE PEOPLE.  BUT WE DON'T VOLUNTARILY --

8          THE COURT:  THAT'S NOT IN THERE.  I DIDN'T SEE

9    ANYTHING SUPPORTING THAT.

10          MR. PEPICH:  I APOLOGIZE, YOUR HONOR.  IT ACTUALLY

11    GOES ALL THE WAY BACK TO THE JOINT CMC STATEMENT THAT WAS

12    SUBMITTED IN APRIL 23 OF 2004, IN WHICH THE PARTIES -- CINTAS

13    CAME TO US AFTER IT WON THE MOTION TO COMPEL ARBITRATION AND

14    SAID, LOOK, WE DON'T WANT TO HAVE TO CONTINUE TO BRING MOTIONS

15    TO COMPEL ARBITRATION, WILL YOU AGREE THAT WE CAN EXTEND THE

16    PROVISIONS OF THE APRIL 5 ORDER TO THE NEW OPT-INS.

17          MR. DOSKER:  OBJECTION, YOUR HONOR.  NO SUCH

18    STATEMENT WAS MADE.

19          THE COURT:  I AM NOT GOING TO GET INTO --

20          MR. PEPICH:  I AM JUST TELLING YOU THAT'S THE REASON

21    WHY WE DON'T AGREE THAT THESE PEOPLE HAVE TO ARBITRATE.  WE

22    ONLY AGREE THAT THE APRIL 5TH ORDER AND THE REASONING OF THE

23    COURT'S ORDER EXTENDS TO THEM, AND IF CINTAS WERE TO BRING A

24    MOTION --

25          MR. RUBIN:  THERE IS A NONSTRATEGIC PRACTICAL

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1    REASON, YOUR HONOR.

2            THE COURT:   BECAUSE WHAT I HAVE IS THE PARTIES AGREE

3    TO 1700 PLAINTIFFS ARE SUBJECT TO ENFORCEABLE ARBITRATION

4    AGREEMENTS.

5            MR. RUBIN:   THAT'S SUBJECT -- BASED ON YOUR

6    ANALYSIS, WHICH WE HAVE DISPUTED, BUT WE RECOGNIZE IS YOUR

7    ANALYSIS.

8            THE COURT:   RIGHT.

9            MR. RUBIN:   THE REAL REASON AT THIS POINT THAT WE

10    ARE ARGUING OVER THIS MOTION TO COMPEL IS BECAUSE IF CINTAS

11    OPPOSES ALL PLAINTIFFS ARBITRATING IN ONE PLACE, AND TRIES TO

12    SPLIT THESE 700 (SIC) PEOPLE THROUGHOUT THE COUNTRY --

13            THE COURT:   1700 PEOPLE.

14            MR. RUBIN:   1700 PEOPLE THROUGHOUT THE COUNTRY --

15            THE COURT:   WHAT DO YOU MEAN "TRY TO SPLIT"?   THESE

16    PEOPLE HAVE AGREEMENTS.   I DON'T UNDERSTAND THIS.

17            PEOPLE -- AND THE ONES THAT ARE UNENFORCEABLE ARE

18    UNENFORCEABLE.   BUT THE ONES THAT ARE ENFORCEABLE, THESE ARE

19    ENFORCEABLE AGREEMENTS THAT THEY HAVE AGREED TO.

20            SO WHAT DO YOU MEAN THEY ARE TRYING TO SPLIT THEM?

21    THESE ARE AGREEMENTS THAT THEY HAVE AGREED TO.   SO WHAT YOU ARE

22    ASKING ME IS TO CONSIDER ENGAGING IN AN ANALYSIS THAT IS

23    DESIGNED TO OR LIKELY TO RESULT IN PROVIDING A RELIEF THAT THEY

24    HAVE NOT AGREED TO.

25            MR. RUBIN:   IT'S RELIEF THAT IS MANDATED BY STATUTE,

28

```
 1    BY SECTION 4, AND SINCE YOU HAVE RETAINED JURISDICTION OVER

 2    EACH OF THESE 1700 PEOPLE'S ERISA CLAIMS --

 3           THE COURT:  NO.  NEVER MIND.  I THOUGHT YOU WERE

 4    GOING TO ANSWER THE QUESTION, BUT I DON'T THINK YOU ARE.

 5           LET'S GET TO THE NEXT ISSUE.  WITH RESPECT TO THE --

 6    OKAY.

 7           SO I INDICATED AT THE LAST HEARING THAT I WAS

 8    INCLINED TO DENY PLAINTIFFS' MOTION THAT THE ARBITRATION

 9    AGREEMENT IS UNENFORCEABLE UNDER LAWS OF ARIZONA, LOUISIANA AND

10    PENNSYLVANIA, AND I HAVEN'T HEARD ANYTHING THAT WOULD SUGGEST

11    OTHERWISE.  SO --

12           MR. RUBIN:  YOUR HONOR, WE HAVEN'T ARGUED THAT, AND

13    I HAVE JUST ONE BRIEF POINT I WOULD MAKE ON IT.

14           THE COURT:  OKAY.

15           MR. RUBIN:  THE -- WHAT YOU EXPLAINED IN YOUR

16    TENTATIVE IS THAT YOU LOOKED QUITE COMPREHENSIVELY AT THE

17    VARIOUS CASES, AND YOU CONCLUDED THAT THE BETTER REASONED

18    CASES -- AND LET'S START WITH LOUISIANA.  IN LOUISIANA, YOU

19    FOUND THAT THE BETTER REASONED CASE WAS A LOUISIANA FEDERAL

20    COURT DECISION.  THEREFORE, YOU CONCLUDED, APPLYING THE

21    REASONING OF THAT CASE, IN CONTRAST TO THE LOUISIANA STATE

22    CASES THAT WE CITED, LOUISIANA IS NOT LIKE ARKANSAS LAW.

23           SO THE POINT I AM MAKING IS SIMPLY THIS:  UNDER

24    SECTION 2 OF THE FEDERAL ARBITRATION ACT AND UNDER YOUR

25    APRIL 5TH, 2004 ORDER, THE ONLY ISSUE IS WHAT DOES THE STATE
```

CERTIFICATE OF REPORTER

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED

STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

THAT THE FOREGOING PROCEEDINGS IN C-03-1180 SBA, PAUL VELIZ, ET

AL. V. CINTAS CORPORATION, ET AL., PAGES NUMBERED 1 THROUGH 87,

WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE

THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING;

THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID

PROCEEDINGS AT THE TIME OF FILING.

THE INTEGRITY OF THE REPORTER'S CERTIFICATION OF

SAID TRANSCRIPT MAY BE VOID UPON REMOVAL FROM THE COURT

FILE.

_Diane E. Skillman_

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

# **<u>Exhibit 5</u>**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(Oakland Division)

| | |
|---|---|
| PAUL VELIZ, et al, On behalf of Themselves and All Others Similarly Situated. | Case No. 03-01180 (SBA) |
| Plaintiffs, | CLASS ACTION |
| vs. | ORDER |
| CINTAS CORPORATION, an Ohio corporation; PLAN ADMINISTRATOR for the Cintas Partners' Plan; and DOES 1-25, inclusive, | [Docket Nos. 433, 445, 451 & 460] |
| Defendants. | |

## I.    INTRODUCTION

The following motions are before this Court:  (1) Defendant Cintas Corporation's ("Cintas") Motion to Stay Proceedings, Pursuant to 9 U.S.C. § 3, as to Certain Opt-in Plaintiffs Who are not Subject to the Court's April 5, 2004 Order [Docket No. 445],  (2) Defendants' Motion to Dismiss as to Certain Opt-In Plaintiffs for Improper Venue or, in the Alternative, to Transfer for Improper Venue or, in the Alternative, to Transfer in the Interests of Justice and Convenience [Docket No. 433],  (3) Plaintiffs' "Motion in Compliance with Court Orders Regarding Which Plaintiffs Must Arbitrate and Which Plaintiffs May Litigate Their Non-ERISA Overtime Wage Claims " [Docket No. 451], and  (4) Plaintiffs' Motion for Leave to File Second Amended Complaint [Docket No. 460].  Having read and considered the arguments presented by the parties in support of and in opposition to those motions in the papers submitted to the Court, and having heard and considered the arguments presented by counsel at the October 18, 2005 and October 27, 2005 hearings on those motions, the Court hereby enters the following Order, for the reasons stated herein and for the reasons as were more fully stated by the Court on the record at the hearings on October 18, 2005 and October 27, 2005.

II.    **CINTAS' MOTION TO STAY PROCEEDINGS, PURSUANT TO 9 U.S.C. § 3, AS TO CERTAIN OPT-IN PLAINTIFFS WHO ARE NOT SUBJECT TO THE COURT'S APRIL 5, 2004 ORDER**

Since Cintas filed its Motion to Compel Arbitration (Docket No. 45) as to certain plaintiffs in August 2003, approximately 2,400 persons have "opted in" to this case by filing consent-to-sue forms. Many of them signed individual employment agreements with arbitration terms. The parties have agreed that the plaintiffs to whom Cintas' Motion to Stay was directed consist of the persons listed on Exhibits E, F, G, H, I and J to the Joint Statement of the Parties in Response to the Court's September 27, 2005 Order [Docket No. 501]. A copy of those lists is attached as an Appendix hereto. The 1,884 persons on the lists attached as an Appendix hereto are referred to in this Order as the "Stay Motion Plaintiffs".[1]

This Court has held that none of the Stay Motion Plaintiffs is subject to Cintas' original Motion to Compel (and thus have not been compelled by this Court to arbitrate their claims). May 4, 2005 Order at 13 [Docket No. 426].

Cintas has now moved pursuant to Section 3 of the Federal Arbitration Act ("FAA") to stay further litigation of the claims asserted in this action by each of the Stay Motion Plaintiffs until "arbitration has been had in accordance with the terms of the agreement" into which each of the Stay Motion Plaintiffs entered. Under the FAA, if the Court determines that a party's claims are arbitrable, it must stay the litigation of those claims upon a party's request. 9 U.S.C. § 3.

Plaintiffs have asserted that the Court is also required to compel arbitration of the claims of the Stay Motion Plaintiffs on the theory advanced by plaintiffs -- that Cintas waived its statutory right under the FAA to move in this Court only to stay or should be estopped from arguing that the Stay Motion Plaintiffs should not be compelled by this Court based on prior statements to this Court. The Court has reviewed the parties' submissions and finds no authority, and plaintiffs have cited no case, where a court has compelled arbitration of plaintiffs' claims in

---

[1] The parties agreed at the hearing that, by virtue of this Court's Order of April 5, 2004 and the Stipulation and Order of June 9, 2004, all opt-in plaintiffs with arbitrable overtime claims, who had filed consents to sue prior to June 9, 2004 would be compelled to arbitrate their claims. Therefore, the Stay Motion Plaintiffs are those plaintiffs who filed consent-to-sue forms and opted into the litigation after June 9, 2004.

2

1    the absence of a motion or petition to compel arbitration under 9 U.S.C. § 4. Nor have plaintiffs

2    cited any authority where a court has found that a defendant has waived its rights to seek a stay of

3    proceedings pursuant to 9 U.S.C. § 3, or where a court found judicial estoppel preventing a

4    defendant from electing to seek a stay pursuant to 9 U.S.C. § 3, while at the same time electing

5    not to make a motion or petition to compel under 9 U.S.C. § 4. Nor have plaintiffs put forward

6    any facts that support their assertions.  Based upon the parties' submissions and for the reasons

7    more fully stated on the record, Cintas' Motion is GRANTED and the Court hereby STAYS the

8    claims of each of the Stay Motion Plaintiffs[2] until arbitration of such Stay Motion Plaintiff's

9    FLSA and state law claims (if any) "has been had in accordance with the terms of the agreement"

10   into which such person entered.  9 U.S.C. § 3.

11

12   **III.    CINTAS' MOTION TO DISMISS AS TO CERTAIN OPT-IN PLAINTIFFS FOR**
     **IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER FOR**
13   **IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER IN THE**
     **INTERESTS OF JUSTICE AND CONVENIENCE**
14
          Cintas moved to dismiss or transfer venue with respect to 36 opt-in plaintiffs who
15
     executed employment agreements with Cintas or a predecessor company that contain forum
16
     selection clauses ("Venue Motion Plaintiffs"). Cintas moved to dismiss the claims of the Venue
17
     Motion Plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(3) or, alternatively, dismiss
18
     or transfer venue either pursuant to 28 U.S.C. §1406(a) or §1404(a).
19
          For the reasons more fully stated on the record, the Court finds that Cintas has waived any
20
     right to move to dismiss these plaintiffs' claims by failing to timely raise any objection to venue.
21
     28 U.S.C. § 1406(b).  In its Answer to Plaintiffs' First Amended Complaint, filed July 9, 2004, at
22
     a time when several venue plaintiffs had already opted into the litigation, Cintas admitted that
23
     venue in this Court was proper.  Moreover, Cintas failed to timely assert improper venue prior to
24
     the instant motion without any credible justification for its failure and indicated by its course of
25

26   ─────────────────
     [2] This portion of the Court's Order does not apply to Plaintiffs Thomas Bradley of Missouri,
     Louise Bruck of Ohio, and Andrew M. Olson of California.  These three plaintiffs are addressed
27   separately in Section IV below.  Furthermore, it does not apply to those opt-in plaintiffs that had
     filed consents to sue by June 9, 2004, pursuant to the Stipulation and Order of June 9, 2004.
28

                                             3

1    conduct over the two and a half years this matter has been in litigation that it had no objection to

2    venue. Therefore, the Court DENIES Cintas' requests under Federal Rule of Civil Procedure

3    12(b)(3) and under 28 U.S.C. § 1406(a). Further, after hearing, discussing and considering the

4    parties' arguments addressing the numerous factors that the Court is to consider in evaluating a 28

5    U.S.C. § 1404(a) motion, and for the reasons stated more fully on the record, the Court finds that

6    Cintas has not met its burden of demonstrating that a transfer of the action as to these plaintiffs

7    will enhance the convenience of the parties and witnesses, and serve the interests of justice. IT IS

8    HEREBY ORDERED that Cintas' Motion to Dismiss for Improper Venue Pursuant to Federal

9    Rule of Civil Procedure 12(b)(3), or to transfer the claims pursuant to 28 U.S.C. § 1406(a) or 28

10    U.S.C. § 1404(a) is DENIED.

11

12    **IV.    PLAINTIFFS' "MOTION IN COMPLIANCE WITH COURT ORDERS REGARDING WHICH PLAINTIFFS MUST ARBITRATE AND WHICH PLAINTIFFS MAY LITIGATE THEIR NON-ERISA OVERTIME WAGE CLAIMS"**

13

14        Plaintiffs' Motion in Compliance with Court Orders Regarding Which Plaintiffs Must

15    Arbitrate and Which Plaintiffs May Litigate Their Non-ERISA Overtime Wage Claims seeks the

16    following relief: (1) an Order that the arbitration agreements between Cintas and opt-in plaintiffs

17    from Arizona, Louisiana and Pennsylvania are unenforceable under state law; (2) that the

18    arbitration agreements between Cintas and six opt-in plaintiffs -- Thomas Bradley, Louise Bruck,

19    Allan J. Gumbs, Douglas A. Johnson, Andrew M. Olson, and Clarence E. Stewart III -- are

20    unenforceable on the ground that they are procedurally unconscionable; and (3) that the Court

21    should deny Cintas' Motion to Stay Proceedings, Pursuant to 9 U.S.C. §3 as to Certain Opt-In

22    Plaintiffs Who Are Not Subject to the Court's April 5, 2004 Order [Docket No. 445]. Because

23    the Court has granted Cintas' Motion to Stay, the Court does not further consider here plaintiffs'

24    request in that regard.[3]

25    _____

26    [3] Plaintiffs' counsel also challenged the enforceability of agreements signed by two individuals, David Gentry and Christopher Lackey. The Court finds that Cintas' evidence, showing that

27    Messrs. Gentry and Lackey last worked for Cintas in Georgia, is persuasive. While plaintiffs' counsel contends that those two employees worked in Tennessee, the only admissible evidence

28    offered on the point is the Christerson Declaration [Docket No. 431 at Exhibit A] showing that the last place worked for these individuals was in Georgia. The Court finds that David Gentry

1.    The Laws of Arizona, Louisiana and Pennsylvania Do Not Render the
Arbitration Agreements Unconscionable

The parties dispute whether Cintas' arbitration agreements are enforceable under the laws of Arizona, Louisiana, and Pennsylvania. For the reasons stated more fully on the record, Cintas' arbitration agreements are enforceable under the laws of those three states because those laws do not require bilaterality of promises to arbitrate. Even if Pennsylvania law requires such bilaterality, absent a showing of "business realities" that would justify non-mutuality of promises, Cintas has demonstrated sufficient business need for access to the courts to litigate claims against employees who breach their confidentiality and non-compete covenants. *Lytle v. CitiFinancial Servs., Inc.*, 810 A.2d 643 (Pa .Super. 2002). Therefore, opt-in plaintiffs who executed arbitration agreements and who last worked for Cintas in Arizona, Louisiana, and Pennsylvania must arbitrate their overtime claims.

a.    Arizona

Under *Gates v. Ariz. Brewing Co.*, 95 P.2d 49, 52 (1939), mutuality exists where the parties have exchanged mutual promises. Arizona courts do not require a special promise to be directed to a particular obligation. *See Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. Sup. Ct. 1986). The Court further notes that plaintiffs have not directed the Court to any authorities suggesting that bilaterality is a factor that must be considered under Arizona law. The Court finds that the arbitration agreements between Cintas and the plaintiffs from Arizona are enforceable under state law and under 9 U.S.C. § 2.

b.    Louisiana

Louisiana courts will not uphold an arbitration agreement where a promise is illusory or where there is no mutuality of obligation between the parties. Plaintiffs do not contend the arbitration agreement here is illusory. While Cintas reserved the right to pursue in court certain claims, that reservation does not negate their obligation to arbitrate claims brought by plaintiffs. It is relevant to note that in *Gill v. Jim Walter Homes of La., Inc.*, 187 F.Supp.2d 618 (W.D. La.

---

and Christopher Lackey are subject to individual employment agreements with Georgia as the governing state law.

5

1    2002), where, as here, only one party reserved the right to pursue certain claims in court, the court

2    found there was mutuality of obligation.  Given the presumption of arbitrability that the Louisiana

3    Supreme Court has imposed, and the adoption of a liberal policy favoring arbitration, *see*

4    *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1 (2005), the Court finds the arbitration agreement

5    enforceable under Louisiana law.

6

7                             c.    Pennsylvania

8             Plaintiffs argue that the Court should hold agreements between Cintas and plaintiffs from

9    Pennsylvania to be unenforceable as lacking mutuality, relying primarily on *Lytle v. CitiFinancial*

10    *Servs., Inc.*, 810 A.2d 643 (Pa. Super. Ct. 2002).  According to *Lytle*, the party that retained the

11    right to litigate in court must have a justification of business realities which compel the inclusion

12    of the right to litigate in the agreement; otherwise the agreement is void as unconscionable.  *Id.* at

13    665.  Plaintiffs do not dispute that there are business realities that would justify the inclusion of

14    the right to litigate in the Cintas agreements with respect to conduct identified under the

15    irreparable harm provision.  Thus, with respect to Cintas reserving for itself the right to go into

16    court to seek an injunction, for the purpose of that conduct that falls within the irreparable harm

17    clause, under *Lytle*, this Court finds that even assuming that *Lytle* were the only applicable state

18    law authority, the standard has been met.  The Court also finds that the weight of federal

19    authorities supports this conclusion.  *See, e.g., Aames Funding Corp. v. Sharpe*, No. 04-4337,

20    2004 WL 2418284, * 5 (E.D. Pa. Oct. 28, 2004) (citing *Harris v. Green Tree Fin. Corp.*, 183

21    F.3d 173, 183 (3d Cir. 1999), *vacated on other grounds*, 2004 WL 2980407 (E.D. Pa. Dec. 22,

22    2004); *In re Brown*, 311 B.R. 702, 709-10 (Bankr. E.D. Pa. 2004) (finding *Lytle* to be suspect

23    based on *Harris and Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)); *Choice v.*

24    *Option One Mortg. Corp.*, No. 02-6626, 2003 U.S. Dist. LEXIS 9714 (E.D. Pa. May 13, 2003

25    (same)); *Montgomery v. Decision One Fin. Network Inc.*, No. 04-4551, 2005 U.S. Dist. LEXIS

26    3031, *6-9 (E.D. Pa. Mar. 1, 2005).

27             The Court finds that the arbitration agreements between Cintas and plaintiffs from

28    Pennsylvania are enforceable under state law and 9 U.S.C. § 2.

2.      Six Plaintiffs' Declarations Regarding Procedural Unconscionability.

Plaintiffs contend that this Court should not enforce arbitration agreements between six individual plaintiffs and Cintas because they were executed under procedurally unconscionable circumstances.  As more fully stated on the record, the Court has analyzed each of these plaintiffs' declarations to determine whether they were executed under conditions of procedural unconscionability as set forth in the laws of the states where they worked for Cintas.  As to the six plaintiffs, the Court finds as follows:

a.      *Thomas Bradley*

Under Missouri law, procedural unconscionability focuses on whether there is "high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position." *Funding Systems Leasing Corp., v. King Louie Int'l, Inc.*, 597 S.W.2d 624, 634 (Mo. Ct. App. 1979).  Mr. Bradley, a Missouri plaintiff, declares that when he was shown his employment agreement, he asked to take it home for review, but was not permitted to do so.  He also declares he had no opportunity to read the agreement and was pressured into signing it.  For the reasons stated at the hearing, and based on his declaration, the Court finds procedural unconscionability rendering Mr. Bradley's arbitration agreement unenforceable.

b.      *Louise Bruck*

Under Ohio law, no formation of an agreement occurs when no voluntary agreement existed.  The Ohio courts consider the bargaining positions of the parties, whether the terms of the agreement were explained to the weaker party, and whether the party claiming the provision is unconscionable was represented by counsel.  *Porpora v. Gatliff Bldg. Co.*, 828 N.E.2d 1081, 1084 (Oh. Ct. App. 2005).  Ms. Bruck declares that she was not permitted to take the agreement home or to have an attorney review it prior to her signing it.  She declares that she was instructed to sign the agreement immediately.  For the reasons stated at the hearing, and based on her declaration, the Court finds procedural unconscionability rendering Ms. Bruck's arbitration agreement unenforceable.

7

c.    *Allan Jason Gumbs*

Under Maryland law, the courts' analyses of procedural unconscionability focuses on "whether the imposed-upon party had meaningful choice about whether and how to enter the transaction." *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005).   Mr. Gumbs declares that he requested to take home "some materials", but his request was denied. Mr. Gumbs neglects to identify what "materials" he requested to take home or, more importantly, whether they included the employment agreement.  He does not indicate that he was rushed in his review of the agreement or that he raised any issues or concerns with anyone, such that he was denied a meaningful choice about whether to execute the agreement.  For the reasons stated at the hearing, and based on his declaration, the Court finds no procedural unconscionability under Maryland law.

d.    *Douglas A. Johnson*

Under Kansas law, the state Supreme Court has identified the following factors to aid in the determination of unconscionability: (1) the use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate; and (10) inequality of bargaining or economic power. *Willie v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 758-59 (1976).   Mr. Johnson declares that he requested to take the agreement home with him, but he does not specify that the request was denied.  Moreover, he states that he read the agreement, but not thoroughly.  It appears that Mr. Johnson was afforded an opportunity to

1    review the contract and may or may not have been denied the opportunity to review it at home.

2    While he asserts a lack of knowledge of the arbitration agreement provision, that failure can be

3    laid at his feet as he admits he failed to read the agreement thoroughly.   For the reasons stated at

4    the hearing, and based on his declaration, the Court finds no procedural unconscionability under

5    Kansas law.

6              e.    *Andrew M. Olson*

7         Under California law, the courts have determined procedural unconscionability

8    encompasses the contract formation focusing on the "oppression or surprise due to unequal

9    bargaining power." *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071 (2003).   Mr. Olson

10   declares that when he requested to review the employment agreement at home, he was told he had

11   to sign it immediately.   Further, he was specifically advised that there was nothing important in

12   the document.   For the reasons stated at the hearing, and based on his declaration, the Court finds

13   procedural unconscionability rendering Mr. Olson's arbitration agreement unenforceable.

14             f.    *Clarence E. Stewart III*

15        The same California state law standard expressed above with respect to Mr. Olson applies

16   to Mr. Stewart as well.   Given the information contained in his declaration, the Court is unable to

17   assess the fairness of his execution of the agreement in context.   Although Mr. Stewart declares

18   that he was given the agreement to sign before leaving on the day the agreement was presented,

19   he does not indicate how much time he had to review his employment agreement.   Moreover, Mr.

20   Stewart had previously signed, without challenge, two other employment agreements containing

21   identical arbitration provisions.   No oppression or surprise has been shown.   For the reasons

22   stated at the hearing, and based upon his declaration, the Court finds no procedural

23   unconscionability under California law.

24        CONCLUSION

25        IT IS HEREBY ORDERED that plaintiffs' Motion [Docket No. 451] is DENIED in part

26   such that (1) the arbitration agreements between Cintas and opt-in plaintiffs from Arizona,

27   Louisiana and Pennsylvania are enforceable under the respective state laws and 9 U.S.C. § 2, and

28   (2) the arbitration agreements between Cintas and opt-in plaintiffs Allan J. Gumbs, Douglas A.

9

1   Johnson, and Clarence E. Stewart III are valid and enforceable under applicable state law and 9

2   U.S.C. § 2.  Plaintiffs' Motion [Docket No. 451] is GRANTED in part such that the arbitration

3   agreements between Cintas and opt-in plaintiffs Thomas Bradley, Louise Bruck, and Andrew M.

4   Olson are held to be unenforceable on the ground that they are procedurally unconscionable under

5   applicable state law.

6

7   **V.    PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR PROPOSED SECOND**
        **AMENDED COMPLAINT**

8
            Plaintiffs have moved for leave to file a proposed Second Amended Complaint adding
9
    state-law overtime claims on behalf of plaintiffs from an additional
10
            15 states: Arkansas, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota,
11
    New Mexico, Ohio, Oregon, Pennsylvania, Rhode Island, Washington, West Virginia and
12
    Wisconsin.  [Docket No. 460 at 3:1-19].  The Motion "also propose[d] to add class
13
    representatives for each state subclass on the additional overtime claims, *see* ¶¶ 9-10, 20-29, 34-
14
    35, 42, 44-54 [of the proposed Second Amended Complaint] and to name these same individuals
15
    as additional representatives of the national FLSA class. *See* ¶149" [of the proposed Second
16
    Amended Complaint].  [Docket No. 460 at 3:20-23.]
17

18          Cintas confirmed in the hearings that it does not oppose the Motion for leave to file the

19   proposed Second Amended Complaint to the extent that the Motion would add the claims

20   proposed therein of those proposed putative class representative plaintiffs who are permitted to

21   litigate their claims in this Court.  However, Cintas has opposed the Motion on grounds that leave

22   to amend is improper because the claims as to many of the proposed named plaintiffs have

23   previously been stayed or have now been stayed by virtue of the Court having granted Cintas'

24   Motion to Stay.  Cintas also opposes the Motion on the ground that leave to amend is improper as

25   to those proposed state-law subclass claims as to which the proposed representative plaintiffs are

26   persons who are stayed from litigating.  Finally, Cintas opposes the Motion for leave to amend to

27   state an Arkansas law subclass claim on the ground that it would be futile to do so.

28

                                            10

1    For the reasons stated more fully on the record, the motion is GRANTED IN PART and

2    DENIED IN PART. The Court GRANTS the Motion for leave to file the proposed Second

3    Amended Complaint with respect to those putative class or subclass representative plaintiffs who

4    the parties agree may litigate their claims before this Court, and DENIES the Motion for leave to

5    amend with respect to those plaintiffs who have been previously compelled to arbitration or who

6    are subject to defendant's Motion to Stay which has been granted elsewhere in this Order.

7    Regarding plaintiffs' proposed Arkansas subclass claim, the Court DENIES the request to

8    amend the complaint to include such a claim without prejudice to later revisiting the issue, if

9    appropriate, should the legal posture of this case change and/or the applicability of the Arkansas

10   statute.

11   IT IS HEREBY ORDERED that plaintiffs' Motion [Docket No. 460] is DENIED in part.

12   Plaintiffs are DENIED leave to file an amended complaint as to the claims of any plaintiffs who

13   are compelled to arbitrate or who are stayed from litigating. Plaintiffs are DENIED without

14   prejudice leave to file an amended complaint adding an Arkansas state minimum wage law claim

15   as a Fourth Claim for Relief or otherwise. Plaintiffs' Motion [Docket No. 460] is GRANTED in

16   part in that they are granted leave to file a Second Amended Complaint with respect to those

17   putative class or subclass representative plaintiffs who the parties agree may litigate their claims

18   before this Court. Plaintiffs shall have ten (10) days' leave to file their Second Amended

19   Complaint, to the extent that leave to do so has been granted by this Order. Defendants shall

20   have ten (10) days after service of the Second Amended Complaint to respond to it.

21

22   **IT IS SO ORDERED.**

23

24   Dated: 2/13/06 _____          _____
                                                 SAUNDRA BROWN ARMSTRONG
25                                               United States District Judge

26

27

28   _____

11