| No. | Last Name | First Name | Agreement Version |
|---|---|---|---|
| 29 | Greene | Les | 03PA |
| 30 | Gula | Jon | 99A |
| 31 | Hall | Renee | 99A |
| 32 | Henning | William D., II | 03PA |
| 33 | James | Joseph | 99A |
| 34 | Klutch | Thomas | 03PA |
| 35 | Kuba | Daniel | 99A |
| 36 | Laskowski Jr. | Thomas M. | 02A |
| 37 | Lauer | Mark | 99A |
| 38 | Leazier | Linda | 03A |
| 39 | Lipscomb III | Leonard | 99A |
| 40 | Loranger | Matt | 99A |
| 41 | Marsicano | Angelo | 99A |
| 42 | Martell Jr. | Charles | 96A |
| 43 | Martin | Douglas | 02A |
| 44 | Maule | John | 99A |
| 45 | McCue, Jr. | Edward | 01A |
| 46 | Mecum | Andrew O. | 03PA |
| 47 | Mertens | James | 96A |
| 48 | Michelfelder | John | 99A |
| 49 | Mikulski | Zenard W. | 02A |
| 50 | Miller | Josh | 02A |
| 51 | Mullin | John | 01A |
| 52 | Munn | Brian | 96A |
| 53 | Murphy | Matthew | 02A |
| 54 | Nicotero III | Ross | 99A |
| 55 | Novatnak | Robert | 99A |
| 56 | Nye | Timothy | 02A |
| 57 | O'Connell | Stephen | 02A |
| 58 | Olli | Mark, Jr. | 99A |
| 59 | Orsini | Chris | 99A |

| No. | Last Name | First Name | Agreement Version |
|---|---|---|---|
| 60 | Ortiz | Andres | 02A |
| 61 | Osman | Michael | 03PA |
| 62 | Overman | Alonzo K. | 99A |
| 63 | Phillips | Jason | 02A |
| 64 | Potechko | Carl | 01A |
| 65 | Pottichen Jr. | William F. | 96A |
| 66 | Primerano | David | 96A |
| 67 | Quinn | Michael | 01A |
| 68 | Raymond | Thomas | 99A |
| 69 | Reedy Jr. | Robert | 99A |
| 70 | Riley | Brian | 99A |
| 71 | Santana | Victor | 99A |
| 72 | Schwartz | Glenn | 03A |
| 73 | Scialanca | David | 02A |
| 74 | Sciscio | Jesse Paul | 02A |
| 75 | Secora | Jason | 01A |
| 76 | Shortencarrier | Daniel | 02A |
| 77 | Smith | Michael S. | 03PA |
| 78 | Sossong | Thomas | 02A |
| 79 | Staggs | James Ervin | 96A |
| 80 | Stefani | John | 01A |
| 81 | Stefanick | Jared | 99A |
| 82 | Stillfield | Miguel | 96A |
| 83 | Tokish | Nicholas | 02A |
| 84 | Torris III | Leonard R | 99A |
| 85 | Vallette | Charles | 96A |
| 86 | Vickless | Dave | 99A |
| 87 | Wiggins | Raiford F. | 99A |

# Exhibit I

| No. | Last Name | First Name | Disputed States | Agreement Version |
|---|---|---|---|---|
| 1 | Gentry | David Lewis | GA, TN | 96A |
| 2 | Lackey | Christopher Alan | GA, TN | 99A |

## Exhibit J

| Last Name | First Name | State | Agreement Version |
|---|---|---|---|
| Bradley | Thomas | MO | 96A |
| Bruck | Louise | OH | 99A |
| Gumbs | Allan | MD | 99A |
| Johnson | Douglas | KS | 99A |
| Olson | Andrew | CA | 02B |
| Stewart | Clarence | CA | 03CA |

Note: Plaintiff Gumbs was compelled to arbitrate as part of the Court's April 5, 2004 Order. Plaintiffs nonetheless assert a challenge on his behalf.

1

# Exhibit 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(Oakland Division)

| | |
|---|---|
| PAUL VELIZ, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CINTAS CORPORATION, an Ohio corporation; PLAN ADMINISTRATOR for the Cintas Partners' Plan; and DOES 1-25, inclusive,<br><br>Defendants. | Case No. 03-01180 (SBA)<br><br>CLASS ACTION<br><br>E-FILING<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO RECONSIDER ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

Plaintiffs' Motion to Reconsider Order Granting in Part Defendant's Motion to Compel Arbitration [Docket No. 377] and Cintas' opposition thereto came before this Court, and was submitted on the papers without oral argument. Having considered the papers presented, and the argument of counsel set forth therein, the Court GRANTS IN PART and DENIES IN PART plaintiffs' Motion.

## I.     RELIEF REQUESTED BY PLAINTIFFS' MOTION

In its Order dated April 5, 2004 [Docket No.140], the Court granted in part Cintas' Motion to Compel Arbitration and Stay Proceedings, finding that 56 of the original 65 plaintiffs were subject to enforceable agreements to arbitrate their claims against Cintas before the American Arbitration

1

Association ("AAA"). Applying the respective governing law at issue as to those 56 persons, the Court determined that some of the terms of the arbitration agreements were unconscionable, such as a "loser-pays" provision in the parties' 1996 agreements, which the Court severed, all as is more fully stated in the April 5, 2004 Order.

Plaintiffs thereafter submitted to the AAA a Demand for Classwide Arbitration, seeking arbitration on a class and/or collective basis. Dosker Decl. Exh. A. [Docket No. 389].

In seeking reconsideration of the April 5, 2004 Order, plaintiffs claim that there are new facts that warrant the Court revisiting its April 5, 2004 Order to find that the arbitration agreements are unconscionable and, therefore, unenforceable. First, plaintiffs argue that the AAA intends to hold them responsible under its Supplementary Rules for Class Arbitration for one half of the costs of arbitration on a class or collective basis, including arbitrator compensation. Plaintiffs contend that the arbitration agreements (which incorporate the AAA's National Employment Rules), unconscionably interfere with their ability to vindicate their statutory rights through arbitration on a class or collective basis.

Second, plaintiffs argue that the Court should find the parties' arbitration agreements unconscionable because Cintas has taken the position *in the arbitration* that the specific arbitration (on a nationwide class or collective basis) demanded by plaintiffs is in breach of the various choice-of-law and place-of-arbitration provisions in the various individual arbitration agreements. Each of the individuals' arbitration agreements with Cintas provides that the AAA's National Employment Rules apply; they make no mention of the AAA Supplementary Rules for Class Arbitration. See e.g., Clendening Decl. Ex. B at paragraph 5 and at corresponding term in Exs C through III [Docket Nos. 50, 51]. The AAA applies its Supplementary Rules for Class Arbitration to all demands for arbitration in

2

which classwide relief is demanded. Dosker Decl. Exh. I at Rule 1(a) (page 1) [Docket No. 389].

Third, plaintiffs contend that a declaration submitted by Cintas employee Jenice Clendening in a different case provides new evidence of procedural unconscionability with regard to the California plaintiffs such that the Court should not enforce the California plaintiffs' arbitration agreements.

Finally, plaintiffs argue that the place-of-arbitration provision in the parties' arbitration agreements is unenforceable because: (1) the Court is not empowered to compel arbitration outside of this district pursuant to 9 U.S.C. § 4; and (2) enforcing the place-of-arbitration provision would result in fundamental unfairness.

## II. DISCUSSION

The FAA establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The "primary purpose" of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989). Any "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24. Thus, where one of the parties is resisting arbitration, the United States Supreme Court requires that party to "bear[] the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000). In seeking reconsideration of the Court's April 5, 2004 Order, plaintiffs fail to satisfy this burden.

//

    a.    **THE COSTS OF ARBITRATION AT ISSUE ARE NOT UNCONSCIONABLE BECAUSE PLAINTIFFS CAN VINDICATE THEIR STATUTORY RIGHTS IN INDIVIDUAL ARBITRATIONS, AND THE COSTS IN QUESTION ONLY APPLY TO ARBITRATION ON A CLASS OR COLLECTIVE BASIS**

Plaintiffs argue that the Court should not enforce their agreements to arbitrate because they believe that the AAA will hold them responsible for one half the costs of arbitration on a class or collective basis, which the plaintiffs estimate could exceed $25,000. Rubin Decl. 33 [Docket No. 383]. Although plaintiffs acknowledge that they could pursue their claims through individual arbitrations at Cintas' expense,[1] they contend that requiring them to bear any expense for arbitration on a *class or collective basis* "impose[s] a substantial barrier to the vindication of their rights." Plaintiffs' Memorandum of Points and Authorities ("Memo") at 11. [Docket No. 384]. The Court finds that plaintiffs' arguments fail.

Precedent establishes that even an inability to proceed on a class or collective basis in arbitration has no impact on a plaintiff's ability to vindicate his or her substantive statutory rights.

The United States Supreme Court held in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) that a party's inability to pursue class or collective relief in arbitration does not interfere with that party's ability to vindicate his statutory rights. The *Gilmer* plaintiff argued that he should not be compelled to arbitrate his claims under the Age Discrimination in Employment Act ("ADEA") because he would be unable to pursue class or collective treatment in arbitration. *Id.*[2]  Rejecting this argument, the

---

[1] Plaintiffs' Memorandum of Points and Authorities at 2:12-14 [Docket No. 384]; Rubin Decl. ¶16 [Docket No. 383]; Dosker Decl. Ex. D at p.2 [Docket No. 389]; Docket No. 365; Docket No. 370 at 2:5-7; and items cited in note 6 below.

[2] The provision for class actions (collective actions) in the ADEA is the FLSA provision for class actions (collective actions), which the ADEA expressly adopts. 29 U.S.C. § 626(b); *Carter v.*

4

Court held that a party *can* vindicate statutory rights through individual arbitration and "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* at 26. In language directly relevant to the present motion, the Court in *Gilmer* stated that:

> [E]ven if the arbitration could *not go forward as a class action or class relief could not be granted by the arbitrator*, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.

500 U.S. at 32 (emphasis added) (citation omitted).

In *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004), the Court of Appeals expressly rejected plaintiffs' argument that their "inability to proceed collectively [under the FLSA] deprives them of substantive rights under the FLSA." *Id.* So long as a plaintiff can pursue the substantive statutory rights through individual arbitration, a plaintiff's inability to proceed collectively or on behalf of a class is legally irrelevant. The Court of Appeals held that:

> we reject the Carter Appellants' claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA. The Supreme Court rejected similar arguments concerning the ADEA in *Gilmer*, despite the fact that the ADEA, like the FLSA, explicitly provides for class action suits. 500 U.S. at 32. What is more, the provision for class actions in the ADEA is the FLSA class action provision, which the ADEA expressly adopts. 29 U.S.C. § 626(b). *Accordingly, Gilmer's conclusion in this respect applies with equal force to FLSA claims.*"

*Id.* (emphasis added). Similarly, in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002), the Court of Appeals held that there was "no suggestion in the text, legislative history, or purpose of the

---

*Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); see 29 U.S.C. § 216(b).

FLSA that Congress intended to confer a nonwaivable right to a class action under that statute." The court held that the plaintiffs' "inability to bring a class action . . . cannot by itself suffice to defeat the strong congressional preference for an arbitral forum." *Id.*

In *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 320 (9th Cir. 1996), the Ninth Circuit held that when an employee agrees to arbitrate, she forfeits any procedural rights arising from the FLSA, while retaining her substantive rights (e.g., the right to obtain substantive relief) in arbitration.

Because plaintiffs are able to pursue their statutory claims through individual arbitration at no substantial cost, the costs for pursuing arbitration on a class or collective basis are not a "condition of access to the arbitration forum" and are, therefore, not unconscionable. *Cf. Circuit City v. Adams*, 279 F.3d 889, 896 (9th Cir. 2001).[3]

Based on these authorities, it is apparent that enforcement of an arbitration agreement does not impact a plaintiff's ability to vindicate his or her statutory rights if such enforcement interferes with a plaintiff's ability to pursue arbitration on a class or collective basis, or indeed leads to a complete inability to pursue arbitration on a class or collective basis. Because plaintiffs have access to the arbitral forum in individual arbitrations for no substantial costs whatsoever, any costs imposed by the AAA based on plaintiffs' tactical choice to proceed by means of their demand for arbitration on a class or collective

---

[3] The Ninth Circuit says that courts have "interpreted *Gilmer* to require basic procedural and remedial protections so that claimants can effectively pursue their statutory rights", and cites the discussion of *Gilmer* in the case of *Cole v. Burns*, 105 F.3d 1465, 1482 (D.C.Cir. 1997) as listing the five basic requirements that an arbitral forum must meet. *Circuit City v. Adams*, 279 F.3d at 895; *Ting*, 319 F.3d 1126, 1151 (9th Cir. 2003). The ability to proceed as a class or collective is <u>not</u> one of them. *Cole*, 105 F.3d at 1482. Unlike in those cases, the availability here of the virtually no-cost individual arbitration forum means that the plaintiffs here "do not have to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Cf. Circuit City v. Adams* 279 F.3d at 895; *cf. Ting v. AT&T*, 319 F.3d 1126, 1151.

6

basis cannot render the agreements to arbitrate unconscionable.

### b. PLAINTIFFS HAVE FAILED TO PRESENT EVIDENCE SUFFICIENT TO SHOW THAT COSTS WILL BE UNREASONABLY BURDENSOME

Even if the Court assumed that plaintiffs had a right to proceed collectively or as a class, their reconsideration motion is still deficient. In *Randolph*, the United States Supreme Court held that a party challenging an arbitration agreement as unconscionable on the ground that arbitration would be "prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." 531 U.S. at 91-92. Given the "liberal federal policy favoring arbitration agreements," the party challenging arbitration must present an evidentiary record showing prohibitive costs will essentially "preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 90-91.

Courts interpreting state law unconscionability standards in light of *Randolph* have held that a party seeking to invalidate an arbitration agreement must not only bear the burden of showing that it will incur high arbitration costs, it must also show that such costs will preclude them from seeking relief through arbitration. In *Bradford v. Rockwell Semiconductor Sys. Inc.*, 238 F.3d 549, 556 (4th Cir. 2001), for example, the Court of Appeals held that the determination of whether fee-splitting renders an agreement unenforceable must be examined in light of each individual plaintiff's ability to pay, on a case-by-case basis:

> [T]he appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so

7

substantial as to deter the bringing of claims.[4]

The evidence submitted by plaintiffs is inadequate under *Randolph* to enable the Court to undertake a case-by-case analysis to determine whether costs that might be assessed by the AAA would preclude plaintiffs from pursuing their statutory claims.[5] Although 56 plaintiffs seek reconsideration, only five of them claim that the costs of arbitration will be prohibitive. On this evidence, the Court cannot find that the AAA's alleged cost-splitting policy for class arbitrations somehow renders the individual arbitration agreements between Cintas and each plaintiff unconscionable, even if there were some right to pursue arbitration on a class or collective basis.

Further, in determining whether an express cost splitting provision (which there is none here) would preclude a litigant from effectively vindicating statutory rights, the Court considers whether "the

---

[4]*See also, e.g., Blair v. Scott Specialty Gases*, 283 F.3d 595 (3rd Cir. 2002) (adopting *Bradford* case-by-case approach); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 664 (6th Cir. 2003) (holding that the courts must evaluate on a case-by-case basis "whether the 'overall cost of arbitration,' from the perspective of the potential litigant, is greater than 'the cost of litigation in court.'"); *Livingston v. Assoc. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (holding that "individualized evidence" of inability to pay costs required); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir., 2004) (refusing to invalidate arbitration clause where plaintiff failed to show costs were prohibitive); *Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249 (Colo. Ct. App. 2001) (plaintiffs must provide evidence of an inability to pay).

[5] The Court further observes that the motion is premature since the AAA has not issued any invoices and has not demanded payment of any specific amounts. Based on the evidence presented, it is unclear whether and to what extent plaintiffs will be subject to costs in the arbitration. Because the dispute regarding payment of costs arises from what the plaintiffs contend is an incorrect interpretation of the AAA's rules (see Memo. at 14 n.11)[Docket No. 384], plaintiffs should have first addressed this issue to the appointed arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("procedural questions which grow out of [a] dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.").

8

overall cost of arbitration, *from the perspective of the potential litigant*, is greater than the cost of litigation in court." *Morrison*, 317 F.3d at 664 (emphasis added). In so doing, the Court may consider whether prospective costs will not be borne by the plaintiffs' contingent-fee firms. *Id.* Plaintiffs, however, have offered no evidence that plaintiffs will be asked to bear any costs whatsoever. The Court will not speculate that the costs to plaintiffs would be greater in class arbitration than in litigation absent compelling proof to the contrary; but in any event, individual arbitration is available at no material cost.

Moreover, plaintiffs have cited no cases in which the arbitrator's compensation could be borne equally by the thousands of voluntary opt-in plaintiffs who eventually elect to take part in a collective arbitration. Based on the Consents-to-Sue filed by plaintiffs to date, there are now over 2,000 opt-in plaintiffs. Dosker Decl. 13 [Docket No. 389]. Until it is determined which of these plaintiffs will be required to arbitrate, it is impossible to even estimate how much of the arbitrator's compensation each plaintiff might have to bear in a classwide arbitration -- but it would be virtually nothing (i.e., $125 or less) in individual arbitrations.[6]

### c. THE QUESTION OF WHETHER THE ARBITRATION AGREEMENTS PERMIT ARBITRATION ON A CLASS OR COLLECTIVE BASIS IS FOR THE ARBITRATOR, NOT THE COURT, TO DECIDE IN THE FIRST INSTANCE

The Court further rejects plaintiffs' argument that the Court can find an individual agreement to

---

[6] Absent the Supplementary Rules for Class Arbitrations, which would not apply in individual arbitrations, the National Employment Rules limit an employee's costs in an individual arbitration to an initial filing fee of $125; the employer must pay all arbitrator compensation and hearing room fees. National Employment Rules Fee Schedule (Dosker Decl. Ex. K)[Docket 389]. Moreover, most of the applicable arbitration agreements further protect the employee by capping individual arbitration costs yet lower. *See e.g.*, Clendening Decl. Ex. B at paragraph 5 and at corresponding term in Exs C through III (Docket Nos. 50, 51]. And National Employment Rule 38 offers yet less cost, in an appropriate situation, if even $100 or $125 is too much to bear. Dosker Decl. Ex. K [Docket 389].

9

arbitrate unconscionable simply because one of the parties contends in the arbitration that class or collective arbitration is precluded by the parties' arbitration agreement.[7] As the Supreme Court plainly stated in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003), whether an otherwise valid agreement to arbitrate allows class or collective arbitration concerns "the kind of arbitration proceeding the parties agreed to" not "the validity of the arbitration clause." Thus, the determination of whether the arbitration agreements at issue allow for class arbitration or not is for the arbitrator, not the Court, to decide. *Id.* at 454.

### d. PLAINTIFFS HAVE PRESENTED NO NEW GROUNDS FOR FINDING PROCEDURAL UNCONSCIONABILITY WITH RESPECT TO THE CALIFORNIA PLAINTIFFS

Based on a declaration submitted by Cintas employee Jenice Clendening in a different case, plaintiffs ask the Court to revisit its April 5, 2004 ruling that the arbitration agreements between Cintas and the California plaintiffs were not procedurally unconscionable. As the Court previously stated:

> While Plaintiffs proffered a number of declarations, they did not proffer any for the California plaintiffs. Without being informed of the circumstances under which the California Plaintiffs signed these Agreements, the Court cannot assume that the Agreements were procedurally unconscionable. The scant evidence in the record suggests that, in fact, they are not unconscionable. At least 12 per cent of Cintas' SSRs have not signed arbitration agreements, yet are employed by Cintas.

April 5, 2004 Order at 26. Plaintiffs offer no evidence to contradict the Court's previous finding. Instead, plaintiffs rely solely on a declaration submitted by Cintas employee Jenice Clendening in another

---

[7] Plaintiffs contend that Cintas has asserted that the parties "arbitration agreements preclude class arbitration." Memo. at 19 [Docket No. 384]. Cintas, however, says that it "does not claim that any language in the arbitration agreements necessarily precludes all class arbitration." Opposition Memorandum at 17 [Docket No. 388]. Even if Cintas *had* argued that class or collective arbitration were precluded, *Bazzle* dictates that this Court defer to the decision of the arbitrator. *Bazzle*, 539 U.S. at 452-53.

10

case in which she states that Cintas SSRs are "required to sign an Employment Agreement that contains an agreement to arbitrate." Rubin Decl. Ex. 20 [Docket No. 383].

The Court, however, does not find this to be evidence that Cintas requires arbitration agreements as a "condition of employment" as now argued by plaintiffs. See Clendening Reply Declaration 23 [Docket No. 103]. Indeed, in any event, Cintas' interrogatory responses verified under oath by Ms. Clendening, confirm that there have been no employment consequences to anyone for declining to sign an arbitration agreement.

> There have been no employment consequences for prospective Cintas drivers who chose not to sign an employment agreement containing an arbitration agreement. Likewise, there have been no employment consequences for former Cintas drivers who chose not to sign. Current employees who have not signed an employment agreement containing an arbitration agreement and who decline to sign one at the time of being offered additional consideration are subject to having withdrawn from them the offer of the additional consideration being offered in exchange for executing the agreement.

Dosker Decl. Ex. L at 5:3-18 [Docket No. 389]. Further, plaintiffs have not provided a single declaration from a single California plaintiff to support their claim that they were required to sign the agreements as a "condition of their employment." The Court finds that the Clendening declaration submitted in a different case does not merit reconsideration of the Court's April 5, 2004 Order.

### e. THE PLACE OF ARBITRATION PROVISIONS

Plaintiffs also assert that the place-of-arbitration provision in the parties' arbitration agreements is unenforceable because: (1) the Court is not empowered to compel arbitration outside of this district pursuant to 9 U.S.C. § 4; and (2) enforcing the place-of-arbitration provision would result in fundamental unfairness. (Memo at 21).

Plaintiffs first assert that the Court cannot, as a matter of law, order arbitration to proceed

11

outside of this judicial district. (Motion, 21-22.)[8]  9 U.S.C. § 4 provides that "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, *shall be within the district in which the petition for an order directing such arbitration is filed.*" 9 U.S.C. § 4 (emphasis added). The Ninth Circuit has interpreted this provision of 9 U.S.C. § 4 to require a district court compelling arbitration to order the arbitration to proceed within the district in which the petition to compel arbitration has been filed. *Continental Grain Co. v. Dant & Russell*, 118 F.2d 967, 968-69 (9th Cir. 1941); *Homestead Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F.Supp.2d 1131, 1143-1144 (N.D. Cal. 2003) ("The Ninth Circuit's 1941 decision in *Continental Grain Co. v. Dant & Russell* remains the controlling authority" for determining where a court can properly compel arbitration).

In the instant case, Defendant moved this Court to compel arbitration for 65 of the plaintiffs. In the April 5 Order, the Court ordered 56 of them to arbitration. The Court's April 5, 2004 Order did not designate where the arbitration was to take place. However, the law is clear that the Court was, and is, only permitted to compel arbitration in this district.

Defendant's argument that it did not bring its motion to compel arbitration under 9 U.S.C. § 4, but instead brought it under 9 U.S.C. § 3, is unavailing. 9 U.S.C. § 4 is the provision allowing a party to

---

[8]Plaintiffs did not assert that the place-of-arbitration provisions of the arbitration agreement were unenforceable in briefing on Defendant's Motion to Compel Arbitration, nor did Plaintiffs raise it as a grounds for relief in its Motion for Reconsideration pursuant to Civ. L.R. 7-9. Accordingly, to the extent plaintiffs argue that these provisions are unfair, they have waived those arguments.

move to compel arbitration, while 9 U.S.C. § 3 is the provision allowing a party to seek a stay of litigation where arbitration is appropriate. *See Sink v. Aden Enters.*, 352 F.3d 1197, 1201 (9th Cir., 2003). Nothing in the text of § 3 suggests that the Court can compel arbitration under that section.

Thus, to the extent that the arbitration agreements of the 56 plaintiffs compelled to arbitrate by the April 5, 2004 Order require arbitration to proceed outside of this judicial district, the Court cannot enforce those provisions. Accordingly, the Court modifies its April 5, 2004 Order to clarify that the plaintiffs compelled to arbitrate must do so in this judicial district.[9]

### III.    CONCLUSION

For the foregoing reasons, plaintiffs' Motion [Docket No. 377] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: May 4, 2005                                         /s/ Saundra Brown Armstrong
                                                           SAUNDRA BROWN ARMSTRONG
                                                           United States District Judge

---

[9] Thus far, the Court has only compelled 56 plaintiffs to arbitration, and it is these 56 plaintiffs to arbitration, and it is these 56 plaintiffs who are compelled to arbitrate in this judicial district.